UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| PATRICIA HOLMES, | : |
| Plaintiff, | : Case No. 4:21-cv-01683-MWB |
| v. | : |
| AMERICAN HOME PATIENT/LINCARE, | : |
| Defendant. | : |

**DEFENDANT'S BRIEF IN SUPPORT
OF ITS MOTION FOR SUMMARY JUDGMENT**

Defendant, American Home Patient, Inc. ("AHOM") (incorrectly identified in the caption as American Home Patient/Lincare), submits this brief in support of its Motion for Summary Judgment on all claims asserted by Plaintiff.

**PROCEDURAL HISTORY**

Plaintiff filed her Complaint on September 30, 2021, and alleged claims under 42 U.S.C. § 1981. Count 1 alleges racial harassment; Count 2 alleges retaliation. Plaintiff also alleges constructive discharge.[1] Fact discovery ended December 16, 2022. Defendant filed its Motion for Summary Judgment on February 18, 2023, with a supporting declaration and deposition transcripts.

---

[1] Plaintiff's Complaint references "discrimination" claims, but there are no facts alleged that would support a disparate treatment claim.

## STATEMENT OF FACTS

Plaintiff, who is Black, worked as a customer service representative at AHOM's State College office for nine months. (SMF ¶ 1) She started work on October 14, 2019. (SMF ¶ 1) About five months later, she made an internal complaint of discrimination after what started as an animated discussion about politics ended with a co-worker yelling the N-word. (SMF ¶¶ 13-14, 18-19) The company investigated, fired the co-worker, and disciplined the office manager, who the Plaintiff said also had made a few comments of a racial nature over a four-month period. (SMF ¶¶ 23-30, 34-40) After the investigation, the office manager did not make any more comments of a racial nature. (SMF ¶ 41)

Four months later, Plaintiff emailed a resignation notice and cited 11 reasons for her decision to resign. (SMF ¶¶ 2, 53) Reason 1 was the office manager's "snatching" of papers from Plaintiff's hand, in silence, the morning she gave notice. (*Id.*) Reason 11 was the office blow-up and the co-worker's racial slur that had occurred four months earlier. (*Id.*) Reasons 2-10 consisted of a number of complaints about the office manager's managerial style that affected employees other Plaintiff, plus some issues that arose well before Plaintiff made her internal complaint and had nothing to do with the office manager. (*Id.*)

Plaintiff's resignation notice failed to mention that, just a few days before she gave notice, Plaintiff's then-boyfriend told her that their relationship

was over and that she needed to move out of his house. (SMF ¶ 56) Plaintiff had moved to Pennsylvania from New Jersey in 2017 to live with the boyfriend, and when he told her to move out, she was "homeless" and had to move back to New Jersey. (SMF ¶¶ 54, 58)

## STATEMENT OF QUESTIONS INVOLVED

1. Could a reasonable jury find that Plaintiff was constructively discharged? Suggested Answer: No.

2. Could a reasonable jury find that AHOM failed to take prompt and remedial action to address the conduct of Plaintiff's co-worker? Suggested Answer: No.

3. Could a reasonable jury find that the alleged conduct was either pervasive or severe? Suggested Answer: No.

4. Could a reasonable jury find that Plaintiff's supervisor engaged in retaliatory conduct? Suggested Answer: No.

## ARGUMENT

I. **Legal Standard for Summary Judgment**

Summary judgment is warranted where the pleadings and discovery, as well as any affidavits, establish that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56. The moving party has the burden of demonstrating the absence of any

genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). In response, the non-moving party must adduce more than a mere scintilla of evidence in her favor, and she cannot simply reassert factually unsupported allegations. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986); *Celotex, 477 U.S.* at 325.

When ruling on a summary judgment motion, the court must construe the evidence and any reasonable inferences drawn from it in favor of the non-moving party. *Anderson,* 477 U.S. *at* 255.  The existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment.  *Layshock v. Hermitage Sch. Dist.*, 650 F.3d 205, 211 (3d Cir. 2011).  Only disputes over facts that might affect the outcome of the suit under the governing law will preclude the entry of summary judgment.  *Anderson,* 477 U.S. at 248.  There is no issue for trial where a plaintiff, as in this case, lacks sufficient evidence that would permit a jury to return a verdict in her favor.

**II.     Defendant is Entitled to Summary Judgment on Plaintiff's Constructive Discharge Claim.**

    **A.     Plaintiff Resigned for Personal Reasons.**

Plaintiff quit her job at AHOM for personal reasons.  She resigned because, several days before she gave notice, her then-boyfriend told her that their relationship was over and that she needed to move out of his house. Plaintiff had moved to Central Pennsylvania from New Jersey to live with him, and she moved

back to New Jersey when the relationship soured. Plaintiff lamented that she could not seek treatment for the emotional distress damages she claims to have suffered because, among other things, "loss of employment …, *homeless* and having to move back to NJ." (SMF ¶ 58) Plaintiff controlled her own destiny. She quit her job because her boyfriend said the relationship was over and that she needed to move out. She made the decision to head back home to New Jersey, and to do that, she had to quit her job. For this reason, AHOM is entitled to summary judgment on Plaintiff's constructive discharge claim.

### B. Plaintiff's Work Environment Was Not So Intolerable That She Was Forced To Resign.

AHOM is entitled to summary judgment on Plaintiff's constructive discharge claim for a second, independent reason – no reasonable jury could find that her workplace was so intolerable that she was compelled to quit.

Plaintiff must establish that she was forced to resign due to racially hostile and/or retaliatory conduct. *Pennsylvania State Police v. Suders*, 542 U.S. 129, 143 (2004) (involving a claim of "constructive discharge resulting from sexual harassment, or hostile work environment, attributable to a supervisor").[2]

---

[2] Race-based employment claims under 42 U.S.C. § 1981 generally are subject to the same analysis as claims made under Title VII. *See Newman v. Clouse Trucking, Inc.*, 2018 U.S. Dist. Lexis 58006, at *7 n. 44 (M.D. Pa. Apr. 5, 2018) (Brann, J.) (applying Title VII framework to claim of race-based hostile work environment under 42 U.S.C. § 1981) (Decision attached as **Exhibit A.**)

Under *Suders*, constructive discharge requires a plaintiff to establish not only sufficient evidence from which a jury could find illegal harassment, but also conduct beyond that – "harassment ratcheted up to the breaking point." *Id.* at 147-48 ("unless conditions are beyond 'ordinary' discrimination, [an] employee is expected to remain on the job while seeking redress") (citation omitted).

In this case, Plaintiff crafted an extensive list of reasons for her resignation – 11 in total – that arose throughout her employment. The March 5 incident was No. 11 on her list -- "previous rude comments of racial/political nature." Plaintiff admitted at deposition that McCoy made no further comments referencing race after she had made her complaint four months earlier. The lapse in time between McCoy's alleged comment and Plaintiff's resignation four months later rebuts her claim that she was forced to resign because of racial hostility.

The main reasons for Plaintiff's resignation relate to McCoy's managerial skills. Her first reason was that McCoy, without saying anything, twice snatched papers from her hands on July 7 – the day she gave notice. She also claims that she felt embarrassed at morning meetings because McCoy was condescending, but his comments were not aimed solely at Plaintiff, she admitted. McCoy also targeted Tammy Dunmire at these meetings and similarly criticized Dunmire at a training on June 25, 2020. (Holmes Tr. at 141:7-146:16) Plaintiff has not linked McCoy's managerial actions to her race or to her earlier complaint.

6

Although McCoy may have demonstrated shortcomings, his behavior as described by Plaintiff in her resignation notice falls short of the evidence required for her to get a trial on her constructive discharge claim. For example, in *DiFiore v. CSL Behring*, LLC, 879 F.3d 71 (3d Cir. 2018), the plaintiff alleged that, after she had engaged in "protected activity," her relationship with her supervisors and other managers deteriorated. She claimed that one superior became "hostile," began documenting her work activities, and reprimanded her for complaining. Another manager avoided her and refused to make eye contact. Other supervisors criticized her during meetings. The plaintiff alleged that her supervisors grew "hypercritical" of skills where no past issue had been raised. *Id.* at 74. The plaintiff in *CSL Behring* also received two warning letters, had her duties changed, and received two poor reviews of her performance. *Id.* at 74-75.

Despite this treatment, the District Court granted summary judgment for the employer, and the Third Circuit affirmed. The Third Circuit concluded that "no reasonable jury could find" constructive discharge where the plaintiff "may have been subjected to difficult or unpleasant working conditions, but [where] these conditions [fell] well short of unbearable" and plaintiff "did not sufficiently explore alternative solutions or means of improving her situation." *Id.* at 79.

Similarly, in *Clowes v. Allegheny Valley Hospital*, 991 F.2d 1159 (3d Cir. 1993), the plaintiff alleged that her supervisor had singled her out for harsh

7

supervision and spoke to her in a "demeaning, condescending manner." *Id.* at 1160. A jury returned a verdict in her favor on her constructive discharge claim, but the Third Circuit reversed the jury's decision on appeal. The appellate court concluded that "an employee's subjective perceptions [do not] govern a claim of constructive discharge." *Id.* at 1161.

Similarly here, Plaintiff's reasons for resigning relate to her subjective perceptions about her supervisor. Third Circuit decisions compel the conclusion that no reasonable jury could find for Plaintiff. Accordingly, AHOM is entitled to summary judgment on Plaintiff's constructive discharge claim.

### III. AHOM Is Entitled to Judgment on Plaintiff's Racial Harassment Claim.

To succeed on her racial harassment claim, Plaintiff must establish: (1) she suffered intentional discrimination based on her race; (2) the discrimination was severe or pervasive; (3) the discrimination detrimentally affected the plaintiff; (4) the discrimination would detrimentally affect a reasonable person in similar circumstances; and (5) the existence of liability by the employer. *Castleberry v. STI Grp.*, 863 F.3d 259, 263 (3d Cir. 2017); *Mandel v. M & Q Packaging Corp.*, 706 F.3d 157, 163 (3d Cir. 2013). In this case, Plaintiff cannot establish that AHOM is liable for the co-worker's alleged harassment or that the alleged conduct was either severe or pervasive.

### A.   AHOM Responded Promptly and Appropriately.

The statements that Plaintiff attributes to co-worker Beverly Hibbert were not pervasive. Hibbert made only two comments five months apart, and Hibbert did not call Plaintiff the N-word.[3] AHOM cannot be held liable for Hibbert's remark, because AHOM took prompt and appropriate action to stop Hibbert's behavior – by issuing a final written warning for the outburst and then terminating her employment after Hibbert made a mockery of the situation by putting tape over her mouth.

An employer may be held liable for non-supervisory co-worker harassment only "if the employer knew or should have known about the conduct and failed to take prompt and appropriate remedial action." *Mandel*, 706 F.3d at 167; *Huston v. Proctor & Gamble Paper Prods. Corp,* 568 F.3d, 100, 104 (3d Cir. 2009) (employer liability exists only if the employer failed to provide a reasonable avenue for complaint or knew or should have known of the harassment and failed to take prompt and appropriate remedial action).

Here, AHOM is entitled to summary judgment as it relates to Plaintiff's claim of harassment by the co-worker, because the Company took prompt and remedial action once it learned of Hibbert's behavior, and the alleged

---

[3]   The Third Circuit has not ruled definitively on whether a single utterance of the N-word meets the "severity" test. *Castleberry, supra,* 863 F.3d at 264-266.

harassment stopped. *See Andreoli v. Gates*, 482 F.3d 641, 644 n.2 (3d Cir. 2007) ("remedial action that stops the harassment is adequate as a matter of law").

### B. The Alleged Conduct Was Not Severe or Pervasive.

Plaintiff's claim of supervisor harassment rests on comments the McCoy allegedly made on three separate occasions over a four-month period and not personal to or specifically directed at Plaintiff. For purposes of summary judgment, the Court must presume that McCoy made the comments attributed to him by Plaintiff.

The Third Circuit instructs District Courts to analyze the "totality of the circumstances" in determining whether the conduct at issue is severe or pervasive. *Mandel, supra,* 706 F.3d at 168. The conduct must be so severe or pervasive that it creates an abusive work environment. Factors that courts consider are the frequency of the conduct, its severity, whether it was physically threatening or humiliating or, instead, a mere offensive utterance; and whether the conduct interfered with an employee's work performance. *Id.* (internal citation omitted). Alleged incidents are not viewed in isolation; the inquiry is whether the workplace has been "permeated with discrimination, ridicule and insult" because of a plaintiff's race. *Harris v. Forklift Systems, Inc*. 510 U.S. 17, 21 (1993) (internal quotation omitted).

In *Greer v. Mondelez Global, Inc.*, 90 Fed. Appx. 170 (3rd Cir. 2014) (attached as **Exhibit B**), the Third Circuit affirmed summary judgment in favor of the employer where the employee alleged race-based comments.  In Greer, the plaintiff alleged that, for a three-month period, co-workers made race-based comments – that she "probably voted for Obama, that a hip-hop magazine must be hers; that she probably lived in a rough area; [and] that she probably listened to rap and R&B." *Id.* at 2 n. 2.  The Third Circuit found that these comments fell short of the evidence needed to establish that severe or pervasive conduct.  The Third Circuit agreed that the comments were unprofessional but found the statements to be "offensive utterances" and not severe, threatening or humiliating.  *Id.* at *7-8.

Similarly, here, and viewed in totality, no reasonable jury could find that McCoy's alleged statements created a work environment permeated with discrimination, ridicule and insult.[4]  His alleged comments were few, they were obtuse, and they did not target Plaintiff specifically in a demeaning way.  McCoy did not direct the alleged "white hood" comment to Plaintiff, and it was not said in denigration of Plaintiff because of her skin color.  It was an observation, albeit perhaps an insensitive one, about the ugly historical treatment of African Americans by a hate group.

---

[4]   The Complaint lacks any allegation that Plaintiff's work performance suffered because of the alleged harassment.

11

McCoy's alleged comments about his uncle and Plaintiff's knowledge of Black Jews likewise were not comments demeaning to Plaintiff personally. In fact, Plaintiff has no memory of the context of the conversation where McCoy told her that he had a dark-skinned uncle nicknamed Coonie and asked Plaintiff about her knowledge of Black Jews.  Plaintiff acknowledged that McCoy talked about his family genealogy in the office.[5] She described herself as "shocked" by the comments, which McCoy made after the office's morning meeting in the conference room, and she excused herself to return to work.  (Holmes Tr. at 130:3-132:25, 168:20-170:12; Holmes Dep. Exh. 2, at Interrogatory 2)

The March incident began as a political discussion that went awry. While there may be differences in the details, Plaintiff and McCoy agree that McCoy looked up the word "niger" -- the country, according to Plaintiff.  McCoy said he was looking up the word as it related to a mountain in Pennsylvania whose name had triggered discord.[6]  (SMF ¶ 37; McCoy Dep. at 24:10-25:12)

---

[5]   Plaintiff testified that McCoy made this statement in January or February 2020 but later clarified that he made the comment around Thanksgiving 2019, the time frame also identified in her response to Interrogatory 2. (Holmes Tr. 130:3-10, 169:22-170:12; 197:19-198:4; Holmes Dep. Exh. 2)

[6]   Negro Mountain is a long ridge in the Allegheny Mountains that stretches from Maryland to Pennsylvania. https://en.wikipedia.org/wiki/Negro_Mountain.

While this court may not make credibility determinations at the summary judgment stage, it may determine whether the comments that Plaintiff attributes to McCoy are sufficient to meet the severe or pervasive requirement. The evidence of record does not support any conclusion that McCoy (or McCoy and Hibbert together) targeted, denigrated or demeaned Plaintiff in such a way that the workplace was permeated with discriminatory intimidation, ridicule or insult. His comments were offensive utterances, like the comments in *Greer*. Accordingly, AHOM is entitled to summary judgment on Plaintiff's racial harassment claim.

### IV. AHOM Is Entitled to Summary Judgment on the Retaliation Claim.

Plaintiff must prove the following to prevail on her retaliation claim: (1) she engaged in protected activity, (2) she was subject to a materially adverse action at the time of or after any protected activity took place, and (3) there was a causal connection between the protected activity and the materially adverse events affecting her. *Equal Employment Opportunity Comm. v. Allstate Ins. Co.*, 778 F.3d 444, 449 (3d Cir. 2015). To prove causation, a plaintiff typically must prove one, or both, of the following: (1) an unusually suggestive temporal proximity between the protected activity and the alleged improper conduct, or (2) a pattern of antagonism between the time of the protected activity and the materially adverse

event. *Krouse v. American Sterilizer Co.*, 126 F.3d 494, 503-04 (3d Cir. 1997); *Woodson v. Scott Paper Co.*, 109 F.3d 913, 920-21 (3d Cir. 1997).

Plaintiff cannot establish that she suffered material adverse consequences after she filed the complaint or that there was a causal connection between her complaint and McCoy's post-conduct complaint. Under the "materially adverse" requirement, Plaintiff must demonstrate that McCoy's conduct toward her after she filed the complaint was serious enough that it well might have discouraged a reasonable worker from filing an internal complaint. *Santa Fe Ry. Co. v. White*, 548 U.S. 53 (2006). Here, Plaintiff admitted that McCoy made no comments with any reference to race between the time she filed her internal complaint and gave notice of her resignation. Instead, she rests her retaliation claim on two McCoy behaviors: (1) denying her training on Care Orchestrator and reprimanding her during another training on June 25, 2020, and (2) snatching, in silence, a patient's paperwork out of her hand twice on July 7, the day she turned in her resignation notice. (SMF ¶ 43)

Plaintiff's complaints about McCoy are complaints that he lacked managerial skills. Plaintiff admitted that Tammy Dunmire also caught McCoy's ire at times – embarrassment at morning meetings and reprimands for asking a question on June 25 – all of which establish that McCoy did not target Holmes specifically because she had filed an internal complaint. (Holmes Tr. at 141:7-

14

146:16). In *White*, the Supreme Court observed that Title VII "does not set forth a general civility code for the American workplace," and "courts have held that personality conflicts at work that generate antipathy and snubbing by supervisors and co-workers are not actionable." 548 U.S. at 68.

Further, Plaintiff cannot connect the filing of her complaint with the allegedly material adverse events she claims to have suffered. These events occurred four months after she made her complaint, and this gap in time does not create an inference of causation. *LeBoon v. Lancaster Jewish Community Center Ass'n*, 503 F.3d 217, 233 (3d Cir. 2007). Accordingly, AHOM is entitled to summary judgment on Plaintiff's retaliation claim.

## V.     Conclusion

For the foregoing reasons, Defendant requests that the Court grant summary judgment in its favor and dismiss Plaintiff's claims in this case.

Respectfully submitted,

CULHANE MEADOWS, PLLC

*s/ Jo Bennett*
Jo Bennett (Pa. I.D. No. 78333)
40 W. Evergreen Ave., Suite 101
Philadelphia, PA 19118
Telephone: (215) 880-0084

*Counsel for Defendant*

Dated: March 6, 2023