UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

|  |  |  |
|---|---|---|
| PATRICIA HOLMES, | : | |
| | : | |
| Plaintiff, | : | Case No. 4:21-cv-01683-MWB |
| | : | |
| v. | : | |
| | : | |
| AMERICAN HOME PATIENT/LINCARE, | : | |
| | : | |
| Defendant. | : | |

**DEFENDANT'S REPLY BRIEF IN SUPPORT
OF ITS MOTION FOR SUMMARY JUDGMENT**

After Plaintiff complained about behavior at her work site, Defendant investigated and disciplined those involved. Plaintiff, Patricia Holmes, admitted that, after American Home Patient fired Beverly Hibbert and disciplined Office Manager Tim McCoy, there were no more comments or discussion of a racial nature at work. The law requires an employer to take steps to prevent improper conduct by (1) having an anti-harassment policy in place and training employees on that policy,[1] (2) establishing a procedure for employees to make complaints, (3)

---

[1] In her statement of counter-facts, Plaintiff alleges that Tim McCoy "did not receive any training concerning the anti-discrimination and anti-harassment policy." *See* counter-statement at ¶ 108. This is a misstatement of his testimony. He was asked whether he had received such training from Human Resources. He said no. He then testified that he had received that training from the company's

...Continued

investigating employee complaints, and (4) taking remedial action designed to stop the behavior. That is exactly what AHOM did in this case.

The law also requires an employer to ensure that an employee is not subjected to retaliation for making a complaint. Here, Plaintiff has not marshaled any evidence that McCoy targeted her after she made the report to Human Resources. Her brief attributes a comment that he allegedly made on March 9, the day Hibbert was first disciplined, a comment that Plaintiff reported to Lois Dodson later that day during Dodson's interview of Plaintiff. *See* Exhibit 2 to Declaration of Lois Dodson at Bates-labeled page 346. After the conclusion of the investigation, McCoy made no further statements to Plaintiff referencing race (Defendant's SMF at ¶ 41), and McCoy made no statements or engaged in any conduct that Plaintiff can link to her earlier report to Human Resources.

McCoy did not threaten Plaintiff because she had made the complaint to Human Resources. Although Plaintiff alleges, in paragraph 76 of her counter-statement of facts, that McCoy told her that she could make all the complaints she wanted against him and he could not be fired, this statement, assuming it occurred, was not directed specifically to Plaintiff. Rather, as Plaintiff admitted, this

---

Learning Center. (McCoy Tr. at 11:19-25) In her counter-statement, Plaintiff ended her citation at line 23. Plaintiff's mischaracterization should not go unnoticed.

statement was made to both her and Ms. Dunmire in late June/early July 2020, more than three and a half months after Plaintiff had made her internal complaint.[2] (Holmes Tr. 140:9-143:11) Whatever outburst McCoy had that day, he directed it at Plaintiff and Ms. Dunmire over training issues.

At her deposition, Plaintiff identified two things that McCoy did after she made her complaint to Human Resources. She alleges that she was denied training and that McCoy snatched papers out of her hand. *See* Defendant's Statement of Material Facts at ¶ 43. After being repeatedly questioned at her deposition as to what McCoy did to her after she had made the complaint to Human Resources, Plaintiff's response was limited to denial of training and the snatching of papers from her hand. That is the sum total of McCoy's post-investigation conduct that Plaintiff herself identified.

Plaintiff's allegation that McCoy denied her training lacks merit and is rebutted by the evidence of record. For example, in paragraph 61 of her counter-statement, Plaintiff cites to her deposition testimony on pages 17:6-23:15 as proof that she was denied training. Plaintiff testified that she was to receive training from Rachelle in the Lewistown office but that she never received this training.

---

[2] Ms. Dunmire testified that Plaintiff had once told her that McCoy remarked that she (the Plaintiff) needed to have a thicker skin. *See* Plaintiff's Counterstatement of Facts at ¶ 77. This testimony is inadmissible hearsay and should be ignored by the Court in its consideration of the pending motion.

Plaintiff omits the fact that the training that she alleges she was denied was being set up at the time she gave her resignation notice. In discovery, Plaintiff produced a chain of email communications that she had with McCoy about the training she was to receive from Rachelle. On July 6, 2020, Plaintiff asked McCoy to check with Rachelle to see whether Rachelle would be amenable to coming to the State College office to provide the training to Plaintiff. *See* Page 7 of Exhibit 4 marked at Plaintiff's deposition, attached to this Reply Brief as **Exhibit A**. Plaintiff made the entry stating: "This training never occurred." (Holmes Tr. at 6-22) The training did not occur because the very next day Plaintiff gave notice of her resignation.

Plaintiff's responding papers contain other statements that mischaracterize events. For example, she claims that she "was not permitted to sign up for healthcare benefits." In reality, Plaintiff did not attempt to sign up for benefits until after expiration of the 60-day initial enrollment period for new employees. *See* Defendant's SMF at ¶¶ 10-12, 44-45. Benefit information is available to new employees in the company handbook, which Plaintiff received, reviewed and had access to at all times. *See* Defendant's SMF at ¶ 6; Exhibit 6 to Dodson Declaration. Information about benefits also is provided during new-employee orientation. Plaintiff verified on her orientation training checklist that she had reviewed the company's video on company benefits. *See* Exhibit 7 to Dodson Declaration. A new employee at AHOM bears responsibility to sign up for

4

benefits and is provided information on how to sign up. Had Plaintiff taken some initiative, she would have been enrolled in the benefit plans of her choice.

Similarly, Plaintiff alleges that AHOM is responsible for an insurer's mistake in billing her for a TB test. Dunmire also was billed. *See* Defendant's SMF at ¶ 52. Although Plaintiff alleges that the matter was taken to collections, Plaintiff has offered no proof to back up this assertion, and there are no allegations or evidence in the record that AHOM was responsible for the billing mistake or the alleged referral to a collection agency.

After Plaintiff made her complaint to Human Resources, there was no pattern of antagonism, a point made clear by Plaintiff in her resignation notice. The reasons Plaintiff cited for her resignation were a grab bag of unrelated events, only one of which – the very last one she mentioned -- was related to the March 2022 office conversation that led to Hibbert's firing and McCoy's discipline. And when Plaintiff left the State College area, she spent two weeks at a friend's apartment in East Stroudsburg before she went back to New Jersey. (Holmes Tr. at 42:12-44:1) Plaintiff's suggestion that she lived in East Stroudsburg is misleading.

**Plaintiff Has Not Alleged a Claim of Disparate Treatment.**

Plaintiff's brief asserts a legal theory not supported by the factual allegations set forth in the Complaint or by the factual record developed during discovery. Section III.B. of Plaintiff's brief describes the legal standards for a

5

disparate treatment case and argues that Plaintiff has established "pretext." This case is not about pretext; Plaintiff has alleged claims of racial harassment, retaliation, and constructive discharge, all of which have analytical frameworks distinct from a pretext case. A pretext case requires an affirmative decision by the employer (*e.g.*, discharge or demotion) that is not present in the evidentiary record in this case. Thus, the Court should reject Plaintiff's assertion that she has stated a pretext claim.

### Certain Evidence Cited by Plaintiff Is Inadmissible.

Plaintiff's brief relies on evidence that should be excluded from the Court's consideration because that evidence is inadmissible. For example, Plaintiff alleges that "McCoy told a co-worker to film Holmes' fit test." *See* Plaintiff's brief at 2, Plaintiff's Statement of Facts at ¶ 97. This statement is hearsay; it is a statement allegedly made by Ms. Hibbert, who was not deposed in this case, to Haley Furrow (now Eichelberger). Thus, the Court should strike this statement as inadmissible evidence. In addition, the Court should strike the first 10 pages of Plaintiff's Exhibit 12, which Plaintiff describes as "Defendant's HR Investigation." The first 10 pages of this exhibit were not marked at any deposition, and no witness for AHOM authenticated the 10 pages or identified the author or authors of the content on the 10 pages. In short, Plaintiff has not laid a foundation for the

admissibility of the first 10 pages of Exhibit 12, and the Court should exclude them.

      For the reasons set forth in AHOM's opening brief and in this Reply Brief, Defendant requests that the Court grant summary judgment in its favor and dismiss Plaintiff's claims with prejudice.

Respectfully submitted,

CULHANE MEADOWS, PLLC

*s/ Jo Bennett*
Jo Bennett (Pa. I.D. No. 78333)
40 W. Evergreen Ave., Suite 101
Philadelphia, PA 19118
Telephone: (215) 880-0084
Email: jbennett@cm.law

*Counsel for Defendant*

Dated: April 4, 2023

# EXHIBIT A

**Holmes, Patricia (PHolmes2)**

---

| | |
|---|---|
| From: | Holmes, Patricia (PHolmes2) |
| Sent: | Monday, July 6, 2020 8:26 AM |
| To: | McCoy, Timothy (TMcCoy1) |
| Subject: | RE: Training |

*[Handwritten annotation: "This Training Never occurred"]*

I was unsure to what week you were referring to, you didn't specify dates. Please see if Rachelle doesn't mind coming to State College.

**From:** McCoy, Timothy (TMcCoy1)
**Sent:** Monday, July 6, 2020 8:20 AM
**To:** Holmes, Patricia (PHolmes2) <PHolmes2@secure.lincare.com>
**Subject:** RE: Training

Rachelle is off July 9-10-13.   Tammy is off Mon-Wed this week

The message below refers to next week

Do you want to go to LT or have Rachelle come here....I haven't asked her if she would come here yet.......just trying to get it done

**From:** Holmes, Patricia (PHolmes2)
**Sent:** Monday, July 6, 2020 8:05 AM
**To:** McCoy, Timothy (TMcCoy1) <Timothy.McCoy@ahom.com>
**Subject:** RE: Training

Tammy will not be back from her vacation until Thursday

**From:** McCoy, Timothy (TMcCoy1)
**Sent:** Thursday, July 2, 2020 4:11 PM
**To:** Holmes, Patricia (PHolmes2) <PHolmes2@secure.lincare.com>
**Subject:** Training

Rachelle is good for training on a Tues or a Wed after she gets back from vacation

Let me know

1

20185   Holmes   110000007