## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

PATRICIA HOLMES,

        Plaintiff,

    v.

AMERICAN HOME
PATIENT/LINCARE,

        Defendant.

No. 4:21-CV-01683

(Chief Judge Brann)

## MEMORANDUM OPINION

### MARCH 14, 2024

## I.     BACKGROUND

In September 2021, Patricia Holmes filed a complaint against American Home Patient/Lincare ("AHOM") alleging she was subject to a racially hostile work environment and retaliation at Defendant's State College, Pennsylvania location.[1] After partially granting AHOM's motion for summary judgment in July 2023, all that remains is Holmes' hostile work environment claim.[2] I scheduled trial for April 2024 and set a briefing deadline of January 2, 2024 for any motions in limine and supporting briefs.[3]

---

[1]   *See* Doc. 1 (Compl.).
[2]   *See* Doc. 30 (Ord. Granting and Denying Summary Judgment In Part).
[3]   *See* Doc. 37 (Sch. Ord. Pretrial Deadlines).

In January 2024, Holmes filed one motion in limine and Defendant filed three motions in limine.[4] Plaintiff seeks to exclude a class action and jury trial waiver, a statement made by her former co-worker Tammy Dunmire, and several lawsuits she was involved in.[5] In its first two motions in limine, AHOM asks the Court to preclude presentation of evidence that is from the dismissed claims or is unrelated to the remaining claim.[6] Defendant also requests the exclusion of evidence relevant only to Holmes' claim for punitive damages or, in the alternative, to bifurcate the trial in its third motion in limine.[7]

The motions are now ripe for disposition. For the reasons stated below, Defendant's third motion in limine is denied; the remaining motions in limine are denied in part and granted in part.

## II.    DISCUSSION

### A.    Motion in Limine Standard

"Motions in limine are made prior to trial or the presentation of evidence in order to aid the clear presentation of evidence."[8] "'[A] motion in limine is designed

---

[4]    *See* Doc. 40 (Plaintiff's Motion in Limine); Doc. 42 (Motion in Limine to Exclude Dismissed Claims); Doc. 44 (Motion in Limine to Exclude Unrelated Events); and Doc. 46 (Motion in Limine to Exclude Plaintiff's Claim for Punitive Damages or, Alternatively, to Bifurcate the Trial).

[5]    *See* Doc. 40 (Plaintiff's Motion in Limine).

[6]    *See* Doc. 42 (Motion in Limine to Exclude Dismissed Claims); Doc. 44 (Motion in Limine to Exclude Unrelated Events).

[7]    *See* Doc. 46 (Motion in Limine to Exclude Plaintiff's Claim for Punitive Damages or, Alternatively, to Bifurcate the Trial).

[8]    *United States v. Ramsey*, Crim. A. No. 19-628, 2021 WL 4554642, 2021 U.S. Dist. LEXIS 192115, at *2 (E.D. Pa. Oct. 5, 2021).

to narrow the evidentiary issues for trial and to eliminate unnecessary trial interruptions.'"[9] "'Evidence should only be excluded on a motion in limine if it is clearly inadmissible on all potential grounds.'"[10] "'The movant bears the burden of demonstrating that the evidence is inadmissible on all potential grounds.'"[11]

### B.    Relevance and Admissibility of Evidence

Relevant evidence is presumed to be admissible in the Federal Rules of Evidence.[12] Under Federal Rule of Evidence 401, evidence is relevant if it has "any tendency to make a fact more or less probable than it would be without the evidence" if "the fact is of consequence in determining the action."[13] But even relevant evidence may be excluded under Federal Rule of Evidence 403 "if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence."[14] Both parties should recall that Rule 403 does not exclude evidence simply because it prejudices a party. It is only unfair prejudice that warrants exclusion.[15]

---

[9]    *Id.* (quoting *Bradley v. Pittsburgh Bd. of Educ.*, 913 F.2d 1064, 1069 (1990)).

[10]    *Id.* (quoting *Hunt v. Drake*, No. 16-CV-1729, 2020 U.S. Dist. LEXIS 108003, 2020 WL 3402343 (M.D. Pa. June 19, 2020)).

[11]    *Id.*

[12]    *See* FED. R. EVID. 402.

[13]    FED. R. EVID. 401.

[14]    FED. R. EVID. 403.

[15]    *See e.g.*, *United States v. Long*, No. 22-3033, 2024 U.S. App. LEXIS 2944, at *14 (3d Cir. 2024) ("Not all prejudice is unfair prejudice, and Rule 403 bars only the latter.").

## C.    Analysis

The Court will evaluate each of the motions in turn. Where appropriate, connected evidence will be discussed together. Since the relevance of much of this evidence turns on its applicability to a racially hostile work environment claim, I will briefly review the relevant law.

To establish a prima facie case for a racially hostile work environment claim, "a plaintiff must show that '1) the employee suffered intentional discrimination because of his/her [race], 2) the discrimination was severe or pervasive, 3) the discrimination detrimentally affected the plaintiff, 4) the discrimination would detrimentally affect a reasonable person in like circumstances, and 5) the existence of *respondeat superior* liability [meaning the employer is responsible].'"[16]

### 1.    Plaintiff's Motion in Limine

Based on representations made by AHOM, the Court will only evaluate a statement made by Tammy Dunmire and the lawsuit Plaintiff brought against her former employer, Sutherland Global Logistics ("Seko Logistics").[17]

### a.    Dunmire's Statement

During her deposition, Dunmire stated that there are "white [n-words] and there are Black [n-words], it's all a matter of attitude."[18] It is currently premature to

---

[16] *Castleberry v. STI Grp.*, 863 F.3d 259, 263 (3d Cir. 2017) (quoting *Mandel v. M&Q Packaging Corp.*, 706 F.3d 157, 167 (3d Cir. 2013)).
[17] *See* Doc. 55 (Brief in Opposition to Plaintiff's Motion in Limine) at 1.

preclude this part of Dunmire's testimony since its relevance will depend on the context in which it is offered. Consequently, Plaintiff's Motion in Limine is denied as to this statement.

### b.    Seko Logistics Lawsuit

On October 27, 2020, Holmes filed a lawsuit against Seko Logistics alleging she faced racial discrimination and harassment and was subject to retaliation.[19] The purported harassment occurred between May 2019 and mid-August 2019.[20] Plaintiff sought damages for, in part, "embarrassment, humiliation, emotional distress, pain, suffering, inconvenience and mental anguish…."[21] Defendant contends that these effects lasted through at least October 2020 when she sued Seko Logistics.[22] AHOM then draws the Court's attention to Holmes' identical request for damages in the present case based, in part, on "embarrassment, humiliation, emotional distress, pain, suffering, inconvenience and mental anguish…."[23]

---

[18]   Doc. 42 (Brief in Support of Plaintiff's Motion in Limine), Ex. 2 (Dunmire Dep.) at 64:21-23.

[19]   *See* Doc. 55 (Brief in Opposition of Plaintiff's Motion in Limine) at 2. Plaintiff's right to sue in that case was issued by the Equal Employment Opportunity Commission on August 12, 2020. *See* Doc. 55 (Brief in Opposition of Plaintiff's Motion in Limine), Ex. B (Compl. in *Holmes v. Sutherland Global Logistics*) ¶ 7(b).

[20]   *See* Doc. 55 (Brief in Opposition of Plaintiff's Motion in Limine), Ex. B (Compl. in *Holmes v. Sutherland Global Logistics*) ¶¶ 8, 12-14.

[21]   *Id.* ¶ 21.

[22]   *See* Doc. 55 (Brief in Opposition of Plaintiff's Motion in Limine) at 4.

[23]   *See* Doc. 1 (Compl.) ¶ 27.

AHOM requests admission of both the lawsuit itself and the settlement agreement Holmes reached with Seko Logistics in January 2021.[24] Defendant contends that this evidence "rebut[s]" the claim for emotional distress in this suit and should be used to offset any award of compensatory damages.[25] According to AHOM, exclusion would force it to compensate Plaintiff for emotional distress derived from multiple work environments.[26] In response, Plaintiff asserts that this evidence is irrelevant to her remaining claim and would expose her to unfair prejudice if the jury draws the improper inference that she has a propensity to sue her employers.[27]

The Court acknowledges that this is a rather close question but concludes that narrowly tailoring the use of this lawsuit and issuing a proper limiting instruction will avoid exposing Plaintiff to unfair prejudice. Further, AHOM will not be permitted to introduce the pleadings from the Seko Logistics suit. Instead, Defendant may ask a narrow question targeted at the potential overlap of emotional distress experienced by Plaintiff. An appropriate limiting instruction will then ensure that the jury only considers the Seko Logistics case for damages purposes and not to make an improper character inference.

---

[24]  *See* Doc. 55 (Brief in Opposition of Plaintiff's Motion in Limine) at 5.
[25]  *Id.*
[26]  *Id.* at 7-8.
[27]  *See* Doc. 57 (Reply Brief in Support of Plaintiff's Motion in Limine) at 3.

"Settlement agreements…are inadmissible regardless of relevance if offered to establish liability for or the amount of a claim or if introduction thereof would result in undue prejudice to an opposing party."[28] But settlement agreements may be offered "'for purposes not [otherwise] prohibited[,]' such as to 'prov[e] a witness's bias or prejudice.'"[29] "Under this policy, federal courts frequently exclude evidence of settlements reached between…a plaintiff and a non-defendant who is responsible for a portion of plaintiff's damages."[30] The settlement agreement reached between Holmes and Seko Logistics will therefore be excluded.

### 2. Defendant's First Motion in Limine: Plaintiff's Dismissed Claims

In its first motion in limine, AHOM seeks to exclude a number of the allegations Holmes made in support of the now dismissed constructive discharge and retaliation claims. After removing the events that Plaintiff has indicated she does not intend to offer, these allegations include: the physical harassment experienced by Holmes; Timothy McCoy's[31] decision to deny Plaintiff access to an initial software training session; McCoy's practice of giving Holmes' work to Defendant's Lewistown location; a confrontation with McCoy connected to the second software training provided to the State College location; the verbal

---

[28] *Trout v. Milton S. Hershey Med. Ctr.*, 572 F. Supp. 2d 591, 596 (M.D. Pa. 2008) (Conner, J.) (citing FED. R. EVID. 403, 408(a)).

[29] *Id.* at 599 (citing FED. R. EVID. 408(b)).

[30] *Id.* (citing *Young v. Version Allsteel Press Co.*, 539 F. Supp. 193, 196 (E.D. Pa. 1982)).

[31] At all relevant times, Timothy McCoy was Plaintiff's immediate manager. *See* Doc. 44 (Motion in Limine to Exclude Unrelated Events), Ex. A (Holmes Dep.) at 15:16-17.

reprimand McCoy gave Holmes for not sitting next to Beverly Hibbert[32] at a morning meeting after Hibbert's recent use of a racial slur; the hoarding of certain work by other employees and the connected embarrassment experienced by Plaintiff; and a comment by McCoy that Holmes' work was "menial."[33]

Although "courts have often excluded evidence of dismissed claims" by "[r]easoning that evidence regarding dismissed claims that have failed as a matter of law typically has little relevance," I will nevertheless review each piece of evidence Defendant seeks to exclude.[34]

In evaluating these events, the Court has "wide discretion to exclude proffered evidence that is collateral, rather than material, to the issues in the case."[35] It is true that McCoy's behavior was often "discomforting, demonstrative of poor leadership, and not conducive to a positive work environment[;]"[36] however, it is only relevant to Plaintiff's hostile work environment claim if it was driven by racial animus or addresses some other live issue.[37] "[C]omments that cannot be reasonably construed as invoking any racial feeling do not support"

---

[32]   Hibbert was a fellow customer service representative at the State College location. *See* Doc. 44 (Motion in Limine to Exclude Unrelated Events), Ex. A (Holmes Dep.) at 32:12-14.

[33]   *See* Doc. 43 (Brief in Support of Motion in Limine to Exclude Dismissed Claims) at 6-7, 9-10.

[34]   *Cooper v. Pa. Human Relations Comm'n*, Civ. No. 1:19-CV-2230, 2022 U.S. Dist. LEXIS 146708, at *5 (Carlson, M.J.) (collecting cases).

[35]   *Gay v. Petsock*, 917 F.2d 768, 773 (3d Cir. 1990) (citing *Cowgill v. Raymark Industries, Inc.*, 832 F.2d 798, 805 (3d Cir. 1987)).

[36]   Doc. 29 (Summary Judgment Mem. Op.) at 25.

[37]   *See e.g.*, *Brown v. Petco Animal Supplies Store, Inc.*, No. 4:21-CV-00330, 2023 U.S. Dist. LEXIS 37155, 2023 WL 2395466 (M.D. Pa. Mar. 6, 2023).

liability and therefore have minimal probative value.[38] While AHOM highlights that the events underlying the dismissed claims lack a blatant racial element,[39] "it is not necessary" to "use words that overtly implicate racial animus to create a hostile work environment."[40] In fact, Holmes' experience of "overtly" racial incidents involving McCoy significantly informs the Court's evaluation of the racially neutral events that supported Plaintiff's dismissed claims.[41]

### a.   Admissible Events

Several events underlying the dismissed claims are relevant to the hostile work environment claim and pose no risk of exposing either party to unfair prejudice or the jury to unnecessary confusion. Like much of McCoy's conduct at issue in this Memorandum Opinion, these incidents are prejudicial to AHOM but not unfairly so. A juror could infer an ongoing hostile work environment existed based on McCoy's previously displayed racial animus despite the facially race neutral allegations at issue in this motion. Further, these events do not lend themselves to an improper inference any more than the "overtly" racial incidents do alone.[42] As such, they will not be excluded under Rule 403.

---

[38] *Davis v. City of Newark*, 285 F. App'x 899, 902 (3d Cir. 2008).

[39] *See* Doc. 43 (Brief in Support of Motion in Limine to Exclude Dismissed Claims) at 4, 10.

[40] *Davis*, 285 F. App'x at 902.

[41] *Davis*, 285 F. App'x at 902; Doc. 44 (Motion in Limine to Exclude Unrelated Events), Ex. A (Holmes Dep.) at 134:20-135:11. This differs from other cases where the only behavior presented was facially neutral on race and was insufficient to support a racially hostile work environment claim. *See e.g.*, *Brown*, 2023 U.S. Dist. LEXIS 37155, 2023 WL 2395466, at *2-3.

[42] *Id.*

If Plaintiff chooses to present this evidence, she may not mention her prior claims of retaliation and constructive discharge. Doing so would subject AHOM to unfair prejudice as these claims were found to be deficient as a matter of law.[43]

### 1.    Physical Incidents

AHOM first challenges the relevance and admissibility of the two instances where McCoy snatched papers from Holmes on July 7, 2020.[44] A jury may believe that McCoy's prior, directly racial conduct and the written reprimand he received influenced his subsequent behavior.[45] This hostility is therefore probative of Plaintiff's remaining claim, even though on its face it is not "overtly" racial.[46]

### 2.    Holmes is Denied the Initial Software Training

Plaintiff was "denied" training because she "needed to answer phones[,]" but McCoy and the other customer service representatives attended this training.[47] Missing the training purportedly impacted her ability to perform her work.[48] No "overt[]" racial animus can be identified in McCoy's alleged insistence that Holmes not attend the training.[49] Despite this, I will not preclude use of this

---

[43]   *See* Doc. 30 (Ord. Granting and Denying Summary Judgment In Part).

[44]   *See* Doc. 43 (Brief in Support of Motion in Limine to Exclude Dismissed Claims) at 6.

[45]   *See* Doc. 44 (Motion in Limine to Exclude Unrelated Events), Ex. A (Holmes Dep.) at 134:20-135:11; 173:1-177:25; Doc. 22 (Motion for Summary Judgment), Ex. C (Tim McCoy Dep.) at 15:24-16:4.

[46]   *Davis*, 285 F. App'x at 902.

[47]   Doc. 43 (Brief in Support of Motion in Limine to Exclude Dismissed Claims) at 6; Doc. 44 (Motion in Limine to Exclude Unrelated Events), Ex. A (Holmes Dep.) at 21:1-6.

[48]   *See* Doc. 44 (Motion in Limine to Exclude Unrelated Events), Ex. A (Holmes Dep.) at 18:2-23.

[49]   *Davis*, 285 F. App'x at 902.

testimony at this juncture in the litigation. Singling Holmes out may be used by the jury to support an inference of racial animus and an ongoing hostile environment. The potential that Holmes would receive a make-up training does not change this analysis.[50] That is instead an explanation AHOM is welcome to offer the jury.[51]

### 3. Holmes' Work is Given to Defendant's Lewistown Employees

Holmes also complained that McCoy gave her work to employees at AHOM's Lewistown, Pennsylvania location for failing to do "a sufficient job."[52] Again, this allegation lacks an explicitly racial element, but it still supports an inference that McCoy subjected Holmes to an ongoing hostile work environment due to racial animus. Defendant is welcome to put forth any arguments, such as a concern with her performance,[53] to counteract the persuasiveness of this evidence.

### 4. Second Software Training Events

Defendant next challenges events connected to the second software training all the customer service representatives and McCoy received. AHOM seeks to exclude McCoy's reprimand of Holmes for asking questions during the training, his assertion that Holmes and Dunmire could "call 'whoever [they] want to, [but]

---

[50] *See* Doc. 44 (Motion in Limine to Exclude Unrelated Events), Ex. A (Holmes Dep.) at 17:6-25.

[51] Defendant is certainly welcome to make that argument to the jury, and while it does undermine the persuasiveness of this piece of evidence, it does not completely deprive this event of its probative value such that it should be excluded.

[52] Doc. 44 (Motion in Limine to Exclude Unrelated Events), Ex. A (Holmes Dep.) at 207:9-24.

[53] *See* Doc. 44 (Motion in Limine to Exclude Unrelated Events), Ex. B (Lois Dodson Decl.), Ex. 2 (Holmes Investigation Notes) at 10.

I'll never b[e] fired and I'll never go to jail[,]'" and his comment that they needed to be "thick-skinned" because he was "'tired of [their] bitching.'"[54]

While Dunmire's presence weakens the relevance of these various statements,[55] they are not so devoid of probative value that exclusion is currently warranted. Notably, McCoy's decision to reprimand Holmes could be viewed as evidence of an ongoing hostile work environment based on racial animus. The other two statements are probative of McCoy's awareness of his misconduct and the impact the written warning had on his management style. These considerations are relevant to the punitive damages analysis and any good faith argument Defendant may make.

### 5.    Holmes is Reprimanded for Not Sitting by Hibbert

Finally, Plaintiff will not be precluded from offering evidence that McCoy reprimanded her for not sitting next to Hibbert while she wore a piece of tape over her mouth to protest the final written warning AHOM issued her.[56] McCoy's response allowed Hibbert's "antagonistic" behavior to continue and "perpetuated

---

[54]  Doc. 44 (Motion in Limine to Exclude Unrelated Events), Ex. A (Holmes Dep.) at 142:18-143:6; Doc. 43 (Brief in Support of Motion in Limine to Exclude Dismissed Claims) at 9.

[55]  The Court acknowledges that there is a discrepancy in the record as to whether McCoy directed this behavior at Dunmire. Plaintiff's testimony indicates that McCoy made these statements to herself and Dunmire while Dunmire's testimony states only that McCoy told Holmes he is "tired of [her] bitching, [she] need[s] to be thick-skinned" after she complained about Hibbert. *See* Doc. 44 (Motion in Limine to Exclude Unrelated Events), Ex. A (Holmes Dep.) at 142:18-143:6, 209:24-210:5; Doc. 22 (Motion for Summary Judgment), Ex. E (Dunmire Dep.) at 51:16-21. Since Dunmire's presentation of the events is clearly relevant and not unfairly prejudicial, the Court focuses on Holmes' recollection of these statements.

[56]  *See* Doc. 44 (Motion in Limine to Exclude Unrelated Events), Ex. B (Lois Dodson Decl.), Ex. 2 (Holmes Investigation Notes) at 7-8.

the entire issue."[57] This is relevant to both the racially hostile work environment claim and the manner in which AHOM implemented its anti-discrimination program.

### b.    Excluded Events

Defendant's first motion in limine is granted as to the two events described below. These incidents, while certainly unpleasant, are not currently described to the Court in a way that suggests they are probative of a racially hostile work environment or Holmes' claim for punitive damages. If Plaintiff is able, she may make a "specific and narrowly tailored offer of proof as to the relevance and admissibility of" these allegations at trial.[58]

### 1.    Hoarding of Work and Embarrassment in Meetings

The allegation that "work such as CPAPs [and] Overnight Pulse OX [were] hoarded by other employees" that "refused" to train or assist her which led "to the embarrassment in morning meetings" is not relevant to the racially hostile work environment claim.[59] Nothing suggests an inference of racial animus, at least as currently described to the Court.[60]

---

[57]  *Id.* at 10.
[58]  *Cooper*, 2022 U.S. Dist. LEXIS 146708, at *5.
[59]  Doc. 43 (Brief in Support of Motion in Limine to Exclude Dismissed Claims) at 7.
[60]  Per Plaintiff's own testimony, McCoy berated all members of the Customer Service team in State College for failing to perform as well as the Lewistown office. *See* Doc. 44 (Motion in Limine to Exclude Unrelated Events), Ex. A (Holmes Dep.) at 207:25-208:19.

## 2.    Menial Work

Holmes also contends that McCoy told her that the work she performed was "menial" after she complained about not receiving the initial software training.[61] The conversation may reveal McCoy's disdain for customer service work, but it does not appear that it was motivated by racial animus.[62]

## 3.    Defendant's Second Motion in Limine: Unrelated Events

AHOM's second motion in limine seeks to exclude what it considers evidence "unrelated" to the racially hostile work environment claim. Based on Holmes' representations, the Court must only decide whether to exclude "Plaintiff's allegations that McCoy told employees in the office…that he had pushed his wife off the stairs at their house" and certain parts of Dunmire's testimony concerning incidents involving McCoy.[63]

### a.    Admissible Events

AHOM seeks to exclude Dunmire's observation that McCoy's management style did not change after Hibbert was terminated and her personal reasons for resigning.[64] No part of this testimony directly implicates racial hostility and its relevance to Holmes' racially hostile work environment claim is minimal at best.

---

[61]  Doc. 44 (Motion in Limine to Exclude Unrelated Events), Ex. A (Holmes Dep.) at 159:3-19.
[62]  *See id.*
[63]  Doc. 53 (Brief in Opposition to Exclude Unrelated Events) at 1-2.
[64]  The Court considers AHOM's request to reference Dumire's assertion that the State College location had a "[v]ery hostile environment" that was due to McCoy's "behavior" and the way he "allow[ed] other peoples' behavior to continue." Doc. 22 (Motion for Summary Judgment), Ex. E (Dunmire Dep.) at 8:22-23, 62:13-18.

But this testimony is relevant to the effect AHOM's corrective action had on McCoy and the jury's evaluation of whether Defendant acted in good faith in implementing its anti-discrimination program. Further, this information does not expose AHOM to unfair prejudice as the adequacy of its response is a contested fact, and it is unlikely to confuse the jury.

AHOM also seeks to exclude Dunmire's assertion that McCoy slammed doors, threw pens, and verbally degraded his employees.[65] Based on this testimony, it appears that this behavior was not solely directed at Holmes. At this juncture, the Court cannot conclude that it is completely devoid of probative value. When placed alongside the prior incidents of direct racial harassment that allegedly occurred, a juror may infer that racial animus motivated this behavior when McCoy directed it at Holmes. No unfair prejudice would occur from presenting this evidence, and it is not likely to confuse a jury.

### b.    Excluded Statements

McCoy's statement to "everyone in the office" about throwing his wife "off the stairs" at their home will be excluded.[66] This statement is not probative of any element of Plaintiff's claim or the inquiry required for punitive damages. Even if it were relevant, the probative value of this statement is minimal because it was not

---

[65]  *Id.* at 9:2-10.
[66]  Doc. 44 (Motion in Limine to Exclude Unrelated Events), Ex. A (Holmes Dep.) at 166:17-19.

directed specifically at Plaintiff.[67] Further, Holmes' suggestion that it is "probative of McCoy's personality, his demeanor, and his propensity to ignore company policy when it suits him or malevolence gets the best of him" is an attempt to improperly use character evidence in violation of Federal Rule of Evidence 404.[68]

The Court will also preclude Dunmire's testimony concerning the chair throwing incident.[69] Events that occurred after Plaintiff resigned are not relevant to her hostile work environment claim or Defendant's good faith defense.

### 4.    Defendant's Third Motion in Limine: Punitive Damages[70]

Finally, AHOM moves to either preclude evidence that is only relevant to Plaintiff's claim for punitive damages or, alternatively, to bifurcate the trial.[71] Punitive damages are only available when an "employer has engaged in intentional discrimination and has done so 'with malice or with reckless indifference to the federally protected rights of an aggrieved individual.'"[72] "Malice" or "reckless

---

[67] *Id.*

[68] Doc. 53 (Brief in Opposition to Motion in Limine to Exclude Unrelated Events) at 5. *See also United States v. Williams*, 900 F.3d 486, 490 ("Rule 404 prohibits 'an attempt to use a person's personality or psychological propensity to prove what the person did.'").

[69] Doc. 44 (Brief in Support of Motion in Limine to Exclude Unrelated Events) at 6.

[70] "It is well-settled that 'any case law construing the punitive damages standard set forth in [Title VII cases] is equally applicable to clarify the common law punitive damages standard with respect to a § 1981 claim.'" *Goodwin v. Fast Food Enters. #3, LLP*, C.A. No. 10-23 Erie, 2012 U.S. Dist. LEXIS 68503, at *15 n.1 (W.D. Pa. May 16, 2012) (quoting *Lowery v. Circuit City Stores, Inc.*, 206 F.3d 431, 441 (4th Cir. 2000)).

[71] *See* Doc. 46 (Motion in Limine to Exclude Plaintiff's Claim for Punitive Damages or, Alternatively, to Bifurcate the Trial).

[72] *Kolstad v. ADA*, 527 U.S. 526, 529-30 (1999) (quoting 42 U.S.C. § 1981a(b)(1)).

indifference" refer to "the employer's knowledge that it may be acting in violation of federal law, not its awareness that it is engaging in discrimination."[73]

"'An employer may be vicariously liable for the discrimination of its employee if the employee was serving in a 'managerial capacity' and committed the wrong while 'acting in the scope of his employment.'"[74] But "an employer may not be vicariously liable for the discriminatory employment decisions of managerial agents where these decisions are contrary to the employer's good-faith efforts to comply with" the law.[75] "This 'good-faith' exception 'shields employers who make a bona fide effort to institute nondiscrimination policies, from the prospect of an award of punitive damages when, despite the good faith efforts of the employer to comply with the law…discrimination has nonetheless occurred.'"[76]

Defendant notes that it has "comprehensive anti-harassment and anti-discrimination policies and an effective mechanism for reporting and addressing employee concerns."[77] Holmes was "informed of these policies from the outset of her employment" and in fact did complain to both an Area Manager and Human

---

[73] *Id.* at 535.

[74] *Middlebrooks v. Teva Pharmaceuticals USA, Inc.*, Civ. A. No. 17-412, 2019 WL 438092, at *9 (E.D. Pa. Feb. 4, 2019) (quoting *Ridley v. Costco Wholesale Corp.*, 217 F. App'x 130, 137 (3d Cir. 2007)).

[75] *Id.* (quoting *Kolstad*, 527 U.S. at 545).

[76] *Goodwin*, 2012 U.S. Dist. LEXIS 68503, at *16 (quoting *Copley v. BAX Global, Inc.*, 97 F. Supp. 2d 1164, 1168 (S.D. Fla. 2000)).

[77] Doc. 47 (Brief in Support of Motion in Limine to Exclude Plaintiff's Claim for Punitive Damages or, Alternatively, to Bifurcate the Trial) at 7.

Resources in March 2020.[78] After receiving these complaints, AHOM contends it "promptly investigated" and then "disciplined the individual's involved."[79]

### a.   Preclude Punitive Damages

The Court has previously noted that AHOM's "response to McCoy's actions could be viewed by a jury as markedly deficient."[80] He "had a history of making, to put it generously, racially insensitive remarks to his only black employee and, at a minimum, condoned racial statements and behavior from Hibbert…."[81] AHOM "only issued a written warning—one of the mildest forms of discipline" it could impose—"and this was not in response to McCoy's racially insensitive behavior but, rather, was in response to McCoy having permitted Hibbert to behave in an unprofessional manner."[82] "A reasonable juror could…view as disingenuous [AHOM's] reasons for issuing such mild discipline."[83] Whether Defendant sufficiently undertook good faith efforts to comply with the law is consequently a question for the jury.[84]

---

[78]   *Id.* at 7-8.
[79]   *Id.* at 8.
[80]   Doc. 29 (Summary Judgment Mem. Op.) at 21.
[81]   *Id.*
[82]   *Id.* at 22.
[83]   *Id.*
[84]   *See e.g.*, *Lazzaro v. Rite Aid Corp.*, No. 09-CV-1140, 2010 U.S. Dist. LEXIS 84511, at *24-26 (W.D. Pa. Aug. 17, 2010) (denying summary judgment despite the defendant implementing anti-discrimination policies and training due to other evidence suggesting intentional discrimination occurred with "malice" or "reckless indifference" on the part of the defendant).

### b.    Bifurcation of the Trial

Federal Rule of Civil Procedure 42(b) "provides that the 'Court, in furtherance of convenience or to avoid prejudice, or when separate trials will be conducive to expedition and economy, may order a separate trial of any claim, cross-claim, counterclaim, or third-party claim....'"[85] "When deciding whether to sever claims, the Court is required to balance 'the convenience of the parties, avoidance of prejudice to either party, and promotion of the expeditious resolution of the litigation.'"[86] The decision to bifurcate "is completely within [my] discretion" but must "be based on the particular facts of the case."[87]

AHOM "has the burden of showing that bifurcation is proper in light of the general principles that a single trial tends to lessen the delay, expense and inconvenience to all parties."[88] In an attempt to meet that burden, Defendant contends that "[t]he framework for awarding punitive damages is complicated and [] likely to confuse the jury" given "[a] finding of intentional discrimination...may be insufficient in itself to satisfy" the showing required to award punitive damages and AHOM can avoid punitive damages through an acceptable showing of good

---

[85]  *Johnson v. King Media, Inc.*, Civ. A. No. 01-2311, 2002 U.S. Dist. LEXIS 11332, at *16 (E.D. Pa. June 24, 2002) (quoting FED. R. CIV. P. 42(b)).

[86]  *Id.* (quoting *Official Comm. Of Unsecured Creditors v. Shapiro*, 190 F.R.D. 352, 355 (E.D. Pa. 2000)).

[87]  *Miller v. New Jersey Transit Auth. Rail Operations*, 160 F.R.D. 37, 40 (D.N.J. 1995) (citing *Lowe v. Phila. Newspapers, Inc.*, 594 F. Supp. 123, 125 (E.D. Pa. 1984)); *Zawicki v. Armstrong*, No. 3:16-CV-453, 2017 WL 6206290, at *6 (M.D. Pa. Dec. 8, 2017) (Munley, J.) (citing *Lis v. Robert Packer Hosp.*, 579 F.2d 819, 824 (3d Cir. 1978)).

[88]  *Miller*, 160 F.R.D. at 40.

faith efforts.[89] Due to this, Defendant suggests the Court follows the procedure used by the District of New Jersey in *Miller v. N.J. Transit Auth*.[90] in which the jury first heard the liability case and then proceeded to the damages phase.[91] The damages phase was further divided into an initial section on compensatory damages and, as needed, a second on punitive damages.[92]

Plaintiff suggests that she can "present the evidence supporting her claim for punitive damages in a way that does not prejudice" AHOM.[93] "Specifically, Plaintiff's counsel can give his opening remarks to the jury without mentioning punitive damages" and then "present evidence during her case in chief that supports submission of the issue of punitive damages to the jury, with the exception of evidence of" Defendant's wealth.[94] After this presentation, AHOM may then, if it so chooses, "move for judgment as a matter of law on the issue of punitive damages" and, if resolved in her favor, Plaintiff would then "present evidence of" AHOM's wealth.[95] Holmes believes "[t]his approach avoids any unnecessary bifurcation of the trial, prejudice to the parties, []or waste of time."[96]

---

[89]  Doc. 47 (Brief in Support of Motion in Limine to Exclude Plaintiff's Claim for Punitive Damages or, Alternatively, to Bifurcate the Trial) at 9-10.
[90]  160 F.R.D. 37 (D.N.J. 1995).
[91]  *See* Doc. 47 (Brief in Support of Motion in Limine to Exclude Plaintiff's Claim for Punitive Damages or, Alternatively, to Bifurcate the Trial) at 10 (citing *Miller*, 160 F.R.D. at 41).
[92]  *Id.*
[93]  Doc. 52 (Brief in Opposition of Motion in Limine to Exclude Plaintiff's Claim for Punitive Damages or, Alternatively, to Bifurcate the Trial) at 1.
[94]  *Id.*
[95]  *Id.* at 1-2.
[96]  *Id.* at 2.

Plaintiff further notes that this approach is similar to that taken by the Eastern District of Pennsylvania in *Thomson v. Prudential Property & Casualty Ins. Co.*,[97] a case cited by Defendant.

After considering "the convenience of the parties, avoidance of prejudice to either party, and promotion of the expeditious resolution of the litigation[,]" the Court concludes that bifurcation is unnecessary.[98] The allegations in this case, while serious, are not the kind of prejudice inspiring injuries found in the cases cited by AHOM.[99] Further, Defendant "point[s] to no particular issues that are not present in the typical case."[100] In the words of my late colleague, the Honorable James M. Munley, writing for this Court:

> "The court is confident that it can, with the assistance of counsel, construct a jury charge and a verdict slip that will prevent prejudice to [Defendant]. We presume that a jury follows instructions, even in difficult cases, and finds that proper instructions will prevent any prejudicial confusion."[101]

Consequently, Defendant's Motion in Limine to Preclude Evidence in Support of Plaintiff's Claim for Punitive Damages or, in the Alternative, to Bifurcate is denied. The Court agrees that Plaintiff's proposed approach, when combined with carefully crafted jury instructions, will avoid any prejudice to AHOM and is in the interest of judicial economy.

---

[97] No. 91-407, 1992 U.S. Dist. LEXIS 12627 (E.D. Pa. Aug. 24, 1992).
[98] *Johnson*, 2002 U.S. Dist. LEXIS 11332, at *16.
[99] *See e.g.*, *Miller*, 160 F.R.D. 39 (Plaintiff lost three limbs).
[100] *Zawicki*, 2017 WL 6206290, at *6.
[101] *Id.*

## III.   CONCLUSION

Defendant's Motion in Limine to Exclude Evidence of Punitive Damages or, Alternatively, to Bifurcate the Trial is denied. The remaining motions in limine are denied in part and granted in part. Plaintiff's Motion in Limine is granted as to the Seko Logistics settlement agreement but is otherwise denied. As to the events underlying Plaintiff's dismissed claims, she may not present evidence concerning the hoarding of work by certain employees and McCoy's "menial" comment or mention the dismissed retaliation and constructive discharge claims. That motion is otherwise denied. For the evidence at issue in Defendant's Motion in Limine to Exclude Unrelated Events, Plaintiff is precluded from mentioning McCoy's statement concerning his wife and Dunmire's description of the chair throwing incident. This motion is similarly otherwise denied.

An appropriate Order follows.

BY THE COURT:


_s/ Matthew W. Brann_
Matthew W. Brann
Chief United States District Judge