**IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| PATRICIA HOLMES, | § | |
|     Plaintiff, | § | |
| | § | |
| v. | § | Case No. 4:21-cv-01683-MWB |
| | § | (Hon. Matthew W. Brann) |
| AMERICAN HOME | § | |
| PATIENT/LINCARE, | § | |
|     Defendant. | § | |

**BRIEF IN SUPPORT OF DEFENDANT'S
RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW,
MOTION FOR NEW TRIAL OR REMITTITUR,
AND MOTION TO AMEND THE JUDGMENT**

# TABLE OF CONTENTS

Table of Citations ........................................................................................... iii

Introduction ..................................................................................................... 1

Procedural History .......................................................................................... 3

Statement of Facts ........................................................................................... 3

Standard ........................................................................................................... 5

Questions Involved ......................................................................................... 6

Argument ......................................................................................................... 7

I.      This Court Should Grant a New Trial on Liability. ........................... 7

        A.      This Court Should Grant Judgment as a Matter of Law that Hibbert's October 2019 "Oreo Baby" Comment Did Not Create a Hostile Work Environment. ...................................... 8

        B.      This Court Should Grant a New Trial Because the Jury's Failure to Find that AHOM Established the *Faragher–Ellerth* Affirmative Defense Is Against the Great Weight of the Evidence. ........................................................................... 12

II.     Because the Compensatory Damages Award Is Excessive, This Court Should Order a New Trial or Suggest a Remittitur. ................. 20

III.    This Court Should Grant Judgment as a Matter of Law Regarding Punitive Damages or, at a Minimum, Reduce Them to a Constitutional Amount. ................................................................... 26

        A.      This Court Should Grant Judgment as a Matter of Law in Favor of AHOM Regarding Punitive Damages. ................ 26

        B.      If this Court Allows Any Punitive Damages, They Must Be Reduced to a Constitutional Amount. ............................... 28

# TABLE OF CONTENTS
## (CONTINUED)

**Page**

1.  Among circumstances permitting imposition of punitive damages, the relative degree of reprehensibility is small. ..........................................................29

2.  Punitive damages should be no more than compensatory damages. .........................................30

3.  The comparable civil penalty is the $300,000 cap in Title VII. .......................................................32

IV.  This Court Should Grant a New Trial Because the Jury's Verdict Resulted from Passion or Prejudice. .............................................33

V.  The Judgment Should be Modified to Award Damages Only Against AHOM. .....................................................................................35

Conclusion & Prayer ..............................................................................36

Certificate of Compliance with Word-Count Limits .............................38

# TABLE OF CITATIONS

**Page(s)**

## CASES

*Ali v. Woodbridge Twp. Sch. Dist.*,
   957 F.3d 174 (3d Cir. 2020) ................................................................9

*AutoZone, Inc. v. EEOC*,
   421 F. App'x 740 (9th Cir. 2011) ......................................................27

*Avaya Inc., RP v. Telecom Labs, Inc.*,
   838 F.3d 354 (3d Cir. 2016) .............................................................12

*Bach v. First Union Nat'l Bank*,
   486 F.3d 150 (6th Cir. 2007) ............................................................31

*Baldwin v. Blue Cross/Blue Shield of Ala.*,
   480 F.3d 1287 (11th Cir. 2007) .............................................16, 18, 19

*Blakey v. Continental Airlines, Inc.*,
   992 F. Supp. 731 (D.N.J. 1998) .............................................22, 23, 25

*Brand Mktg. Group LLC v. Intertek Testing Servs., N.A., Inc.*,
   801 F.3d 347 (3d Cir. 2015) .............................................................29

*Briggs v. Temple Univ.*,
   339 F. Supp. 3d 466 (E.D. Pa. 2018) .................................................24

*Burlington Indus., Inc. v. Ellerth*,
   524 U.S. 742 (1998) .............................................................13, 15, 19

*Castleberry v. STI Group*,
   863 F.3d 259 (3d Cir. 2017) ...........................................................8, 9

*Cortez v. Trans Union, LLC*,
   617 F.3d 688 (3d Cir. 2010) .................................................5, 28, 33

*Drumgo v. Kuschel*,
   No. 22-2771, 2024 WL 511041 (3d Cir. Feb. 9, 2024).......................30

# TABLE OF CITATIONS
## (CONTINUED)

**Page(s)**

*Dunn v. HOVIC*,
   1 F.3d 1371 (3d Cir. 1993) ...................................................................33

*EEOC v. New Breed Logistics*,
   783 F.3d 1057 (6th Cir. 2015) ...........................................................27

*Evans v. Port Auth. of N.Y. & N.J.*,
   273 F.3d 346 (3d Cir. 2001) .........................................................passim

*Faragher v. City of Boca Raton*,
   524 U.S. 775 (1998)..........................................................13, 18, 19

*Ferraro v. Kellwood Co.*,
   440 F.3d 96 (2d Cir. 2006) ...................................................................19

*Finnerty v. William H. Sadlier, Inc.*,
   176 F. App'x 158 (2d Cir. 2006) .........................................................16

*Giedgowd v. Cafaro Grp., LLC*,
   No. CV 20-6184, 2021 WL 4963533 (E.D. Pa. Oct. 26, 2021) .........................24

*Glass v. Snellbaker*,
   No. 05-1971 (JBS), 2008 WL 4371760 (D.N.J. Sept. 17, 2008) ................21, 24

*Graboff v. Colleran Firm*,
   744 F.3d 128 (3d Cir. 2014) ...................................................................5

*Gumbs v. Pueblo Int'l, Inc.*,
   823 F.2d 768 (3d Cir. 1987) .........................................................passim

*Holly D. v. Cal. Inst. of Tech.*,
   339 F.3d 1158 (9th Cir. 2003) .........................................................15

*Holt v. Pennsylvania*,
   No. 21-2635, 2022 WL 3657183 (3d Cir. Aug. 25, 2022) ...................................9

*Howell v. Compass Group*,
   448 F. App'x 30 (11th Cir. 2011) .........................................................26

# TABLE OF CITATIONS
## (CONTINUED)

**Page(s)**

*Hurley v. Atl. City Police Dep't*,
174 F.3d 95 (3d Cir. 1999) ............................................................14, 33

*Hurley v. Atl. City Police Dep't*,
933 F. Supp. 396 (D.N.J. 1996), *aff'd*, 174 F.3d 95 (3d Cir. 1999) ............24, 25

*Huston v. Procter & Gamble Paper Prods. Corp.*,
568 F.3d 100 (3d Cir. 2009) ...............................................................11

*Jensen v. Potter*,
435 F.3d 444 (3d Cir. 2006) .........................................................11, 15

*Johansen v. Combustion Eng'g, Inc.*,
170 F.3d 1320 (11th Cir.1999) ........................................................5, 28

*Jones v. Pa. State Police*,
No. CV 16-4205, 2018 WL 2214812 (E.D. Pa. May 11, 2018), *aff'd*, 794 F.
App'x 177 (3d Cir. 2019) ...................................................................24

*Jones v. Se. Pa. Transp. Auth.*,
796 F.3d 323 (3d Cir. 2015) ...............................................................16

*Jones v. United Parcel Serv., Inc.*,
674 F.3d 1187 (10th Cir. 2012) ..........................................................31

*Jurinko v. Med. Protective Co.*,
305 F. App'x 13 (3d Cir. 2008) ..........................................................30

*Knabe v. Boury Corp.*,
114 F.3d 407 (3d Cir. 1997) ...............................................................16

*Kolstad v. Am. Dental Ass'n*,
527 U.S. 526 (1999)...........................................................................26

*Leopold v. Baccarat, Inc.*,
239 F.3d 243 (2d Cir. 2001) ...............................................................18

# TABLE OF CITATIONS
## (CONTINUED)

**Page(s)**

*Mandel v. M & Q Packaging Corp.*,
  706 F.3d 157 (3d Cir. 2013) ..................................................................7

*McDonough v. City of Quincy*,
  452 F.3d 8 (1st Cir. 2006)....................................................................31

*Meritor Sav. Bank, FSB v. Vinson*,
  477 U.S. 57 (1986)................................................................................7

*Minarsky v. Susquehanna Cnty.*,
  895 F.3d 303 (3d Cir. 2018) .........................................................15, 18

*Nitkin v. Main Line Health*,
  67 F.4th 565 (3d Cir. 2023) ...............................................................7, 9

*Reed v. MBNA Mktg. Sys., Inc.*,
  333 F.3d 27 (1st Cir. 2003)..................................................................19

*Saccameno v. U.S. Bank Nat'l Ass'n*,
  943 F.3d 1071 (7th Cir. 2019) .............................................................30

*Sallitt v. Stankus*,
  720 F. Supp. 2d 645 (M.D. Pa. 2010)..................................................24

*Sessoms v. Trs. of Univ. of Pa.*,
  739 F. App'x 84 (3d Cir. 2018) .............................................................9

*Sheridan v. E.I. DuPont de Nemours & Co.*,
  100 F.3d 1061 (3d Cir. 1996) (en banc) ...............................................5

*Springer v. Henry*,
  435 F.3d 268 (3d Cir. 2006) ..................................................................5

*Starceski v. Westinghouse Elec. Corp.*,
  54 F.3d 1089 (3d Cir. 1995) ..................................................................5

*State Farm Mut. Auto. Ins. Co. v. Campbell*,
  538 U.S. 408 (2003)..........................................................28, 29, 30, 31

TABLE OF CITATIONS
(CONTINUED)

Page(s)

*Westbrook v. Gen. Tire & Rubber Co.*,
    754 F.2d 1233 (5th Cir. 1985) ..............................................................35

*Wilburn v. Maritrans GP Inc.*,
    139 F.3d 350 (3d Cir. 1998) ..........................................................12, 20

*William A. Graham Co. v. Haughey*,
    646 F.3d 138 (3d Cir. 2011) ................................................................20

*Williams v. ConAgra Poultry Co.*,
    378 F.3d 790 (8th Cir. 2004) .........................................................31, 32

**STATUTES**

42 U.S.C. § 1981 .................................................................................3, 25, 32

42 U.S.C. § 1983 ...........................................................................................25

Civil Rights Act of 1964 (Pub. L. 88-352) (Title VII) ...........................2, 25

**RULES**

Fed. R. Civ. P. 50 .......................................................................................1, 5

Fed. R. Civ. P. 59 ...........................................................................................1

Defendant American HomePatient, Inc. ("AHOM")—incorrectly named in the caption and judgment as "American Home Patient/Lincare"—respectfully renews its motion for judgment as a matter of law pursuant to Rule 50(b), moves for a new trial (or remittitur) pursuant to Rule 59(a), and moves to alter or amend the judgment under Rule 59(e).  *See* Dkt. 116 (granting the motion to extend the word limit for a brief in support of this combined post-judgment motion).

## INTRODUCTION

While many arguments in this motion were raised on summary judgment and at trial and are re-urged here for appellate preservation, four of them in particular warrant thorough consideration by this Court in connection with this motion.

1.     The jury found that Hibbert's single comment in October 2019 regarding her biracial grandchild, standing alone, was sufficiently severe to create a hostile work environment.  That was error—it is well-settled in the Third Circuit that a single, isolated comment of this nature is insufficient to create a hostile work environment, and this Court should render judgment as a matter of law on this claim. Because the jury did not apportion damages between claims for the hostile work environment allegedly created by Hibbert and that allegedly created by McCoy, a new trial is necessary.

2.     The jury's finding that AHOM failed to establish the *Faragher–Ellerth* affirmative defense is against the great weight and preponderance of the evidence.

1

AHOM's policies condemned racial harassment, and the evidence demonstrated that they were enforced and effective. And the evidence showed that Holmes failed to take advantage of her remedies under these policies, admittedly failing to report any misconduct *for nearly five months*. A miscarriage of justice would result if the verdict were to stand. This Court should grant a new trial on this ground.

3.    The jury's award of compensatory damages for emotional distress is excessive. Holmes offered only limited testimony about her emotional state, which was not corroborated by any other witness, and she neither sought nor received a medical diagnosis or treatment. The jury awarded far more to Holmes than has been awarded to other plaintiffs who have suffered far greater emotional distress. This Court should order a new trial or, alternatively, suggest a remittitur.

4.    The $20 million punitive damages award—40 times the compensatory damages amount—far exceeds constitutional limits. In this case, because the jury awarded substantial compensatory damages for emotional distress and because Title VII of the Civil Rights Act of 1964 (the most analogous statute) limits recovery to a combined $300,000 for compensatory and punitive damages, the U.S. Constitution limits punitive damages to the compensatory damages. This Court should, at least, amend the judgment to reduce punitive damages to the constitutional limit.

The other arguments, although perhaps more familiar, are equally meritorious, and this Court should grant judgment as a matter of law or order a new trial.

2

## PROCEDURAL HISTORY

On April 10, 2024, a jury returned a verdict in favor of Plaintiff Patricia Holmes on her claims for creation of a hostile work environment, awarding $500,000 in compensatory damages and $20 million in punitive damages. Dkt. 99. That day, the clerk entered judgment on the verdict. Dkt. 101.

## STATEMENT OF FACTS

This Court is familiar with the facts. Plaintiff Patricia Holmes worked as a Customer Service Representative for AHOM for ten months, from October 2019 until July 2020. Dkt. 1 at 2.

After resigning in July 2020, Plaintiff sued AHOM (incorrectly named in the caption as "American Home Patient/Lincare") for various claims under 42 U.S.C. § 1981. Dkt. 1. This Court granted summary judgment in favor of AHOM on several claims and theories, including constructive discharge, retaliation, and the conduct of Beverly Hibbert during an incident in March 2020. Dkt. 29.

Plaintiff proceeded to trial on two theories: (1) a hostile work environment based on a comment that Hibbert, a coworker, made regarding Hibbert's biracial grandchild in October 2019; and (2) a hostile work environment created by Holmes's supervisor, Tim McCoy, in four incidents: a "fit test" in October 2019, comments about a nickname for McCoy's uncle in November 2019, comments about a sportscaster being fired, and the incident on March 5, 2020. Ex. 3 at 62.

AHOM's policies unequivocally condemn racial harassment.  Ex. 4 (PX2). Plaintiff was fully aware of these policies and knew how to report any harassment. Ex. 2 at 117.  But she failed to report any wrongdoing according to AHOM's policies until months later on March 5.  At trial, Holmes offered no explanation for her failure to follow these processes.

When Plaintiff ultimately reported McCoy's conduct on March 5, AHOM acted swiftly and effectively to correct it.  Employee Relations Manager Lois Dodson and Area Manager Mark Cattron confirmed Plaintiff's report and disciplined Hibbert and McCoy.  Ex. 1 at 38-39; Ex. 1 at 87-88.  Hibbert was terminated, and McCoy's discipline was effective: According to Holmes, the "racial banter stop[ped]" after she followed AHOM's policies and reported McCoy in March.  Ex. 2 at 88; *see also* Ex. 2 at 122 (Holmes: "He did not make any racial comments after March."); Ex. 2 at 135 (Holmes: "[T]here was nothing racial after March.").

Holmes presented limited testimony about her emotional suffering, Ex. 2 at 66-67; Ex. 2 at 96-97, and she never sought nor received any medical diagnosis or treatment.  Ex. 2 at 114-16.  No witness corroborated her emotional distress, and her then-boyfriend, Jeff Moore, with whom she lived, testified that she never mentioned any mistreatment by AHOM, McCoy, or Hibbert.  Ex. 2 at 200-02.

## STANDARD

Judgment as a matter of law should be granted when "a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue." Fed. R. Civ. P. 50(a).  The question is "whether, viewing the evidence in the light most favorable to sustaining the verdict, a reasonable jury could have found for the prevailing party." *Graboff v. Colleran Firm*, 744 F.3d 128, 134 (3d Cir. 2014).

A new trial is necessary "where the 'great weight' of the evidence cuts against the verdict and 'where a miscarriage of justice would result if the verdict were to stand.'" *Springer v. Henry*, 435 F.3d 268, 274 (3d Cir. 2006) (quoting *Sheridan v. E.I. DuPont de Nemours & Co.*, 100 F.3d 1061, 1076 (3d Cir. 1996) (en banc)).  "[A] new trial may be granted even if the evidence is legally sufficient to support the verdict[.]" *Sheridan*, 100 F.3d at 1076.

"A remittitur is in order when a trial judge concludes that a jury verdict is 'clearly unsupported' by the evidence and exceeds the amount needed to make the plaintiff whole, *i.e.*, to remedy the effect of the employer's [unlawful conduct]." *Starceski v. Westinghouse Elec. Corp.*, 54 F.3d 1089, 1100 (3d Cir. 1995).

When punitive damages exceed constitutional limits, this Court must amend the judgment to reduce them to the constitutional maximum.  *Cortez v. Trans Union, LLC*, 617 F.3d 688, 716 (3d Cir. 2010) (quoting *Johansen v. Combustion Eng'g, Inc.*, 170 F.3d 1320, 1331 (11th Cir.1999)).

## QUESTIONS INVOLVED

AHOM strongly and unequivocally condemns racial discrimination in all its forms.  However, if it is not made aware of such conduct, it cannot take action to prevent it.  That does not mean such conduct was condoned.

The arguments in this motion, like the arguments at trial, do not defend any misconduct by employees of AHOM but instead concern the liability of AHOM as an entity.  The questions involved are:

(1)  whether AHOM is entitled to judgment as a matter of law on Plaintiff's theory that Hibbert's October 2019 comment was sufficiently severe to constitute a hostile work environment;

(2)  whether AHOM can be held vicariously liable for acts of its supervisor when Plaintiff failed to report the supervisor's earlier misconduct and whether a new trial is necessary because of the jury's failure to find the *Faragher–Ellerth* affirmative defense satisfied;

(3)  whether the $500,000 in compensatory damages awarded to Plaintiff for purely emotional distress is excessive (requiring a remittitur);

(4)  whether AHOM is entitled to judgment as a matter of law on Plaintiff's claim for punitive damages, given the uncontroverted evidence that AHOM acted in good faith to prevent racial discrimination and harassment, including taking effective action to eliminate any hostile work environment as soon as Plaintiff reported it;

(5)  if this Court permits Plaintiff to recover punitive damages, the amount that the U.S. Constitution permits her to receive;

(6)  whether a new trial is necessary because the jury's verdict was the result of passion and prejudice; and

(7)  whether any judgment should be modified to award damages only against "American HomePatient, Inc." (an issue on which this Court has ordered the parties to file a stipulation, Dkt. 123).

**ARGUMENT**

## I.   This Court Should Grant a New Trial on Liability.

Plaintiff's hostile work environment claim required her to prove the following:

> (1) [she] suffered intentional discrimination because of [her race],
>
> (2) the discrimination was severe or pervasive,
>
> (3) the discrimination detrimentally affected the plaintiff,
>
> (4) the discrimination would detrimentally affect a reasonable person in like circumstances, and
>
> (5) the existence of respondeat superior liability.

*Mandel v. M & Q Packaging Corp.*, 706 F.3d 157, 167 (3d Cir. 2013). "For discrimination to constitute severe or pervasive behavior, it must 'alter the conditions of [the victim's] employment and create an abusive working environment.'" *Nitkin v. Main Line Health*, 67 F.4th 565, 570 (3d Cir. 2023) (quoting *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 67 (1986)) (alteration in original).

Holmes raised—and the jury found in her favor on—two claims: (i) a hostile work environment created by the October 2019 conduct of coworker Hibbert; and (ii) a hostile work environment created by supervisor McCoy.

This Court should grant judgment as a matter of law on this claim as to Hibbert's conduct, and because it is impossible to discern which portion of the damages were attributed to this liability theory, this Court must grant a new trial.

7

With respect to McCoy's conduct, this Court should grant a new trial because the jury's failure to find that AHOM established the *Faragher–Ellerth* affirmative defense was against the great weight of the evidence, and a miscarriage of justice would result if the verdict were allowed to stand.

### A. This Court Should Grant Judgment as a Matter of Law that Hibbert's October 2019 "Oreo Baby" Comment Did Not Create a Hostile Work Environment.

This Court granted summary judgment in favor of AHOM with respect to Hibbert's March 2020 misconduct, Dkt. 29 at 17, and instructed the jury "not to consider Beverly Hibbert's conduct in March 2020." Dkt. 98 at 21. Plaintiff's claim at trial based on the conduct of Hibbert was thus limited to a single act testified to by Plaintiff: Hibbert referring to her own grandchild as an "Oreo baby" in October 2019. Ex. 2 at 64.

This Court should grant judgment as a matter of law on this claim. First, a reasonable jury would not have a legally sufficient evidentiary basis to find that this single comment was sufficiently severe to create a hostile work environment. Although "[a]n extreme isolated act of discrimination can create a hostile work environment," *Castleberry v. STI Group*, 863 F.3d 259, 265 (3d Cir. 2017), acts recognized to have done so have been far more extreme than Hibbert's October 2019 comment.

8

"[A] single incident rarely counts as a hostile work environment," with the exception "only for single incidents that are unusually egregious." *Holt v. Pennsylvania*, No. 21-2635, 2022 WL 3657183, at *3 (3d Cir. Aug. 25, 2022) (non-precedential). For example, in *Castleberry*, *supra*, the Third Circuit held that a "supervisor's single use of the 'n-word'" can be sufficiently severe, depending on the context. 863 F.3d at 264; *see also id.* (explaining that "a plaintiff must plead the incident to be extreme to amount to a change in the terms and conditions of employment for it to serve as the basis of a harassment claim" (internal quotation marks omitted)). In that case, the supervisor "used [the most offensive] racially charged slur in front of them" and "accompanied [it with] threats of termination." *Id.* at 265.

As here, utterances can be "offensive" but nonetheless "not rise to the level of unreasonably interfering with an employee's job performance." *Ali v. Woodbridge Twp. Sch. Dist.*, 957 F.3d 174, 181 (3d Cir. 2020); s*ee id.* at 182 (concluding that offensive remarks based on a coworker's national origin were "offensive" but did not "rise to the level of severity that would alter working conditions"); *Nitkin v. Main Line Health*, 67 F.4th 565, 573 (3d Cir. 2023) (involving repeated sexualized comments that "do not rise to a level that could fairly be called severe or pervasive"); *Sessoms v. Trs. of Univ. of Pa.*, 739 F. App'x 84, 90 (3d Cir. 2018) (holding that "a single incident in which [a coworker] made unwanted physical contact with [the

plaintiff's] legs," "while inappropriate and unwelcome, was not so egregious as to" create a hostile work environment).

Hibbert's October 2019 comment fits squarely within this category.  Although offensive, it was—as a matter of law—not "unusually egregious" and not the type of single incident that could count as a hostile work environment under Third Circuit precedent.

Nor did Plaintiff present evidence at trial that Hibbert's October 2019 remark was so severe that it amounted to a change in the terms and conditions of her employment.  Holmes offered minimal testimony about the incident and how it affected her:

> Q. What did you think when you heard her talking about the Oreo grandbaby?
>
> A. I thought that Beverly Hibbert lacked decorum. I thought that she was a person that was rough around the edges, so-to-speak.

Ex. 2 at 64.  Testimony that Hibbert "lacked decorum" and "was rough around the edges" falls far short of evidence that the incident was so egregious that it created a hostile work environment.

Based on Plaintiff's testimony about the incident, a reasonable jury would not have a legally sufficient evidentiary basis to find that Hibbert's October 2019 comment was "severe or pervasive" discrimination; that Holmes was detrimentally affected by the remark; or that the discrimination would detrimentally affect a

reasonable person in like circumstance.  This Court thus should grant judgment as a matter of law on Plaintiff's claim based on Hibbert's October 2019 remark.

In addition, a reasonable jury would not have a legally sufficient evidentiary basis to find AHOM vicariously liable for Hibbert's October 2019 remark. "[E]mployer liability for co-worker harassment exists only if the employer failed to provide a reasonable avenue for complaint or, alternatively, if the employer knew or should have known of the harassment and failed to take prompt and appropriate remedial action." *Huston v. Procter & Gamble Paper Prods. Corp.*, 568 F.3d 100, 104 (3d Cir. 2009).  The uncontroverted evidence at trial demonstrated that McCoy took immediate action by verbally reprimanding Hibbert.  *See* Ex. 1 at 111 ("I told her not to use that terminology.  It was derogatory"); Ex. 2 at 64 ("Tim McCoy stated to Beverly, and I quote, Jeez, Bev."); Ex. 2 at 119 ("Jeez, Beverly; don't say stuff like that.").  After this reprimand, Hibbert did not repeat the comment to Holmes, and she did not engage in any other misconduct complained of by Holmes until five months later, in March 2020.[1]  McCoy's verbal reprimand was effective in stopping Hibbert's behavior, and "[a]n effective remedy—one that stops the harassment—is adequate per se." *Jensen v. Potter*, 435 F.3d 444, 453 (3d Cir. 2006).  Because

---

[1] The five-month period for which Holmes does not testify that Hibbert engaged in any wrongful conduct demonstrates the effectiveness of AHOM's response.  And as this Court held in granting summary judgment, AHOM again responded effectively to Hibbert's March 2020 misconduct.

AHOM took immediate action and stopped Hibbert's behavior, it cannot be vicariously liable.

If this Court grants judgment as a matter of law on the theory based on the October 2019 comment, then a new trial is necessary. The jury answered a single damages question, and this Court cannot "discern which portion of the damages the jury attributed to [each theory]." *Avaya Inc., RP v. Telecom Labs, Inc.*, 838 F.3d 354, 409 (3d Cir. 2016) ("There is therefore no way to discern which portion of the damages the jury attributed to the PDS tying claim, and which to the PBX attempted monopolization claim"); *see also Wilburn v. Maritrans GP Inc.*, 139 F.3d 350, 361 (3d Cir. 1998) ("Where a jury has returned a general verdict and one theory of liability is not sustained by the evidence or legally sound, the verdict cannot stand because the court cannot determine whether the jury based its verdict on an improper ground.").

### B. This Court Should Grant a New Trial Because the Jury's Failure to Find that AHOM Established the *Faragher–Ellerth* Affirmative Defense Is Against the Great Weight of the Evidence.

This Court should grant a new trial because the failure to find that AHOM established an affirmative defense to vicarious liability for McCoy's creation of a hostile work environment is against the great weight of the evidence.

12

It is well-settled that companies are not always vicariously liable for a supervisor's creation of a hostile work environment.  A corporate defendant is not vicariously liable if it proves:

> (a) that the employer exercised reasonable care to prevent and correct promptly any [racially] harassing behavior, and
>
> (b) that the plaintiff employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise.

*Faragher v. City of Boca Raton*, 524 U.S. 775, 807 (1998); *see also Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 765 (1998).

The jury's failure to find that AHOM proved these elements is against the great weight of the evidence, and a miscarriage of justice would result if the verdict were allowed to stand.  The facts of this case are precisely the circumstances for which the *Faragher–Ellerth* affirmative defense was created: AHOM exercised reasonable care to prevent and correct harassment, and Plaintiff failed to take advantage of preventative or corrective opportunities provided by AHOM, which reacted swiftly and effectively as soon as she complained.

AHOM's policies unequivocally condemned harassment and discrimination: "All employees and applicants are covered by these policies and are strictly prohibited from engaging in any form of discriminatory or harassing conduct." Ex. 4 (PX2) at 33.  And the policies identified numerous individuals to whom discrimination or harassment must be reported:

13

**REPORTING PROCEDURE**

If you believe you have been discriminated against, harassed or retaliated against, or you have any concerns or suspicions of discrimination, harassment or retaliation in the workplace against you or anyone else, you are required to immediately notify any one of the persons listed below based on your location:

| | |
|---|---|
| Field Locations (Centers, Pharmacies, Infusion, Enteral, Ancillary Services, CCSR Locations) | Region/Division Manager<br>Head of Human Resources<br>Head of Employee Relations/HR Services<br>Employee Relations Manager<br>HR Business Partner |
| Region Billing and Collection Offices/CCC | Regional Billing Manager<br>General Manager<br>Head of Human Resources<br>Head of Employee Relations/HR Services<br>Employee Relations Manager<br>HR Business Partner |
| Corporate Offices | Department Head<br>Head of Human Resources<br>Head of Employee Relations/HR Services<br>Employee Relations Manager<br>HR Business Partner |

Note: Employee Relations/Human Resources can be reached in the Corporate Office at 800-284-2006.

Ex. 4 (PX2) at 37.  McCoy—Holmes' supervisor—was not among the individuals to whom Holmes should have reported discrimination or harassment.

Holmes testified that she received a copy of this handbook and had access to it.  Ex. 2 at 117.  "Everyone has to review it because you have to sign and date that handbook."  *Id.*  She further testified that she "knew how to report" racial harassment.  *Id.*; *see also* Ex. 2 at 120.

No evidence was presented at trial that AHOM failed to implement these policies, failed to enforce these policies, or "fail[ed] to investigate [racial] harassment as it investigated and punished other forms of misconduct."  *Hurley v. Atl. City Police Dep't*, 174 F.3d 95, 118 (3d Cir. 1999).  Nor did Plaintiff present

evidence that she complained and AHOM "turned a blind eye toward [McCoy's] harassment." *Minarsky v. Susquehanna Cnty.*, 895 F.3d 303, 313 (3d Cir. 2018).

To the contrary, the evidence presented at trial demonstrated that as soon as Holmes followed these policies and complained of McCoy's misconduct, about five months after the initial incident, AHOM swiftly investigated and enforced its policies, and any racial harassment ceased. According to Holmes, the "racial banter stop[ped]" after she took advantage of corrective opportunities in March. Ex. 2 at 88; *see also* Ex. 2 at 122 (Holmes: "He did not make any racial comments after March."); Ex. 2 at 135 (Holmes: "[T]here was nothing racial after March.").

Plaintiff—and the jury—may have believed that McCoy should have been issued a "final written warning" rather than a "written warning." But the role of the jury is not to operate as a super personnel board. In an opinion authored by Judge Reinhardt, the Ninth Circuit affirmed summary judgment on a Title VII claim with similar facts: "The legal standard for evaluating an employer's efforts to prevent and correct harassment, however, is not whether any additional steps or measures would have been reasonable if employed, but whether the employer's actions as a whole established a reasonable mechanism for prevention and correction." *Holly D. v. Cal. Inst. of Tech.*, 339 F.3d 1158, 1177 (9th Cir. 2003) (citing *Ellerth*, 524 U.S. at 765).

In this case, it was undisputed AHOM's actions were effective, and "[a]n effective remedy—one that stops the harassment—is adequate per se." *Jensen,* 435

F.3d at 453.  Indeed, "a showing that discipline was imposed is not required to prove that an employer's remedial action was adequate."  *Jones v. Se. Pa. Transp. Auth.*, 796 F.3d 323, 329 (3d Cir. 2015); *see also Knabe v. Boury Corp.*, 114 F.3d 407, 414 (3d Cir. 1997) ("[I]f the remedy chosen by the employer is adequate, an aggrieved employee cannot object to that selected action[, and] an employee cannot dictate that the employer select a certain remedial action.").  "This is not a case where the employer's first remedy proved inadequate, and it failed to take further action to correct the problem."  *Baldwin v. Blue Cross/Blue Shield of Ala.*, 480 F.3d 1287, 1306 (11th Cir. 2007).  As Plaintiff testified, the first remedy worked.  That ends the inquiry.

The jury's finding that AHOM did not "exercis[e] reasonable care to prevent and correct promptly any [racially] harassing behavior" was against the great weight and preponderance of the evidence.[2]

---

[2] The cases finding that an employer did not exercise reasonable care to prevent and correct harassing behavior generally involve repeated complaints by the employee (or other actual knowledge of the employer) of the supervisor's misconduct and ineffective responses by the employer.  We have located no case where, as here, an employer responded swiftly and effectively after the only complaint by the employee but was, nonetheless, found not to have exercised reasonable care.  *See Finnerty v. William H. Sadlier, Inc.*, 176 F. App'x 158, 162 (2d Cir. 2006) ("It is undisputed that Sadlier maintained such a policy and that Richards was aware of it. . . . [T]he record demonstrates that within one week after Marsh received Finnerty's complaint, Sadlier initiated an investigation, determined that Richards' conduct violated company policy, formally reprimanded him and warned him that another incident could lead to his dismissal, and arranged for Finnerty to be transferred to a

AHOM also established at trial that Holmes "unreasonably failed to take advantage of any preventive or corrective opportunities." According to her testimony at trial, Holmes was disturbed by McCoy's comments during a "fit test" in October 2019. Ex. 2 at 66-67.

Inexplicably, Holmes failed to report the "fit test" incident in October 2019, as required by AHOM's policies and procedures. Ex. 2 at 120. She testified that she was fully aware of how to do so:

> Q. All right. And so when it came to reporting concerns that you had as an employee, particularly if it regarded to what you thought to be harassment based on your race, you knew how to report that, didn't you?
> A. I did.

Ex. 2 at 127. And she eventually and correctly used these procedures to report McCoy and Hibbert, albeit some five months later in March 2020. Ex. 2 at 82, 86; *see also* Ex. 2 at 32-33 (Cattron testifying that Holmes correctly reported McCoy in March 2020).

Holmes never offered any explanation for her failure to report McCoy's misconduct in October 2019 or why she waited five months. Nor did she offer any explanation for similarly failing to report McCoy's racial statement in November 2019. This is not a case where the plaintiff testified that she feared retaliation, was

---

new department with the same compensation and benefit package. We conclude that no rational juror could find that Sadlier failed to exercise reasonable care in preventing and correcting promptly harassing behavior.").

unaware of the policies, or believed that complaining would be ineffective. *See Minarsky*, 895 F.3d at 314 ("If a plaintiff's genuinely held, subjective belief of potential retaliation from reporting her harassment appears to be well-founded, and a jury could find that this belief is objectively reasonable, the trial court should not find that the defendant has proven the second *Faragher–Ellerth* element as a matter of law.").[3]  Here, the evidence at trial was that Holmes knew of AHOM's policies, knew how to report harassment or discrimination, and simply failed to do so—until March 2020.  *See Baldwin,* 480 F.3d at 1307 (holding that a three-month reporting delay was unreasonable).

Holmes's failure to report McCoy's misconduct at the October 2019 fit test and comment in November 2019 means that she "unreasonably failed to take advantage of [the] preventive or corrective opportunities" provided by AHOM.  *See Faragher*, 524 U.S. at 807-08 ("[D]emonstration of [an unreasonable failure to use any complaint procedure provided by the employer] will normally suffice to satisfy the employer's burden under the second element of the defense.").  A defendant carries its burden on this element—as AHOM did here—"by first introducing evidence that the plaintiff failed to avail herself of the defendant's complaint procedure and then relying on the absence or inadequacy of the plaintiff's

---

[3] "[A] credible fear [of retaliation] must be based on more than the employee's subjective belief."  *Leopold v. Baccarat, Inc.*, 239 F.3d 243, 246 (2d Cir. 2001).  Here, Holmes did not testify that she had even a subjective fear of retaliation.

justification for that failure." *Ferraro v. Kellwood Co.*, 440 F.3d 96, 103 (2d Cir. 2006).  The jury's contrary finding was against the great weight of the evidence.

The whole point of the *Faragher–Ellerth* affirmative defense is prospective. It ensures that employers have the opportunity to prevent development of a hostile work environment: "The genius of the *Faragher-Ellerth* plan is that the corresponding duties it places on employers and employees are designed to stop . . . harassment before it reaches the severe or pervasive stage[.]"  *Baldwin*, 480 F.3d at 1307; *see also id.* at 1305 ("Title VII is concerned with preventing discrimination, not with perfecting process.").  "[N]o award . . . should reward a plaintiff for what her own efforts could have avoided."  *Faragher*, 524 U.S. at 807.

If Holmes had reported McCoy's misconduct to AHOM in October 2019 or November 2019, then the March 2020 incident—the most egregious—would almost certainly never have occurred.  By failing to report McCoy, Holmes deprived AHOM of the opportunity to prevent the March 2020 incident, and she forfeited the right to hold AHOM vicariously liable for McCoy's wrongdoing.  *See Baldwin*, 480 F.3d at 1307 ("The *Faragher* and *Ellerth* decisions present employees who are victims of harassment with a hard choice: assist in the prevention of harassment by promptly reporting it to the employer, or lose the opportunity to successfully prosecute a [claim] based on the harassment."); *Reed v. MBNA Mktg. Sys., Inc.*, 333 F.3d 27, 35 (1st Cir. 2003) ("Reporting . . . offensive conduct by a supervisor would

for many or most employees be uncomfortable, scary or both.  But because this will often or ordinarily be true, as the Supreme Court certainly knew, its regime necessarily requires the employee in normal circumstances to make this painful effort if the employee wants to impose vicarious liability[.]").

At a minimum, the jury's failure to find that AHOM established the *Faragher–Ellerth* affirmative defense with respect to the October and November 2019 incidents was against the great weight of the evidence, and a new trial is necessary because this Court cannot know whether the jury would have found a hostile work environment based on the March 2020 incident alone.  *See Wilburn*, 139 F.3d at 361 (involving a general verdict and multiple theories of liability).

Allowing the verdict to stand would be a miscarriage of justice, and this Court should order a new trial.

## II.    Because the Compensatory Damages Award Is Excessive, This Court Should Order a New Trial or Suggest a Remittitur.

Based on the evidence presented at trial, the jury's $500,000 compensatory damages award is far "out of proportion to the actual injury."  *William A. Graham Co. v. Haughey*, 646 F.3d 138, 142 (3d Cir. 2011); *Gumbs v. Pueblo Int'l, Inc.*, 823 F.2d 768, 773 (3d Cir. 1987).  Because the evidence does not support this amount, which does not align with the amounts awarded in similar cases, the Court should order a new trial or remit the compensatory damages award.

Courts have an obligation "to ensure that the compensatory damage award finds support in the record and that the jury did not 'abandon analysis for sympathy.'" *Evans v. Port Auth. of N.Y. & N.J.*, 273 F.3d 346, 352 (3d Cir. 2001) (quoting *Gumbs*, 823 F.2d at 773). Neither expert testimony nor objective corroboration is necessary to recover damages, but the record must demonstrate a substantial basis for compensation. *See, e.g.*, *Glass v. Snellbaker*, No. 05-1971 (JBS), 2008 WL 4371760, at *20 (D.N.J. Sept. 17, 2008) (noting that "[t]here must be a rational relationship between the specific injury sustained and the amount awarded" (internal quotation marks omitted)).

At trial, Holmes offered very limited testimony about her emotional suffering. Ex. 2 at 66-67; Ex. 2 at 96-97. Her testimony was not corroborated by any other witness. Her then-boyfriend, Jeff Moore, with whom she lived, testified that she never mentioned any mistreatment by AHOM, McCoy, or Hibbert. Ex. 2 at 200-02. Nor did Holmes ever seek or receive any medical diagnosis or treatment for emotional suffering. Ex. 2 at 114-116. She worked at AHOM for less than a year: from October 2019 through July 2020.

Other evidence also casts doubt on the extent of Holmes's emotional distress. Her failure to report the fit test incident to AHOM—a failure for which she offered no explanation at trial—weighs against the seriousness of her injuries. Ex. 2 at 120. Moreover, Holmes testified that she was suffering emotional distress from a

rescinded job offer from a different company, SEKO Logistics, during her entire employment at AHOM.  Ex. 2 at 103.  She sued SEKO Logistics in October 2020, after resigning from AHOM, and testified that her pain and suffering from that incident ended after she settled the suit against SEKO Logistics.  Ex. 2 at 108–09.

Moreover, the record was replete with evidence of other causes of Holmes's emotional pain and suffering.  From 2019 to 2021, Holmes experienced her boyfriend's infidelity, the end of that relationship, an unexpected move to a different state during the COVID-19 pandemic, illness and death of relatives due to COVID, job-hunting during the pandemic, and more.  Ex. 2 at 109-13.

"A jury has very broad discretion in measuring damages; nevertheless, a jury may not abandon analysis for sympathy for a suffering plaintiff and treat an injury as though it were a winning lottery ticket."  *Gumbs*, 823 F.2d at 773.  This Court "is in the best position to evaluate the evidence and assess whether the jury's verdict is rationally based."  *Id.* at 772.

*Blakey v. Continental Airlines, Inc.*, which involved a $500,000 award for emotional distress and pain and suffering, is instructive.  992 F. Supp. 731, 735 (D.N.J. 1998).  For a period of three years, a female pilot's male colleagues directed obscene comments toward her and littered her cockpit with pornography—some of which had been altered, purporting to identify the plaintiff.  *Id.* at 733, 739.  Like Holmes, the plaintiff also experienced turmoil in her personal life, and like Holmes,

the plaintiff was unsuccessful in pursuing other claims (including claims for retaliation) and thus could not "recover for emotional distress that was caused by what she alleged to be disparate treatment or retaliation." *Id.* at 736. Unlike Holmes, the plaintiff in that case supported her damages with expert testimony. *Id.* The court reasoned that the amount—$500,000—was at the "high end" of emotional distress and the "kind of damages that are rarely awarded without expert testimony." *Id.* at 735-36. The court refused to "cavalierly dismis[s]" the plaintiff's trauma but found that based on the record, "to put it bluntly, an award of $500,000 is off the wall." *Id.* at 740. "The remitted award of $250,000 is high, but within the realm of reason." *Id.*

Courts often consider analogous verdicts when testing for excessiveness. In *Evans*, the Third Circuit affirmed the district court's remittitur of emotional distress damages from $1.15 million award to $375,000. 273 F.3d at 363. The plaintiff brought race discrimination claims against her employer for repeatedly failing to promote her. *Id.* at 349.

> She was made to suffer the indignity of being qualified for a job and being turned down nine times. She was upset, she was traumatized, she would, on occasion become ill. This sorry state occurred over a period of ten years.

*Id.* at 354. Her distress was increased by being "designated to train the very people who were brought in from the outside to fill a position, which she was part of the creation of and which she far better than they could have filled[.]" *Id.* at 353.

Despite the well-supported "physical and emotional" distress the plaintiff experienced, the award was grossly excessive compared to similar cases—none of which came close to awarding $1.15 million. *Id.* at 354. Evans' decade-long emotional trauma meant that her experience "was not a typical case" and thus justified $375,000, "a substantial amount, well above most emotional distress awards." *Id.* at 355-36.

A survey of past emotional distress awards in the Third Circuit reveals a range of awards between $50,000 and $350,000 in employment discrimination and retaliation cases. *Giedgowd v. Cafaro Grp., LLC*, No. CV 20-6184, 2021 WL 4963533, at *13 (E.D. Pa. Oct. 26, 2021) (upholding a $180,000 award for emotional distress resulting from age discrimination); *Jones v. Pa. State Police,* No. CV 16-4205, 2018 WL 2214812 (E.D. Pa. May 11, 2018), *aff'd*, 794 F. App'x 177 (3d Cir. 2019) (upholding a $250,000 award for emotional distress resulting from sexual harassment); *Briggs v. Temple Univ.*, 339 F. Supp. 3d 466 (E.D. Pa. 2018) (upholding a $350,000 award for emotional distress resulting from discrimination on the basis of age and sex); *Sallitt v. Stankus*, 720 F. Supp. 2d 645 (M.D. Pa. 2010) (upholding a $100,000 award for emotional distress resulting from retaliation); *Glass v. Snellbaker*, No. 05-1971 (JBS), 2008 WL 4371760 (D.N.J. Sept. 17, 2008) (granting remittitur from $250,000 to $50,000 based on emotional distress related to retaliation); *Hurley v. Atl. City Police Dep't*, 933 F. Supp. 396, 423 (D.N.J. 1996),

*aff'd*, 174 F.3d 95 (3d Cir. 1999) (granting remittitur from $575,000 to $175,000 for emotional distress based on sex discrimination). When granting remittitur for excessive damages, one court remarked that "[a]wards for emotional distress in discrimination cases arising under § 1983, § 1981, and Title VII rarely come close to $575,000, and typically are for less than $50,000." *Hurley*, 933 F. Supp. at 423.

Holmes's compensatory damages award of $500,000 falls well outside the range of comparable cases, which involved far smaller awards for far greater injury. The plaintiff in *Blakey* endured three years of near-constant degradation in her workplace, but despite the pilot's lingering emotional and physical symptoms, the court deemed the $500,000 award grossly excessive. 992 F. Supp. at 738.

Because the compensatory damages are excessive, this Court should order a new trial or, alternatively, suggest a remittitur to the "maximum recovery that does not shock the judicial conscience." *Evans*, 273 F.3d at 355 (citing *Gumbs*, 823 F.2d at 774) (internal quotation marks omitted). In light of comparable cases, the limited evidence that Holmes presented regarding her emotional distress, the uncontroverted evidence of other sources of distress, and the limited time period for which Holmes was employed, AHOM respectfully requests that this Court suggest a remittitur to $200,000.

**III.** **This Court Should Grant Judgment as a Matter of Law Regarding Punitive Damages or, at a Minimum, Reduce Them to a Constitutional Amount.**

Where the compensatory damages award is questionable, then the punitive damages award—which here is 40 times the amount of compensatory damages—is indefensible. This Court should grant judgment as a matter of law in favor of AHOM regarding punitive damages. If it does not, then it should reduce punitive damages to the maximum amount permitted by the Constitution, which, in this case, would be an award equal to compensatory damages.

**A.** **This Court Should Grant Judgment as a Matter of Law in Favor of AHOM Regarding Punitive Damages.**

A reasonable jury would not have a legally sufficient evidentiary basis to find that AHOM did not make good-faith efforts to prevent racial discrimination. Because McCoy's conduct was "contrary to [AHOM's] good-faith efforts to comply with [laws prohibiting racial discrimination]," *Kolstad v. Am. Dental Ass'n*, 527 U.S. 526, 545 (1999), AHOM cannot be liable for punitive damages.

The Eleventh Circuit affirmed a grant of summary judgment on similar facts, where the employee "understood that she had avenues for complaints, although she did not use them, and she d[id] not contend that any managerial employee other than [the offender acted wrongfully]." *Howell v. Compass Group*, 448 F. App'x 30, 39 (11th Cir. 2011).

Employers have generally been found not to have acted in good faith only where the employer's investigation failed to discover misconduct. *See EEOC v. New Breed Logistics*, 783 F.3d 1057, 1074 (6th Cir. 2015) ("Woods made no effort to interview any of the women in Calhoun's department, only Calhoun himself. When Woods did finally conduct additional interviews, the witnesses interviewed did not include Pete, the now-identified caller, and Pearson, one of the witnesses Pete identified on the compliance hotline."); *AutoZone, Inc. v. EEOC*, 421 F. App'x 740, 742 (9th Cir. 2011) ("Anderson interviewed Wing about her complaint in a semi-public part of her own store. Evidence was introduced that Anderson never interviewed certain employees, never reported his investigation to the corporate human relations department as required by policy, and never even informed Wing of the outcome of his investigation or offered her a transfer to another store.").

Here, in contrast, the AHOM employees who conducted the investigation—Lois Dodson and Mark Cattron—both testified that they credited Holmes's account of the incident. Ex. 1 at 38-39; Ex. 1 at 87-88. Their investigation could not have been inadequate because it confirmed that Holmes was telling the truth. As detailed above, *supra* pp. 14-16, as a result of the investigation, AHOM took (effective) disciplinary action against McCoy and Hibbert.

AHOM does not defend McCoy's conduct, but it cannot be held vicariously liable for punitive damages because McCoy's conduct was contrary to AHOM's

27

good-faith efforts to comply with the laws against racial discrimination and harassment.  Trial in this case showed wrongdoing by Hibbert and McCoy but not AHOM.  A reasonable jury would not have a legally sufficient evidentiary basis to find that AHOM did not act in good faith, and this Court should grant judgment as a matter of law in favor of AHOM on punitive damages.  In the alternative, because the failure to find that AHOM acted in good faith was against the great weight of the evidence, this Court should grant a new trial.

### B.    If this Court Allows Any Punitive Damages, They Must Be Reduced to a Constitutional Amount.

If this Court does not grant judgment as a matter of law on punitive damages or grant a new trial, this Court should amend the judgment to reduce the punitive damages to a constitutionally permissible amount.  *Cortez v. Trans Union, LLC*, 617 F.3d 688, 716 (3d Cir. 2010) (quoting *Johansen v. Combustion Engineering, Inc.*, 170 F.3d 1320 (11th Cir. 1999)) (holding that a court may reduce damages to avoid a denial of due process).

Although the Supreme Court has cautioned against "awards exceeding a single-digit ratio between punitive and compensatory damages," *State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 425 (2003), the $20 million punitive damages award here is 40 times the amount of compensatory damages.  These damages dramatically exceed the "procedural and substantive constitutional limitations on these awards."  *Id.* at 416.

In reviewing punitive damages awards, courts consider three guideposts: "(1) the degree of reprehensibility of the defendant's misconduct; (2) the disparity between the actual or potential harm suffered by the plaintiff and the punitive damages award; and (3) the difference between the punitive damages awarded by the jury and the civil penalties authorized or imposed in comparable cases." *Id.* at 418.

### 1. Among circumstances permitting imposition of punitive damages, the relative degree of reprehensibility is small.

The Third Circuit looks to five subfactors in analyzing the reprehensibility of a defendant's conduct, whether:

[1] the harm caused was physical as opposed to economic;

[2] the tortious conduct evinced an indifference to or reckless disregard of the health or safety of others;

[3] the target of the conduct had financial vulnerability;

[4] the conduct involved repeated actions or was an isolated incident; and

[5] the harm was the result of intentional malice, trickery, or deceit, or mere accident.

*Brand Mktg. Group LLC v. Intertek Testing Servs., N.A., Inc.*, 801 F.3d 347, 363 (3d Cir. 2015). The conduct at issue did not cause physical harm to Holmes, nor did it threaten "health or safety." Holmes did not introduce evidence of financial vulnerability at trial. Taking the facts in the light most favorable to the verdict, the conduct involved four incidents. Plaintiff might contend that McCoy acted with intentional malice, but she introduced no evidence to that effect. *See also* Ex. 2 at

29

74-75 (Holmes testifying that McCoy did not call her a racial slur but that she merely perceived him as doing so).  And even if two factors favored reprehensibility, these factors would "suppor[t] the imposition of a punitive damages award but [indicate] that the size of the award given by the jury was unreasonable."  *Drumgo v. Kuschel*, No. 22-2771, 2024 WL 511041, at *2 (3d Cir. Feb. 9, 2024).

### 2.    Punitive damages should be no more than compensatory damages.

On the facts of this case, including the substantial compensatory damages award, punitive damages should be limited to the amount of compensatory damages. As Justice Kennedy stated for the majority in *State Farm*, "[w]hen compensatory damages are substantial, then a lesser ratio, perhaps only equal to compensatory damages, can reach the outermost limit of the due process guarantee."  538 U.S. at 425.

Justice Kennedy captured this case perfectly.  Here, as detailed above, the jury awarded $500,000 in compensatory damages, a substantial award for purely emotional damages.  Given that sizeable award, punitive damages should be no more than "equal to compensatory damages."  *See, e.g.*, *Jurinko v. Med. Protective Co.*, 305 F. App'x 13, 30 (3d Cir. 2008) ("We will reduce the award to reflect a 1:1 ratio.").  Other circuits similarly reduce large punitive awards to the amount of compensatory damages.  *See, e.g.*, *Saccameno v. U.S. Bank Nat'l Ass'n*, 943 F.3d 1071, 1078 (7th Cir. 2019) (reducing $3 million punitive damages to the $582,000

compensatory damages); *Jones v. United Parcel Serv., Inc.*, 674 F.3d 1187, 1207-08 (10th Cir. 2012) (determining an award of $2 million unconstitutional where there were "substantial" compensatory damages of $630,307 and ordering a reduction of punitive damages to equal the compensatory damages); *Bach v. First Union Nat'l Bank*, 486 F.3d 150, 156 (6th Cir. 2007) (concluding an award of over $2 million in punitive damages should be reduced to $400,000, the amount of compensatory damages); *Williams v. ConAgra Poultry Co.*, 378 F.3d 790, 799 (8th Cir. 2004) (reducing to 1:1 ratio for $600,000 compensatory damages award for racial harassment).

The basis for the compensatory damages award—emotional distress—indicates that a lower ratio is appropriate because the compensatory damages already include a punitive component. As the Supreme Court held in *State Farm*, "[i]n many cases in which compensatory damages include an amount for emotional distress, such as humiliation or indignation aroused by the defendant's act, there is no clear line of demarcation between punishment and compensation and a verdict for a specified amount frequently includes elements of both[.]" 538 U.S. at 426. The First Circuit, for example, recognized that $300,000 is a "high award" for emotional distress that "may partly reflect punishment for what the jury may have concluded was the degree of reprehensibility of the [defendant's] conduct." *McDonough v. City of Quincy*, 452 F.3d 8, 25 (1st Cir. 2006).

31

Here, the substantial compensatory damages award for emotional distress indicates that it already includes a punitive component, weighing further against a significant punitive damages award.

### 3.      The comparable civil penalty is the $300,000 cap in Title VII.

Although it does not limit Plaintiff's recovery under Section 1981, in evaluating the appropriate amount of punitive damages, the appropriate comparison is to the $300,000 limit on damages under Title VII:

> [T]he closest analogy to Mr. Williams's harassment claim under § 1981 is a harassment claim under Title VII.  With respect to companies with the number of employees that ConAgra has, Congress has capped the total of all damages for future pecuniary losses, nonpecuniary losses, and punitive damages in Title VII cases at $300,000.

*Williams*, 378 F.3d at 798.  "[E]xplicit legislative judgments of reprehensibility in analogous situations put parties on notice as to the order of magnitude of retributive sanctions that they can expect for reprehensible activity."  *Id.*  In that case, the $6 million award was "more than twenty times the Title VII limit."  *Id.*  Here, the $20 million award is more than sixty-six times the Title VII limit, far outside the legislative judgment about appropriate compensation for comparable conduct.

As in *Williams*, the "huge" discrepancy between the punitive damages awarded and the Title VII limit strongly suggests that punitive damages, if permitted at all, should be reduced to an amount equal to compensatory damages.

If this Court does not grant judgment as a matter of law in favor of AHOM on punitive damages, it should amend the judgment to reduce the punitive damages to be equal to compensatory damages. In the alternatively, because the punitive damages are excessive and unsupported by the evidence for the reasons discussed above, this Court should order a conditional remittitur of punitive damages. *Cortez*, 617 F.3d at 716.

## IV. This Court Should Grant a New Trial Because the Jury's Verdict Resulted from Passion or Prejudice.

This Court should also grant a new trial on the basis that the jury's extraordinary verdict—awarding $500,000 in compensatory damages and $20 million in punitive based on minimal testimony about emotional suffering for a short period—was the result of passion or prejudice. *See Hurley v. Atl. City Police Dep't*, 174 F.3d 95, 114 (3d Cir.1999).

AHOM acknowledges that the "the size of the award alone [is not] enough to prove prejudice and passion." *Id.* (quoting *Dunn v. HOVIC*, 1 F.3d 1371, 1383 (3d Cir. 1993)). But although it is not sufficient to prove prejudice and passion, the size of the award is highly relevant.

Plaintiff's closing argument was intended to—and did—invoke the jury's passion and prejudice. Counsel instructed the (all-white) jury that it was "your obligation, your duty to show Patricia that you -- you folks are good, decent, compassionate people," Ex. 3 at 44, effectively accusing them of racial prejudice (or

33

at least that they would be bad, indecent people) if they ruled against her.  Counsel

misstated the law, (falsely) instructing the jury that as a matter of law, "the single

use of a racial slur in the office creates a hostile work environment."  Ex. 3 at 47.

Counsel falsely asserted that AHOM had some duty to reprimand McCoy following

his testimony:

> [C]ompany representatives heard him lie from the stand . . . .  And what
> did they do about it?  Nothing.  They're still protecting him.  They know
> he lied, and they don't care.

Ex. 3 at 50.  AHOM's reaction to McCoy's testimony was irrelevant to the issues

before the jury, and the argument served no purpose other than invoking the jury's

prejudice and passion.

Plaintiff's ex-boyfriend offered important and highly relevant testimony

refuting her purported emotional distress.  Ex. 2 at 202-03.  Yet Plaintiff's counsel

attacked AHOM for calling him as a witness.  *See* Ex. 3 at 50 ("There was no reason

to bring him in here as their final witness.  That was ongoing hostility, and it's

despicable.").

And most egregiously and indefensibly, counsel showed the jury "a picture of

a burning cross and the KKK," Ex. 3 at 56, and a swastika.  It is difficult to imagine

any images more calculated to play on the prejudice and passion of the jury.

AHOM does not contend that improper argument, alone, requires a new trial.

But this Court "ha[s] an obligation . . . to ensure that the compensatory damage

award finds support in the record and that the jury did not 'abandon analysis for sympathy.'" *Evans*, 273 F.3d at 352 (quoting *Gumbs*, 823 F.2d at 773).

These improper arguments demonstrate that the compensatory and punitive damages were not merely excessive but were the result of passion and prejudice, requiring a new trial.  *See Westbrook v. Gen. Tire & Rubber Co.*, 754 F.2d 1233, 1241 (5th Cir. 1985) ("When viewed with the size of the verdict, these statements were of inescapable influence.  . . . [A] large verdict accompanied by such appeals leads us to conclude they had an influential impact upon the jury's deliberations.").

## V.   The Judgment Should be Modified to Award Damages Only Against AHOM.

Finally, this Court should modify the judgment to award relief against "American HomePatient, Inc."  The current judgment awards damages against "AHOM/Lincare," which is not a legal entity.  The evidence at trial was that Holmes was employed by American HomePatient, Inc.  *E.g.*, Ex. 2 at 63.  No evidence was presented (and no finding made by the jury) that would support imposing liability on "Lincare," which has not been served and is not a party.

This Court has ordered the parties to file a stipulation regarding the proper name of the Defendant by May 20, 2024, Dkt. 123, and the judgment should be modified in accordance with that stipulation.

## CONCLUSION & PRAYER

This Court should render judgment as a matter of law in favor of AHOM on Plaintiff's claim based on Hibbert's October 2019 comment and, because this Court cannot discern which portion of the damages were attributed to this theory, should grant a new trial.

This Court should also grant a new trial because the jury's failure to find that AHOM satisfied the *Faragher–Ellerth* affirmative defense was against the great weight of the evidence and a miscarriage of justice would result if the verdict were to stand. A new trial is also warranted because the verdict is the result of passion and prejudice.

Because the compensatory damages are excessive, this Court should either grant a new trial or, alternatively, suggest remittitur to the amount needed to make the plaintiff whole, which AHOM contends is $200,000.

This Court should grant judgment in favor of AHOM as a matter of law regarding the availability of punitive damages. If it does not, it should amend the judgment to reduce punitive damage to the constitutional maximum: on the facts of this case, the same amount as compensatory damages.

This Court should also amend the judgment to award damages only against "American HomePatient, Inc.," the legal entity at issue.

36

Respectfully submitted,

MORGAN, LEWIS & BOCKIUS, LLC          CULHANE, PLLC

/s/ Terry D. Johnson                              /s/ Jo Bennett
Terry D. Johnson                                  Jo Bennett
(Pa. ID No. 93665)                                (Pa. ID No. 78333)
502 Carnegie Center                               40 W. Evergreen Ave.
Princeton, NJ 08540                               Suite 101
Phone: (609) 919-6689                             Philadelphia, PA 19118
terry.johnson@morganlewis.com                     Phone: (215) 880-0084
                                                  Fax: (215) 248-2381
William R. Peterson                               jbennett@cm.law
(admitted pro hac vice)
(Texas ID No. 24065901)                           Mishell B. Kneeland
1000 Louisiana Street, Suite 4000                 (admitted pro hac vice)
Houston, TX 77002                                 (NY ID No. 2817922)
Phone: (713) 890-5188                             Culhane, PLLC
william.peterson@morganlewis.com                  Nat'l Litigation Support Ctr
                                                  13101 Preston Rd.
                                                  Suite 110-1510
                                                  Dallas, TX 75240
                                                  Phone: (512) 910-5463
                                                  mkneeland@cm.law

Attorneys for Defendant

Dated: May 7, 2024

37

### CERTIFICATE OF COMPLIANCE WITH WORD-COUNT LIMITS

Pursuant to Local Rule 7.8(b), I certify that this brief complies with the word-count limit because, according to the word count feature of Microsoft Word, the body of the brief contains 8,537 words.

*/s/ William R. Peterson*
William R. Peterson
*Counsel for Defendant*

Dated: May 7, 2024

**CERTIFICATE OF SERVICE**

I hereby certify that on this 7th day of May, 20204, all counsel of record were served with this Brief in Support of Defendant's Renewed Motion for Judgment as a Matter of Law, Motion for New Trial or Remittitur, and Motion to Amend the Judgment via CM/ECF.

*/s/ William R. Peterson*
William R. Peterson
*Counsel for Defendant*