## IN THE UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| PATRICIA HOLMES, | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Case No. 4:21-cv-01683-MWB |
| | § | (Hon. Matthew W. Brann) |
| AMERICAN HOMEPATIENT, INC. | § | |
| Defendant. | § | |

## REPLY IN SUPPORT OF DEFENDANT'S
## RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW,
## MOTION FOR NEW TRIAL OR REMITTITUR,
## <u>AND MOTION TO AMEND THE JUDGMENT</u>

## TABLE OF CONTENTS

Table of Contents ....................................................................................... i

Table of Citations ..................................................................................... iii

Argument in Reply ..................................................................................... 1

I.     This Court Should Grant a New Trial on Liability. ......................... 2

       A.     This Court Should Grant Judgment as a Matter of Law that
              Hibbert's October 2019 "Oreo Baby" Comment Did Not
              Create a Hostile Work Environment. .................................... 2

       B.     This Court Should Grant a New Trial Because the Jury's
              Failure to Find that AHOM Established the *Faragher–Ellerth*
              Affirmative Defense Is Against the Great Weight of the
              Evidence. ............................................................................ 6

II.    This Court Should Order a New Trial or Suggest a Remittitur of
       Compensatory Damages. ............................................................... 10

III.   This Court Should Grant Judgment as a Matter of Law Regarding
       Punitive Damages or, at a Minimum, Reduce Them to a
       Constitutional Amount. ................................................................. 17

       A.     This Court Should Grant Judgment as a Matter of Law in
              Favor of AHOM Regarding Punitive Damages. ................... 17

       B.     If this Court Allows Any Punitive Damages, They Must Be
              Reduced to a Constitutional Amount. ................................. 18

              1.     Among circumstances permitting imposition of
                     punitive damages, the relative degree of
                     reprehensibility is small. ........................................ 18

              2.     Punitive damages should be no more than
                     compensatory damages. ......................................... 21

              3.     The comparable civil penalty is the $300,000 cap in
                     Title VII. ............................................................... 25

# TABLE OF CONTENTS
## (continued)

**Page(s)**

IV.  This Court Should Grant a New Trial Because the Jury's Verdict Resulted from Passion or Prejudice................................................26

Conclusion & Prayer...........................................................................27

Certificate of Compliance with Word-Count Limits ...........................30

Certificate of Service ..........................................................................31

# TABLE OF CITATIONS

**Page(s)**

## CASES

*Avaya Inc., RP v. Telecom Labs, Inc.*,
  838 F.3d 354 (3d Cir. 2016) ................................................................5

*Baldwin v. Blue Cross/Blue Shield of Ala.*,
  480 F.3d 1287 (11th Cir. 2007) .........................................................8

*Blakey v. Continental Airlines, Inc.*,
  992 F. Supp. 731 (D.N.J. 1998) .......................................................14

*BMW of N. Am., Inc. v. Gore*,
  517 U.S. 559 (1996) ...........................................................................21

*Brand Mktg. Grp. LLC v. Intertek Testing Servs., N.A., Inc.*,
  801 F.3d 347 (3d Cir. 2015) .............................................................18

*Budinich v. Becton Dickinson & Co.*,
  486 U.S. 196 (1988) ...................................................................23, 24

*Campbell v. State Farm Mut. Auto. Ins. Co.*,
  98 P.3d 409 (Utah 2004) ..................................................................23

*Deters v. Equifax Credit Info. Servs., Inc.*,
  202 F.3d 1262 (10th Cir. 2000) .......................................................22

*Drumgo v. Kuschel*,
  No. 22-2771, 2024 WL 511041 (3d Cir. Feb. 9, 2024) ...................19

*EEOC v. W&O, Inc.*,
  213 F.3d 600 (11th Cir. 2000) .........................................................22

*Evans v. Port Authority of New York and New Jersey*,
  273 F.3d 346 (3d Cir. 2001) .......................................................14, 27

*Faragher v. City of Boca Raton*,
  524 U.S. 775 (1998) ............................................................6, 7, 8, 10

*Ferraro v. Kellwood Co.*,
  440 F.3d 96 (2d Cir. 2006) .................................................................8

# TABLE OF CITATIONS
## (continued)

Page(s)

*Gagliardo v. Connaught Labs., Inc.*,
  311 F.3d 565 (3d Cir. 2002) .................................................................11, 12, 15

*Gallatin Fuels, Inc. v. Westchester Fire Insurance Co.*,
  244 F. App'x 424 (3d Cir. 2007) ..................................................................23, 24

*Gumbs v. Pueblo Intern., Inc.*,
  823 F.2d 768 (3d Cir. 1987) .................................................................................14

*Hampton v. Dillard Dep't Stores, Inc.*,
  247 F.3d 1091 (10th Cir. 2001) ..........................................................................22

*Holly D. v. Cal. Inst. of Tech.*,
  339 F.3d 1158 (9th Cir. 2003) ...............................................................................9

*Hurley v. Atl. City Police Dep't*,
  933 F. Supp. 396 (D.N.J. 1996) ...........................................................................15

*Jensen v. Potter*,
  435 F.3d 444 (3d Cir. 2006) ............................................................................5, 10

*John Wyeth & Bro. Ltd. v. CIGNA Int'l Corp.*,
  119 F.3d 1070 (3d Cir. 1997) ..............................................................................26

*Johnston v. School Dist. of Phila.*,
  No. CIV. A. 04-4948, 2006 WL 999966 (E.D. Pa. Apr. 12, 2006)........12, 13, 15

*Kenai Ironclad Corp. v. CP Marine Servs., LLC*,
  84 F.4th 600 (5th Cir. 2023) ................................................................................23

*Knabe v. Boury Corp.*,
  114 F.3d 407 (3d Cir. 1997) ................................................................................10

*Kolstad v. Am. Dental Ass'n*,
  527 U.S. 526 (1999)..............................................................................................18

*Laymon v. Lobby House, Inc.*,
  613 F. Supp. 2d 504 (D. Del. 2009).....................................................................24

*Mathias v. Accor Econ. Lodging, Inc.*,
  347 F.3d 672 (7th Cir. 2003) ...............................................................................22

## TABLE OF CITATIONS
## (continued)

**Page(s)**

*Minarsky v. Susquehanna Cnty.*,
895 F.3d 303 (3d Cir. 2018) ...................................................7

*Ray Haluch Gravel Co. v. Cent. Pension Fund*,
571 U.S. 177 (2014).............................................................24

*Romano v. U-Haul Int'l*,
233 F.3d 655 (1st Cir. 2000)................................................22

*State Farm Mut. Auto. Ins. Co. v. Campbell*,
538 U.S. 408 (2003)......................................................passim

*Swinton v. Potomac Corp.*,
270 F.3d 794 (9th Cir. 2001) .........................................passim

*Tobin v. Liberty Mut. Ins. Co.*,
553 F.3d 121 (1st Cir. 2009)..........................................15, 16

*Turnpike Commission*, 181 A.3d 324 (Pa. 2018)..........................16

*Williams v. ConAgra Poultry Co.*,
378 F.3d 790 (8th Cir. 2004) ...............................................25

*Willow Inn, Inc. v. Public Service Mutual Insurance Co.*,
399 F.3d 224 (3d Cir. 2005) ...........................................23, 24

**STATUTES**

42 Pa. C.S.A. § 8371......................................................................23

42 U.S.C.A. § 2000e–5(g)(2)(B)(i)................................................24

42 U.S.C. § 1981......................................................................24, 25

42 U.S.C. § 1981a(b)(2) ................................................................24

42 U.S.C. § 1983............................................................................15

Title VII, Civil Rights Act of 1964 (as amended) .............15, 24, 25

Title VIII, Fair Housing Act 1968 (as amended)...........................25

# TABLE OF CITATIONS
## (continued)

**Page(s)**

**OTHER AUTHORITIES**

Fed R. Civ. P. 50(b) ..................................................................................1

Fed. R. Civ. P. 59(a) .................................................................................1

Fed. R. Civ. P. 59(e) .................................................................................1

LR 7.6.............................................................................................6, 18

Defendant American HomePatient, Inc. ("AHOM") respectfully files this reply in support of its renewed motion for judgment as a matter of law pursuant to Rule 50(b), motion for new trial (or remittitur) pursuant to Rule 59(a), and motion to alter or amend the judgment under Rule 59(e).

## ARGUMENT IN REPLY

Despite its length, Plaintiff's response to AHOM's post-judgment motion, Dkt. 135 (the "Response"), largely fails to engage with AHOM's arguments. Where AHOM raised arguments primarily concerning its vicarious liability for the acts of Beverly Hibbert and Tim McCoy, Dkt. 126 at 6, Plaintiff responds with a lengthy, drawn-out recitation of Hibbert's and McCoy's misconduct, Dkt. 135 at 1-7, which, as previously explained, AHOM does not condone, but which also does not give rise to AHOM's vicarious liability.

The Response confirms that this Court should grant relief to AHOM, through a new trial, remittitur of compensatory damages, or rendering judgment as a matter of law on punitive damages.

At a minimum, this Court must reduce punitive damages to constitutional limits (here, the amount of compensatory damages).

**I.      This Court Should Grant a New Trial on Liability.**

Holmes raised—and the jury found in her favor on—two claims: (i) a hostile work environment created by the October 2019 remark of coworker Hibbert; and (ii) a hostile work environment created by supervisor McCoy.

This Court should grant judgment as a matter of law that Hibbert's conduct did not create a hostile work environment, and because it is impossible to discern which portion of the damages were attributed to Hibbert's conduct, as opposed to McCoy's conduct, this Court must order a new trial.

With respect to McCoy's conduct, this Court should grant a new trial because the jury's failure to find that AHOM established the *Faragher–Ellerth* affirmative defense was against the great weight of the evidence, and a miscarriage of justice would result if the verdict were allowed to stand.

**A.      This Court Should Grant Judgment as a Matter of Law that Hibbert's October 2019 "Oreo Baby" Comment Did Not Create a Hostile Work Environment.**

As AHOM explained, a reasonable jury would not have a legally sufficient evidentiary basis to find that Hibbert's single reference to her grandchild as an "Oreo baby" in October 2019 created a hostile work environment.  Dkt. 126 at 8-12.

The Response mischaracterizes the verdict, incorrectly asserting that the jury found that Hibbert's and McCoy's conduct *together* created a hostile work

environment.  *See, e.g.*, Dkt. 135 at 13 (describing the jury as finding "that Hibbert's conduct and McCoy's conduct created a hostile work environment").

Plaintiff is wrong.  The jury was asked two separate questions.  Question 1(a) asked whether AHOM created a hostile work environment "based on the conduct of Timothy McCoy."  Dkt. 99 at 2.  Question 1(b) asked whether AHOM did so "based on the conduct of Beverly Hibbert."  Dkt. 99 at 2.  The verdict form neither instructed nor permitted the jury to aggregate the conduct of McCoy and Hibbert.  Unless legally sufficient evidence supported the finding that a hostile work environment was created "based on the conduct of Beverly Hibbert," the verdict—and resulting judgment—cannot stand.

For the reasons detailed in AHOM's motion, a reasonable jury would not have such a legally sufficient evidentiary basis.  The claim fails both factually and legally.  Factually, Plaintiff identifies no evidence that she was—or a reasonable person would have been—so affected by Hibbert's comment that it amounted to a change in the terms and conditions of her employment.  AHOM's Motion quoted Holmes's only testimony about her reaction: "I thought that Beverly Hibbert lacked decorum.  I thought that she was a person that was rough around the edges, so-to-speak."  Dkt. 126, Ex. 2 at 64.  There is no evidence from her testimony that Holmes viewed Hibbert's comment as anything more than an indecorous remark, much less conduct

3

arising to the level of a hostile work environment that changed the terms and conditions of her employment.

The theory also fails as a matter of law.  As AHOM detailed in its motion (and Plaintiff does not deny), as a matter of law, Hibbert's comment was not the type of single incident that could create a hostile work environment.  *See* Dkt. 126 at 8-10.

The Response now says that Hibbert made the comment "all the time."  Dkt. 135 at 13.  But at trial, Holmes testified that she heard the comment only on a single occasion.  Dkt. 126, Ex. 2 at 63-64; *see also* Dkt. 126, Ex. 1 at 111 (McCoy: "I heard her make the statement one time, yes.").  Holmes cannot rely on testimony that *other* individuals heard Hibbert make this comment on other occasions.  Even if Hibbert had repeated the comment on other occasions, Holmes was unaware of it, so it could not have changed the terms and conditions of Holmes's employment (and thus created a hostile work environment).[1]  Plaintiff must—but cannot—defend the verdict based on the single remark she heard in October 2019.

Nor would a reasonable jury have a legally sufficient evidentiary basis to find AHOM vicariously liable for the October 2019 remark, another required element of a hostile work environment claim.  Plaintiff says that "McCoy took no action against

---

[1] Tammy Dunmire, who testified that Hibbert repeated the comment (apparently outside of Holmes's presence), also testified that Hibbert "love[d] that grandbaby." Dkt. 126, Ex. 2 at 147.

Hibbert" for the remark.  Dkt. 135 at 13.  Not so—McCoy verbally reprimanded her.  *See* Dkt. 126, Ex. 1 at 111 (McCoy: "I told her not to use that terminology.  It was derogatory."); Dkt. 126, Ex. 2 at 64 (Holmes: "Tim McCoy stated to Beverly, and I quote, Jeez, Bev."); Dkt. 126, Ex. 2 at 119 (Holmes: "Jeez, Beverly; don't say stuff like that.").  The verbal correction was effective because Hibbert never repeated the comment around Holmes again.  *See Jensen v. Potter*, 435 F.3d 444, 453 (3d Cir. 2006) ("An effective remedy—one that stops the harassment—is adequate per se.").  Because AHOM took immediate action and stopped Hibbert's behavior, it cannot be vicariously liable for Hibbert's misconduct.

If this Court grants judgment as a matter of law that Hibbert's conduct did not create a hostile work environment, a new trial is necessary because this Court cannot "discern which portion of the damages the jury attributed to [each theory]."  *Avaya Inc., RP v. Telecom Labs, Inc.*, 838 F.3d 354, 409 (3d Cir. 2016).

In response, Plaintiff erroneously cites various cases relating to waiver of charge error.  Dkt. 135 at 14-16.  But AHOM does not contend that there was an error in the jury charge or inconsistency in the verdict.  None of Plaintiff's cases have anything to do with the circumstances here, where two liability questions led to a single damages question, but one of the liability theories was invalid.  The Third Circuit's *Avaya* decision, which AHOM cited in its Motion, is directly on point and controls.  This Court should grant judgment as a matter of law in favor of AHOM

5

that Hibbert's conduct did not create a hostile work environment, and because of the commingled damages question, a new trial is necessary.

**B.    This Court Should Grant a New Trial Because the Jury's Failure to Find that AHOM Established the *Faragher–Ellerth* Affirmative Defense Is Against the Great Weight of the Evidence.**

This Court should also grant a new trial because the jury's failure to find that AHOM established the *Faragher–Ellerth* affirmative defense to vicarious liability for McCoy's creation of a hostile work environment is against the great weight of the evidence.  Dkt. 126 at 12-20.

Identifying and answering Plaintiff's arguments on this issue is challenging. The Response neither cites *Faragher v. City of Boca Raton*, 524 U.S. 775 (1998), nor discusses the elements of the defense.  *Compare* Dkt. 135 at 17-25 *with* Dkt. 126 at 12-20.  Although Plaintiff discusses cases concerning the standard for a new trial (at 17-20) and cases concerning the creation of a hostile work environment (at 23-25), she cites no case regarding the *Faragher-Ellerth* affirmative defense.

Given Plaintiff's failure to address the issue, this Court could reasonably find the issue waived.  LR 7.6 ("Any party who fails to [file a brief in opposition] shall be deemed not to oppose such motion.").

Perhaps because Plaintiff cannot answer AHOM's arguments, much of the Response is devoted to arguing that McCoy's conduct created a hostile work environment.  *See* Dkt. 135 at 23-25; *see also* Dkt. 135 at 20 ("McCoy . . . harassed

and discriminated against [Holmes] himself."). But AHOM's post-judgment motion concerned the *Faragher–Ellerth* affirmative defense, not the existence of a hostile work environment. The premise of the defense is that even though a supervisor created a hostile work environment, the employer cannot be held vicariously liable. *Faragher*, 524 U.S. at 805-808.

As AHOM explained (and Plaintiff generally fails to contest), the jury's failure to find that defense satisfied was against the great weight of the evidence. Consider the second element, on which there is virtually no identified response by Plaintiff: Holmes unreasonably failed to take advantage of any preventive or corrective opportunities provided by AHOM.

Holmes does not deny that she knew precisely how to report McCoy pursuant to AHOM's policies and procedures. Dkt. 126 at 17. And Holmes has never offered any explanation for her failure to report McCoy's October 2019 or November 2019 misconduct. *Id.*[2] Nor does Holmes deny that if she had reported McCoy's misconduct to AHOM in October 2019 or November 2019, then the March 2020 incident would almost certainly never have occurred. Dkt. 126 at 19.

---

[2] Although other employees—Haley Eichelberger and Tammy Dunmire—testified that McCoy cautioned them not to report to HR, Dkt. 126, Ex. 2 at 20, 140, Holmes offered no such testimony. There is no evidence that Holmes had a "genuinely held, subjective belief of potential retaliation from reporting her harassment." *Minarsky v. Susquehanna Cnty.*, 895 F.3d 303, 314 (3d Cir. 2018).

AHOM carried its burden on this element by "showing an unreasonable failure to use any complaint procedure provided by the employer." *Faragher*, 524 U.S. at 778.  Holmes "failed to avail herself of [AHOM's] complaint procedure," *Ferraro v. Kellwood Co.*, 440 F.3d 96, 103 (2d Cir. 2006), and she provided an "absen[t] or inadequa[te] justification for that failure." *Id.*

The Response arguably attempts to address the first element of the defense: whether AHOM "exercised reasonable care to prevent and correct promptly any [racially] harassing behavior." *Faragher*, 524 U.S. at 807.  Holmes does not deny that AHOM's policies strongly and unequivocally condemned racial harassment and discrimination.  Dkt. 126 at 13-14.  And she does not deny that AHOM responded swiftly and effectively as soon as she reported McCoy's misconduct.  Dkt. 126 at 15.  At most, Plaintiff quibbles with the details of AHOM's response: (i) whether Dodson and Cattron—who credited Plaintiff's account of the March incident (which McCoy confirmed)—should also have spoken with Hibbert; and (ii) the precise wording of the written warning given to McCoy.  Dkt. 135 at 21-22.

Holmes misapprehends the standard.  The goal is "preventing discrimination, not . . . perfecting process." *Baldwin v. Blue Cross/Blue Shield of Ala.*, 480 F.3d 1287, 1305 (11th Cir. 2007).  The test "is not whether any additional steps or measures would have been reasonable if employed, but whether the employer's

actions as a whole established a reasonable mechanism for prevention and correction." *Holly D. v. Cal. Inst. of Tech.*, 339 F.3d 1158, 1177 (9th Cir. 2003).

Here, the AHOM employees who conducted the investigation—Lois Dodson and Mark Cattron—both testified that they credited Holmes's account of the incident.  Dkt. 126, Ex. 1 at 38-39; Dkt. 126, Ex. 1 at 87-88.  When Holmes and McCoy offered the same account, there was no need to speak with Hibbert.  And Holmes can hardly complain that Dodson and Cattron believed her.  Dkt. 126, Ex. 1 at 38-39; Dkt. 126, Ex. 1 at 87-88.  We have located no case in which a defendant's investigation confirmed and credited the plaintiff's complaint but was nonetheless found to be inadequate to a degree that overcame the affirmative defense.

And whatever the wording of the written warning to McCoy, Holmes cannot deny that it was effective at ending the hostile work environment.  Holmes testified unequivocally at trial, "[T]here was nothing racial after March." Dkt. 126, Ex. 2 at 135; *see also id.* at 88 ("racial banter stop[ped]"); *see also id.* at 122 ( "He did not make any racial comments after March.").[3]  When Dodson checked in with Holmes later in March, Holmes responded, "Everything is fine at this point."  *Id.* at 87.

---

[3] Because it did not concern her race, Holmes's complaints about her treatment after she complained would have been cognizable, if at all, only as retaliation, but this Court granted summary judgment on her retaliation claim.  Dkt. 29 at 26-29.

That concession is fatal to her attempt to impose vicarious liability on AHOM. Holmes admitted at trial that the remedy chosen by AHOM stopped any racial harassment by McCoy.  That ends the inquiry: "[I]f the remedy chosen by the employer is adequate, an aggrieved employee cannot object to that selected action[, and] an employee cannot dictate that the employer select a certain remedial action." *Knabe v. Boury Corp.*, 114 F.3d 407, 414 (3d Cir. 1997); *see also Jensen*, 435 F.3d at 453 ("An effective remedy—one that stops the harassment—is adequate per se.").

The great weight of the evidence at trial demonstrated that AHOM exercised reasonable care to prevent and correct any racially harassing behavior and that Holmes unreasonably failed to take advantage of the preventive and corrective opportunities it provided.  *See Faragher*, 524 U.S. at 807.  The facts of this case are precisely why the affirmative defense exists, and no case—Holmes certainly cites none—holds an employer vicariously liable under remotely similar circumstances. "[N]o award . . . should reward a plaintiff for what her own efforts could have avoided." *Id.*  Holmes could have avoided her injury by following AHOM's policies and reporting McCoy in October.  A miscarriage of justice would result if the verdict were to stand, and this Court should order a new trial.

## II.   This Court Should Order a New Trial or Suggest a Remittitur of Compensatory Damages.

The jury's $500,000 compensatory damages award is excessive, and this Court should suggest a remittitur or order a new trial.

Plaintiff complains that AHOM described Holmes as offering "very limited testimony about her emotional suffering." Dkt. 126 at 21; Dkt. 135 at 29. But the testimony about her emotional distress is minimal, perhaps four transcript pages out of the four-hundred transcript pages covering the three-day trial. Dkt. 216, Ex. 2 at 66-67, 76, 96-97. And, critically, no witness corroborated Holmes's account. Her then-boyfriend, Jeff Moore, with whom she lived, testified that she never complained about any mistreatment by AHOM or her coworkers. Dkt. 216, at Ex. 2 at 200-202. Nor did Holmes receive any medical diagnosis or treatment. Her self-serving testimony is far too thin a reed to support an award of a half-million dollars in compensatory damages.

Far from supporting her position, the cases cited in the Response only demonstrate the type of evidence necessary for large awards of emotional distress and the impropriety of such an award in this case.

In *Gagliardo v. Connaught Laboratories, Inc.*, the only Third Circuit decision that Plaintiff contends supports her damages, the plaintiff suffered a tangible employment action—not merely a hostile work environment—because of her disability. 311 F.3d 565, 568 (3d Cir. 2002) ("CLI terminated Gagliardo's employment[.]"). Unlike Holmes, she suffered a $450,000 compensable economic loss. *Id.* at 573. Unlike Holmes, who worked at AHOM for only a brief period, the plaintiff in *Gagliardo* was a successful and capable employee for 8 years, until her

medical condition began affecting her job performance.  *Id.* at 567.  In affirming a $1.55 million award for emotional distress, the Third Circuit (and district court) relied on "evidence from [the plaintiff's] co-workers and family":

> The district court found this standard to be met **because Gagliardo produced evidence from her co-workers and family demonstrating the effects her problems with CLI had on her life**.  This testimony tied Gagliardo's pain and suffering to her early employment problems after she was diagnosed with MS and detailed their subsequent worsening effect on her life.  The testimony demonstrated the effects of the mental trauma, transforming Gagliardo from a happy and confident person to one who was withdrawn and indecisive.  Because this evidence establishes a reasonable probability that Gagliardo incurred the emotional damages, we hold that the trial court did not abuse its discretion by allowing the jury's verdict to stand.

*Id.* at 573-74 (emphasis added).  This is precisely the testimony that Holmes failed to present.  Not a single friend or family member—including her boyfriend at the time of incident—testified about the effect of the allegedly hostile work environment on Holmes's life.  Holmes failed to produce the evidence that supported the judgment in *Gagliardo*.

*Johnston v. School District of Philadelphia* similarly involved plaintiffs who suffered tangible employment actions—not a hostile work environment—after being fired on the basis of race from jobs that they held for decades.  No. CIV. A. 04-4948, 2006 WL 999966 (E.D. Pa. Apr. 12, 2006).  All four were awarded significant economic damages in the form of back pay and ordered to be reinstated.  *Id.* at *1, 7-8.  Although the plaintiffs each were awarded $500,000 for emotional distress, the

case only emphasizes the lack of evidence from Holmes supporting such an award to her.  Consider Edward Pilosi, who worked for the School District for 33 years before being terminated because of his race.  *Id.* at *13.  He testified that the financial consequences caused him emotional distress, "I lost my income, I lost my medical insurance.  You lose your dignity."  *Id.*  His wife corroborated his distress:

> He's been very quiet, very depressed.  . . .  He's very, very worried about the finances, especially the health insurance because of me, and he's we've [sic] both been extremely distraught.

*Id.* at *13.  And he received a medical diagnosis and medical treatment: "His blood pressure has gone up sky-high, he's on medication.  The stress brought on gallbladder attacks which he had to be rushed in for emergency surgery."  *Id.* at *14.  All of the plaintiffs presented similar evidence.

Holmes, in contrast, suffered no economic injury, received neither medical diagnosis nor treatment, and presented no corroborating witness testimony.  AHOM agrees with Plaintiff that *Johnston* is instructive.  It shows exactly the sort of fact pattern and evidence necessary to justify a half-million-dollar award for emotional distress, and it confirms the excessiveness of the award to Holmes.

It is unsurprising that no witness was willing or able to corroborate Holmes's claim that she suffered emotional distress due to her work environment at AHOM.  Even before she began working for AHOM (and during her entire employment for AHOM), Holmes was purportedly already suffering emotional distress because of a

rescinded job offer from SEKO Logistics.  Dkt. 216, Ex. 2 at 103.  For this reason, neither she nor any other witness could suggest that any occurrences at AHOM caused her to transform from a person without emotional distress to a person with emotional distress.   Nor can Holmes deny the numerous other causes of her emotional suffering that she admitted at trial.  Dkt. 216 at 22 (citing evidence).

Holmes's self-serving testimony, uncorroborated by any other witness or any medical treatment or diagnosis, does not justify a half-million-dollar award for purely emotional distress unaccompanied by any economic injury.  A jury "may not abandon analysis for sympathy for a suffering plaintiff and treat an injury as though it were a winning lottery ticket."  *Gumbs v. Pueblo Intern., Inc.*, 823 F.2d 768, 773 (3d Cir. 1987).

The plaintiff in *Blakey v. Continental Airlines, Inc.* experienced three years of ongoing harassment, including repeated exposure to offensive pornography directed at her.  Despite supporting her damages with expert testimony, her damages were remitted to $250,000, an award that was "high, but within the realm of reason."  992 F. Supp. 731, 740 (D.N.J. 1998).  The plaintiff in *Blakely* suffered far more—and for far longer—than Holmes.

And Plaintiff simply ignores the Third Circuit's decision in *Evans v. Port Authority of New York and New Jersey*, 273 F.3d 346, 352 (3d Cir. 2001), on which AHOM relied heavily in its motion.  Dkt. 126 at 20, 23-24.  That case, which

14

involved decade-long emotional trauma, affirmed the remittitur from $1.15 million to $375,000, "a substantial amount, well above most emotional distress awards." *Id.* at 355-36.

AHOM provided a survey of typical emotional distress damages within the Third Circuit. Dkt. 126 at 24-25. As one of these cases explained, "[a]wards for emotional distress in discrimination cases arising under § 1983, § 1981, and Title VII rarely come close to $575,000, and typically are for less than $50,000." *Hurley v. Atl. City Police Dep't*, 933 F. Supp. 396, 423 (D.N.J. 1996).

Plaintiff, in contrast, stretches to find cases from across the country, ranging from Puerto Rico to Northern Mariana Islands. Dkt. 135, at 27-29. Not only does Plaintiff's nationwide approach confirm that the judgment cannot be defended based on decisions from within the Third Circuit, but the cases she cites are readily distinguishable.

Like *Gagliardo* and *Johnston*, these cases involve plaintiffs who—unlike Holmes—suffered tangible employment actions that created and increased their emotional distress. The plaintiff in *Tobin v. Liberty Mutual Insurance Co.*, for example, was awarded "approximately $440,000 in lost wages." 553 F.3d 121, 141 (1st Cir. 2009). The plaintiff and his psychiatrist, Dr. Kantar, testified that the employer's conduct exacerbated his disability and led to a "total inability to function in the workplace" and "further deterioration of his functional abilities":

This evidence allowed the jury to find that the lack of support reflected in the company's final denial of accommodations further exacerbated Tobin's stress and precipitated his total inability to function in the workplace. . . . [T]he jury could have concluded that Liberty Mutual's refusal to accommodate Tobin's disability in early 2001 denied him a last chance to avoid the termination with which he had been threatened, increasing the stress that, in turn, exacerbated his functional difficulties. Losing the job predictably resulted in more anguish, and the jury could have found that it caused further deterioration of his functional abilities.

*Id.* at 143.   The expert testimony was critical: "Kantar specifically attributed psychological harm to Tobin from Liberty Mutual's conduct." *Id.* at 144.  The length of time that the plaintiff spent at the company—37 years, compared to Holmes's 9 months—was also important to the degree of distress:

Tobin had spent thirty-seven years at the company—his entire working life.  Kantar observed that "his identity has been connected with Liberty Mutual" and that being "a sales rep for Liberty Mutual [is] . . . part of who he is."  . . . Tobin also was told incorrectly on the day of his termination that he and his family no longer had health insurance coverage, information that was particularly alarming in light of his wife's ongoing treatment for breast cancer.

*Id.*  This is the sort of evidence that warrants a $500,000 award of emotional distress, and it merely highlights how lacking the evidence was supporting Holmes and how excessive the award is on the facts of this case.

Plaintiff's out-of-circuit cases are a house of cards that collapse under scrutiny.[4]  Dkt. 135 at 27-29.  Here, where Holmes provided limited testimony about

---

[4] As yet another example, Plaintiff erroneously relies on *Bailets v. Pennsylvania Turnpike Commission*, in which the Pennsylvania Supreme Court held, in affirming

alleged emotional suffering; no witness corroborated her account (and one witness denied it); she received no medical diagnosis or treatment; and the record reveals numerous other causes (including the actions of a different employer) of emotional distress, the $500,000 compensatory damages award is excessive. This Court should suggest a remittitur to $200,000 and order a new trial if it is rejected.

## III. This Court Should Grant Judgment as a Matter of Law Regarding Punitive Damages or, at a Minimum, Reduce Them to a Constitutional Amount.

This Court should render judgment as a matter of law in favor of AHOM regarding punitive damages. If it does not, this Court should reduce punitive damages to the maximum amount permitted by the Constitution: in this case, an award equal to compensatory damages.

### A. This Court Should Grant Judgment as a Matter of Law in Favor of AHOM Regarding Punitive Damages.

In its Motion, AHOM first argued that a reasonable jury would not have a legally sufficient evidentiary basis to find that AHOM did not make good-faith efforts to prevent racial discrimination. Dkt. 126 at 26-28. Because McCoy's conduct was "contrary to [AHOM's] good-faith efforts to comply with [laws

---

a judgment under state law, that "[a] legitimate inference from the evidence presented at trial was the amount of Bailets's non-economic losses . . . were commensurate with and equal to the economic damages he suffered." 181 A.3d 324, 336 (Pa. 2018). The case obviously has no application here, where Holmes neither suffered nor recovered economic damages.

prohibiting racial discrimination]," *Kolstad v. Am. Dental Ass'n*, 527 U.S. 526, 545 (1999) (internal quotation marks omitted), AHOM cannot be vicariously liable for punitive damages.

Plaintiff fails to respond to this argument, focusing her argument only on the amount of punitive damages. Dkt. 135 at 34-47. This Court should treat Plaintiff as not opposing this request, *see* LR 7.6, and render judgment as a matter of law in favor of AHOM with respect to the availability of punitive damages.

**B.    If this Court Allows Any Punitive Damages, They Must Be Reduced to a Constitutional Amount.**

The jury's award of punitive damages in an amount 40 times the substantial compensatory damages grossly exceeds constitutional limits. *State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 425 (2003). Plaintiff offers no serious defense of the award and erroneously relies primarily on pre-*State Farm* authority. *See, e.g.*, Dkt. 135 at 41 (quoting *Swinton v. Potomac Corp.*, 270 F.3d 794, 817-18 (9th Cir. 2001)).

**1.    Among circumstances permitting imposition of punitive damages, the relative degree of reprehensibility is small.**

AHOM cited and applied the Third Circuit's standard for analyzing reprehensibility. *See* Dkt. 126 at 29-30 (citing and applying *Brand Mktg. Grp. LLC v. Intertek Testing Servs., N.A., Inc.*, 801 F.3d 347, 363 (3d Cir. 2015)). AHOM explained that viewed in the light most favorable to the plaintiff, the factors might

"suppor[t] the imposition of a punitive damages award" but would indicate "that the size of the award given by the jury was unreasonable." *Drumgo v. Kuschel*, No. 22-2771, 2024 WL 511041, at *2 (3d Cir. Feb. 9, 2024).

Plaintiff ignores Third Circuit precedent governing reprehensibility. Rather than argue and apply these factors, she relies instead on block quotes from out-of-circuit cases (two from the Ninth Circuit, one that predates *State Farm,* and another a default judgment from the Northern Mariana Islands). Dkt. 135 at 37-42. This Court is bound to follow the law of the Third Circuit, and Plaintiff's contrary arguments should be disregarded.

In any event, Plaintiff's cases do not support her. In *Swinton*, on which Plaintiff heavily relies, the Ninth Circuit correctly considered the reprehensibility of the company's actions, not the reprehensibility of the harassers' actions. There, the supervisor was "designated in the employee manual as the proper recipient of harassment complaints by virtue of his position as Swinton's supervisor." 270 F.3d at 810; *see also id.* at 818 ("Potomac made Stewart its proxy by placing him in the position as recipient of Swinton's harassment complaints. For the purposes of liability and damages, what Stewart knew, Potomac knew, and what Stewart failed to do, Potomac failed to do as well."). In discussing punitive damages, the Ninth Circuit considered whether Stewart—the company's designated recipient of harassment complaints—acted reprehensibly.

Here, AHOM designated Dodson and Cattron—not McCoy—as the proper recipients of harassment complaints.  Dkt. 126 at 14.[5]  As a result, any analysis of the reprehensibility of AHOM's conduct must be based on their conduct, not on McCoy's.  Plaintiff fails to argue that Dodson and Cattron acted reprehensibly in a way that would support any punitive damages at all,[6] much less a substantial award.

In any event, the employer in *Swinton* was indifferent to long-term and egregious harassment,[7] unlike AHOM, which took swift and remedial action upon the first report of such conduct.

---

[5] *See Swinton*, 270 F.3d at 811 ("U.S. Mat made a considered judgment to place responsibility for reporting on an employee's direct supervisor.  It could well have required some other supervisor or manager further up the chain to be the point of contact.").

[6] To the contrary, Holmes testified that Cattron was "empathetic" and "sincere." Dkt. 126, Ex. 2 at 82.  Dodson was "matter of fact" and "in her HR mode."  Dkt. 126, Ex. 2 at 86.  Holmes offered no testimony that either acted reprehensibly or even improperly at all.

[7] In *Swinton*, the supervisor was entirely indifferent to long-term harassment: "Despite witnessing the constant barrage of racial harassment directed at Swinton, Stewart (and thus Potomac) did absolutely nothing to stop it.  Despite testimony that offensive racial language was ubiquitous at U.S. Mat, there is nothing to indicate that anyone in the company did anything to combat this problem until officially informed by a state agency that Swinton was charging racial harassment."  270 F.3d at 818; *see also id.* at 800 ("During the short time he was at U.S. Mat, Swinton heard the [most offensive racial epitaph] more than fifty times."); *id.* ("Testimony by co-workers underscored the ubiquity of the racist atmosphere[.]").

>    **2.      Punitive damages should be no more than compensatory damages.**

Plaintiff cannot defend the 40:1 ratio between punitive and compensatory damages.  She implies that courts have applied *State Farm* and "awarded ratios higher than the single digits."  Dkt. 135 at 44.[8]

The implication is false.  With one exception, the cases cited by Plaintiff all predate the Supreme Court's 2003 decision in *State Farm*.  *See* Dkt. 135 at 44 (citing cases decided between 1997 to 2001).

More importantly, Plaintiff erroneously quotes only the ratios from these cases and ignores the **amount** of compensatory damages.  Whether a compensatory award is "substantial" is a key consideration in the permissible ratio between compensatory and punitive damages.  *State Farm*, 538 U.S. at 426.  "[L]ow awards of compensatory damages may properly support a higher ratio than high compensatory awards," *BMW of N. Am., Inc. v. Gore*, 517 U.S. 559, 582 (1996), and

---

[8] "While courts applying *State Farm*'s second guidepost, have stated few awards exceeding a single-digit ratio between punitive damages and compensatory damage, to a significant degree, will satisfy due process, there is no bright-line test.  Various courts have awarded ratios higher than the single digits."  Dkt. 135 at 44 (internal citations omitted).  Although not an express misrepresentation to this Court, the combination of these sentences strongly (and incorrectly) implies that the second sentence concerns "courts applying *State Farm*'s second guidepost."

the cases cited by Plaintiff all involve insubstantial compensatory awards, in amounts ranging from 1-10% of the compensatory damages awarded to Plaintiff.[9]

Here, in contrast, because "compensatory damages are substantial," even a high single-digit multiplier is too large, and "a lesser ratio, perhaps only equal to compensatory damages, can reach the outermost limit of the due process guarantee." *State Farm*, 538 U.S. at 425. AHOM cited numerous cases—involving similarly substantial compensatory damages awards—in which punitive damages were reduced to the amount of compensatory damages. Dkt. 126 at 30-31. Plaintiff has no response.

Nor does Plaintiff offer any response to the fact that a lower ratio is appropriate because the award for emotional distress already includes a punitive component. Dkt. 126 at 31 (quoting *State Farm*, 538 U.S. at 426).

Finally, Plaintiff is incorrect that the "compensatory damages" include attorney's fees. Dkt. 135 at 45-46. The Supreme Court has made clear that attorney's fees are "not part of the merits" and "d[o] not remedy the injury giving rise to the action":

---

[9] *See Swinton*, 270 F.3d at 799 ($35,612 compensatory award); *Deters v. Equifax Credit Info. Servs., Inc.*, 202 F.3d 1262, 1266 (10th Cir. 2000) ($5,000); *EEOC v. W&O, Inc.*, 213 F.3d 600, 609 (11th Cir. 2000) ($3,800.24); *Romano v. U-Haul Int'l*, 233 F.3d 655, 670 (1st Cir. 2000) ($15,000); *Hampton v. Dillard Dep't Stores, Inc.*, 247 F.3d 1091, 1101 (10th Cir. 2001) ($56,000); *Mathias v. Accor Econ. Lodging, Inc.*, 347 F.3d 672, 673 (7th Cir. 2003) ($5,000).

> As a general matter, at least, we think it indisputable that a claim for attorney's fees is not part of the merits of the action to which the fees pertain. Such an award does not remedy the injury giving rise to the action, and indeed is often available to the party defending against the action. At common law, attorney's fees were regarded as an element of "costs" awarded to the prevailing party, which are not generally treated as part of the merits judgment[.]

*Budinich v. Becton Dickinson & Co.*, 486 U.S. 196, 200 (1988) (internal citations omitted). Because attorney's fees generally do not "redress the concrete loss that the plaintiff has suffered by reason of the defendant's wrongful conduct," *State Farm* 538 U.S. at 416, they are not ordinarily included when determining the ratio between punitive and compensatory damages. *See also Campbell v. State Farm Mut. Auto. Ins. Co.*, 98 P.3d 409, 419-20 (Utah 2004) (holding, on remand, that "the Supreme Court's opinion forecloses consideration of a compensatory damages number other than the [amount] awarded by the jury" and rejecting "consider[ing] attorney fees and expenses in awarding punitive damages"); *Kenai Ironclad Corp. v. CP Marine Servs., LLC*, 84 F.4th 600, 612 (5th Cir. 2023) (holding that attorney's fees incurred in the proceeding in which the fee award is sought are not compensatory damages).

There are exceptions to this general principle. For example, in *Gallatin Fuels, Inc. v. Westchester Fire Insurance Co.*, 244 F. App'x 424 (3d Cir. 2007), and *Willow Inn, Inc. v. Public Service Mutual Insurance Co.*, 399 F.3d 224 (3d Cir. 2005), the Third Circuit relied on a Pennsylvania case to hold that attorney's fees awarded against insurers under a particular Pennsylvania statute—42 Pa. C.S.A. § 8371—

23

constituted compensatory damages for purposes of *State Farm*.  *See also Ray Haluch Gravel Co. v. Cent. Pension Fund*, 571 U.S. 177, 185 (2014) (acknowledging the "basic point" that some contractual awards of attorney's fees may be part of the merits).  Plaintiff errs by confusing these exceptions with the general rule.  *See, e.g.*, *Laymon v. Lobby House, Inc.*, 613 F. Supp. 2d 504, 515 (D. Del. 2009) (rejecting the extension of *Gallatin Fuels* and *Willow Inn* to the discrimination context).

Title VII defines compensatory damages as not including attorney's fees.  42 U.S.C. § 1981a(b)(2) (defining compensatory damages not to include "any other type of relief authorized under section 706(g) of the Civil Rights Act of 1964"); 42 U.S.C.A. § 2000e–5(g)(2)(B)(i) (allowing an award of attorney's fees).  There is no reason that attorney's fees under Section 1981 should be treated differently.

Any award of attorney's fees to Plaintiff "does not remedy the injury giving rise to the action," *Budinich*, 486 U.S. at 200, and should not be treated as compensatory damages in evaluating the ratio between compensatory and punitive damages.

The 40:1 ratio between punitive and compensatory damages is grossly excessive.   Here, where compensatory damages are a substantial award for emotional distress, the outermost constitutional limit is an amount equal to the compensatory damages.

### 3. The comparable civil penalty is the $300,000 cap in Title VII.

Finally, in considering comparable civil penalties, this Court should be guided by the $300,000 limit on damages under Title VII.  Dkt. 126 at 32-33 (citing *Williams v. ConAgra Poultry Co.*, 378 F.3d 790, 798 (8th Cir. 2004)).

Plaintiff misunderstands AHOM's argument.  She wrongly accuses AHOM of arguing that this Court "should impose the same punitive damage cap in this § 1981 case as the cap imposed in cases under Title VII."  Dkt. 135 at 47.

To the contrary, the very first sentence of this portion of AHOM's motion acknowledges that the damages cap of Title VIII "does not limit Plaintiff's recovery."  Dkt. 126 at 32.  The $300,000 limit does, however, represent a legislative judgment about the proper amount of recovery, which this Court can and should consider as part of the *State Farm* factors.  This is perfectly orthodox, as even a case championed by Plaintiff acknowledges.  *See, e.g.*, *Swinton*, 270 F.3d at 820 (explaining that "the Supreme Court has nonetheless directed us to refer to such analogous sanctions [the Title VIII cap] in determining the constitutionality of a punitive damages award").[10]

*     *     *

---

[10] Because Plaintiff apparently misunderstood AHOM's argument, Plaintiff fails to respond to this argument as well.

Despite Plaintiff's request that they be overruled, this Court must follow the Supreme Court's decisions, and under those decisions, the punitive damages awarded by the jury (and in the judgment) exceed the constitutional limits. If this Court does not render judgment as a matter of law in favor of AHOM on punitive damages, this Court should reduce the punitive damages to an amount no greater than the compensatory damages.

## IV. This Court Should Grant a New Trial Because the Jury's Verdict Resulted from Passion or Prejudice.

Finally, a new trial is warranted because the jury's extraordinary verdict—awarding $500,000 in compensatory damages and $20 million in punitive damages based on minimal testimony about emotional suffering for a short period—was the result of passion or prejudice. Dkt. 126 at 33-35 (setting forth the improper arguments made by Plaintiff's counsel that resulted in the excessive verdict).

Plaintiff responds only in a footnote, Dkt. 135 at 34 n.6, and thus has forfeited the argument. *See John Wyeth & Bro. Ltd. v. CIGNA Int'l Corp.*, 119 F.3d 1070, 1076 n.6 (3d Cir. 1997) ("[A]rguments raised in passing (such as, in a footnote), but not squarely argued, are considered waived.").

On the merits, Plaintiff does not even attempt to defend the improper closing argument, which AHOM detailed, but argues only that AHOM did not object to it. Dkt. 135 at 34 n.6.

But as AHOM explained in its Motion, it "does not contend that improper argument, alone, requires a new trial."  Dkt. 126 at 34.  The jury's verdict was facially excessive, however, and this Court must determine whether that excess was the result of passion and prejudice.  *Evans*, 273 F.3d at 352.  Plaintiff's improper and inflammatory closing argument—which appealed not to the evidence but to the jury's passion and prejudice, Dkt. 126 at 33-35—confirms that it was.  As a result, a new trial is necessary.

## CONCLUSION & PRAYER

AHOM respectfully renews its request that this Court render judgment as a matter of law in favor of AHOM on Plaintiff's claim based on Hibbert's October 2019 comment and, because this Court cannot discern which portion of the damages were attributed to this theory, grant a new trial.

This Court should also grant a new trial because the jury's failure to find that AHOM satisfied the *Faragher–Ellerth* affirmative defense was against the great weight of the evidence and a miscarriage of justice would result if the verdict were to stand.  A new trial is also warranted because the verdict is the result of passion and prejudice.

Because the compensatory damages are excessive, this Court should either grant a new trial or, alternatively, suggest remittitur to the amount needed to make the plaintiff whole, which AHOM contends is $200,000.

This Court should grant judgment in favor of AHOM as a matter of law regarding the availability of punitive damages.  If it does not, it should amend the judgment to reduce punitive damage to the constitutional maximum: on the facts of this case, the same amount as compensatory damages.

Respectfully submitted,

MORGAN, LEWIS & BOCKIUS, LLC

CULHANE, PLLC

/s/ Terry D. Johnson
Terry D. Johnson
(Pa. ID No. 93665)
502 Carnegie Center
Princeton, NJ 08540
Phone: (609) 919-6689
*terry.johnson@morganlewis.com*

William R. Peterson
(admitted *pro hac vice*)
(Texas ID No. 24065901)
1000 Louisiana Street, Suite 4000
Houston, TX 77002
Phone: (713) 890-5188
*william.peterson@morganlewis.com*

/s/ Jo Bennett
Jo Bennett
(Pa. ID No. 78333)
40 W. Evergreen Ave.
Suite 101
Philadelphia, PA 19118
Phone: (215) 880-0084
Fax: (215) 248-2381
*jbennett@cm.law*

Mishell B. Kneeland
(admitted *pro hac vice*)
(NY ID No. 2817922)
Culhane, PLLC
Nat'l Litigation Support Ctr
13101 Preston Rd.
Suite 110-1510
Dallas, TX 75240
Phone: (512) 910-5463
*mkneeland@cm.law*

*Attorneys for Defendant*

Dated: June 3, 2024

29

### CERTIFICATE OF COMPLIANCE WITH WORD-COUNT LIMITS

Pursuant to Local Rule 7.8(b), I certify that this brief complies with the word-count limit because, according to the word count feature of Microsoft Word, the body of the brief contains 6,613 words.

*/s/ William R. Peterson*
William R. Peterson
*Counsel for Defendant*

Dated: June 3, 2024

**CERTIFICATE OF SERVICE**

I hereby certify that on this 3rd day of June, 2024, all counsel of record were served with this Reply in Support of Defendant's Renewed Motion for Judgment as a Matter of Law, Motion for New Trial or Remittitur, and Motion to Amend the Judgment via CM/ECF.

*/s/ William R. Peterson*
William R. Peterson
*Counsel for Defendant*