# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

PATRICIA HOLMES,

     Plaintiff,

    v.

AMERICAN HOMEPATIENT, INC.,

     Defendant.

No. 4:21-CV-01683

(Chief Judge Brann)

## MEMORANDUM OPINION

### JANUARY 28, 2025

"The determination of a reasonable attorney's fee for a prevailing party under a fee shifting statute generally is a disagreeable and tedious task, especially where the fee petition is vigorously contested …."[1] The laborious nature of the Court's review has been compounded by the overzealous, and frequently unhelpful, arguments put forth by the parties. Plaintiff is entitled to neither a king's ransom nor a paltry sum; she may recover her reasonable attorneys' fees. After expending considerable effort to review the entire record, I grant Patricia Holmes' First Motion for Attorneys' Fees and Supplemental Motion for Attorneys' Fees in part.

---

[1] *Maldonado v. Houstoun*, 256 F.3d 181, 182 (3d Cir. 2001).

## I.    DISCUSSION

### A.    Summary of the Fees and Costs Requested

Plaintiff seeks to recover her attorneys' fees under 42 U.S.C. § 1988. As Defendant correctly notes, Holmes' requested hours do not align with the documentation submitted. After a painstaking, line-by-line review of these materials, I summarize Plaintiff's requested attorneys' fees and costs in the tables below.

Plaintiff's Requested Attorneys' and Paralegals' Fees

| Name | Hours[2] | Hourly Rate | Total Fees |
|------|----------|-------------|------------|
| Thomas B. Anderson (Initial Request) | 462.6 | $600.00 | $277,560.00 |
| Thomas B. Anderson (Supplemental Request) | 110.0 | $600.00 | $66,000.00 |
| James G. Bordas, III (Initial Request) | 30.75 | $600.00 | $18,450.00 |
| James G. Bordas, III (Supplemental Request) | 5.3 | $600.00 | $3,180.00 |
| Donneshia Johnson (Initial Request) | 37 | $175.00 | $6,475.00 |
| Jessica Karadeema (Initial Request) | 72.7 | $175.00 | $12,722.50 |
| Jessica Karadeema (Supplemental Request) | 0.2 | $175.00 | $35.00 |
| Richard Monahan (Supplemental Request) | 186.3 | $500.00 | $93,150.00 |
| Michael Prascik (Supplemental Request) | 47.6 | $300.00 | $14,280.00 |

---

[2]    The hours sought have been adjusted as follows: Anderson's requested hours were reduced by 14.4 hours in his initial request and by 5.5 hours in his supplemental request; Bordas' hours were reduced by 2.25 hours in his initial request; Karadeema's hours were reduced by 14.75 hours in her initial request; and Prasick's hours were increased by 0.2 hours in his sole request.

In total, Plaintiff has requested $491,852.50 in attorneys' fees. Holmes then seeks to enhance this award by a factor of five to reach a staggering $2,459,262.50. Plaintiff's counsel appear to have forgotten that Holmes is entitled to recover *only* her reasonable attorneys' fees. Nothing more, nothing less.

Additionally, Holmes seeks to recover costs associated with this case. Given the discussion above, it is no surprise that issues arose as the Court reviewed Holmes' requested costs. In her First Motion for Attorneys' Fees, Plaintiff's breakdown of costs falls $1,094.30 short of what she requested.[3] Holmes miscalculated the following categories in her brief: Depositions (undercounted by $414.00[4]); Inside copying (undercounted by $441.35); and Computer Legal Research (undercounted by $2.80).[5] I modified the categories to reflect the amounts contained in the Expense Report submitted in support of the First Motion for Attorneys' Fees.[6] But there are issues with the following two entries:

| Date | Description | Invoice No. | Component | Price |
|------|-------------|-------------|-----------|-------|
| 3/21/2024 | Medical Records, Bills and Reports Thomas B. Anderson Bordas & Bordas Attorneys, PLLC | [Left Blank in Documentation] | MedRec | $186.15 |

---

[3]    Doc. 107 (Brief in Support of First Motion for Attorneys' Fees) at 3-4.

[4]    I note that this $414.00 is attributable to the cost of receiving the Trial Transcripts from the Court Reporter. As this is a cost that can be recovered from Defendant, I simply keep it in the "Depositions" category.

[5]    Doc. 107 (Brief in Support of First Motion for Attorneys' Fees) at 3-4.

[6]    *Id.*, Ex. B (Expense Reports).

| Date | Description | Invoice No. | Component | Price |
|------|-------------|-------------|-----------|-------|
|  | Travel Reimbursement |  |  |  |
| 3/21/2024 | Filing Fees<br>Chase Card Services 0124 | [Left Blank in Documentation] | FF | $50.00 |

This $236.15 is unaccounted for in Plaintiff's categorization of her costs. Despite receiving no indication from Holmes as to how to label these costs, I identified the $50.00 filing fee as the charge associated with Bordas' Special Admission to this Court.[7] But it is unclear how Medical Records and Travel Reimbursement are combined for the $186.15 or what relevance medical records had to her counsel's preparation of this case. As such, I exclude that cost.

Plaintiff's costs in her Supplemental Motion for Attorneys' Fees contained a single issue: double counting a travel charge for $2,090.73.[8] Accordingly, I construe Plaintiff's Motions as asking for a combined total of $25,702.37 in costs, as summarized in the table below.

Plaintiff's Requested Costs

| Initial or Supplemental Request | Description of Cost | Cost Amount |
|---|---|---|
| Initial Request | Depositions[9] | $1,119.75 |
| Initial Request | Mediation | $4,800.00 |
| Initial Request | Court Costs | $452.00 |

---

[7]  *Id.* (Filing Fee date of March 21, 2024); Doc. 73 (Petition for Special Admission).

[8]  This April 24, 2024 charge was submitted in both the First Motion for Attorneys' Fees and the Supplemental Motion for Attorneys' Fees. Doc. 107 (Brief in Support of First Motion for Attorneys' Fees), Ex. B (Expense Reports); Doc. 154 (Supplemental Motion for Attorneys' Fees), Ex. B (Expense Report).

[9]  Again, the "Depositions" category contains $414.00 in costs attributable to receiving the transcript from the Court Reporter.

| Initial or Supplemental Request | Description of Cost | Cost Amount |
|---|---|---|
| Initial Request | Computer Legal Research | $2,517.61 |
| Initial Request | Inside Copying | $2,676.75 |
| Initial Request | Postage and Delivery | $142.90 |
| Initial Request | Travel | $4,285.58 |
| Supplemental Request | Computer Legal Research | $8,160.98 |
| Supplemental Request | Inside Copying | $1,148.10 |
| Supplemental Request | Court Reporter/Transcript | $210.00 |
| Supplemental Request | Travel/Lodging[10] | $188.70 |

## B.    A Prevailing Party

Title 42 U.S.C. §1988 allows the Court to award the "'prevailing party' in a civil rights action 'a reasonable attorney's fee as part of the costs.'"[11] "[T]o be considered a prevailing party within the meaning of § 1988, the plaintiff must be able to point to a resolution of the dispute which changes the legal relationship between itself and the defendant."[12] It is undisputed that Holmes is a prevailing party under § 1988, but AHOM challenges what exactly post-trial issues she prevailed on. This objection is dealt with separately below. Given her status as a prevailing party, I must now determine what to award Plaintiff.

---

[10] The supplemental request duplicates a travel charge for $2,090.73 that was accounted for in the travel category of the First Motion for Attorneys' Fees. Consequently, I limit the Supplemental Request to the sole remaining travel expense.

[11] *Tenafly Eruv Ass'n v. Borough of Tenafly*, 195 F. App'x 93, 95 (3d Cir. 2006) (citing *Hensley v. Eckerhart*, 461 U.S. 424, 429, 103 S. Ct. 1933, 76 L. Ed. 2d 40 (1983)).

[12] *Tx. State Teachers Ass'n v. Garland Indep. Sch. Dist.*, 489 U.S. 782, 792, 109 S. Ct. 1486, 103 L. Ed. 2d 866 (1989).

### C.    The Lodestar

The United States Court of Appeals for the Third Circuit's lodestar method has become "the guiding light of fee shifting-jurisprudence."[13] "Under the lodestar method, an[] attorney's reasonable hourly rate is multiplied by the number of hours the attorney reasonably spent working on a matter."[14] "Once the court determines the reasonable hourly rate, it multiplies that rate by the reasonable hours expended to obtain the lodestar."[15] "The lodestar is presumed to be the reasonable fee."[16] When completing this analysis, I am to go "line-by-line" through the billing statement and must conduct "a thorough and searching analysis" to ensure meaningful appellate review is possible.[17]

At the December 16, 2024 evidentiary hearing, the parties seemed unfamiliar with the "burden shifting" procedure I am to employ when evaluating a fee petition.[18] Under this procedure, the prevailing party first "'bears the burden' of establishing the prima facie case by 'producing sufficient evidence of what constitutes a reasonable market rate[.]'"[19] "If the plaintiff fails to meet her prima facie case, the district court has the discretion to determine what award is

---

[13]   *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 551, 130 S. Ct. 1662, 176 L. Ed. 2d 494 (2010).

[14]   *D.O. ex rel. M.O. v. Jackson Twp. Bd. of Educ.*, No. CV 17-1581 (TJB), 2019 U.S. Dist. LEXIS 72875, 2019 WL 1923388, at *2 (D.N.J. Apr. 30, 2019).

[15]   *Rode v. Dellarciprete*, 892 F.2d 1177, 1183 (3d Cir. 1990).

[16]   *Id.*

[17]   *Interfaith Cmty, Org. v. Honeywell Int'l, Inc.*, 426 F.3d 694, 703 n.5 (3d Cir. 2005).

[18]   *Carey v. City of Wilkes-Barre*, 496 F. App'x 234, 236 (3d Cir. 2012).

[19]   *Id.* (quoting *Evans v. Port Auth. of N.Y.*, 273 F.3d 346, 361 (3d Cir. 2001)).

reasonable."[20] "Otherwise, once the plaintiff has established a prima facie case for the requested hourly rate, the district court does not have the discretion to question or change the rate absent record evidence" from the opposing party.[21] But "[o]nce the adverse party raises objections to the fee request, the district court has a great deal of discretion to adjust the fee award in light of those objections."[22]

I emphasize that this limitation on my discretion comes into effect only *after* the Court concludes the prevailing party has met its initial burden. To adopt Plaintiff's position would result in rubberstamped fee petitions where, for whatever reason, inadequately supported aspects of the petition are not challenged. Of course, it cannot be that the Court lacks an independent obligation to ensure that the requesting party's evidence meets this initial burden. Otherwise, for example, there would be no reason for courts to independently review fee petitions in default judgment cases.[23]

---

[20]  *Id.* at 237. *See also Washington v. Phila. Cnty. Ct. of Com. Pl.,* 89 F.3d 1031, 1036 (3d Cir. 1996).

[21]  *Id.*

[22]  *Rode*, 892 F.2d at 1183.

[23]  *E.g.*, *Winn v. Hermani Mgmt., LLC*, Civ. A. No. 18-4240, 2019 U.S. Dist. LEXIS 216248 (E.D. Pa. Dec. 17, 2019) ("Counsel has filed a detailed and well-documented petition, to which there has been no response. Having independently reviewed the petition and its attachments, including affidavits as to the appropriate market rate, I conclude that the petition should be granted in its entirety"). *See also Wilson v. Advanced Urgent Care, P.C.*, No. 4:16-CV-00214, 2018 WL 1315663, 2018 U.S. Dist. LEXIS 41664, at *2 (M.D. Pa. Mar. 14, 2018) ("Even in a default judgment case, therefore, Plaintiff must establish the threshold reasonable lodestar to the Court's satisfaction.").

### 1.    Reasonable Hourly Rate

First, I compare the reasonableness of an attorney's hourly rate to the relevant market rate. "A reasonable market rate is established 'with reference to the community billing rate charged by attorneys of equivalent skill and experience performing work of similar complexity.'"[24] Therefore, it is Holmes' burden to establish a reasonable market rate "for the essential character and complexity of the legal services rendered."[25] The Third Circuit has instructed district courts to look to the vicinage in which the Court sits as the relevant community.[26] I therefore tailor my analysis to the market rates in the Williamsport vicinage. Although I previously set the reasonable market rates in this vicinage for experienced attorneys at a range of $180 to $325,[27] sufficient time has passed that these rates must be revisited.

"An attorney's usual billing rate is a good starting point for assessing reasonableness, though it is not dispositive."[28] To establish the reasonable market rate, Holmes must produce evidence beyond affidavits from her own attorneys.[29] This "evidence often comes in the form of affidavits from other attorneys."[30] I am to also consider "the relative simplicity of the case, the quality of the counsel's moving

---

[24]    *Carey*, 496 F. App'x at 236 (quoting *Evans*, 273 F.3d at 361).
[25]    *Smith v. Phila. Hous. Auth.*, 107 F.3d 223, 225 (3d Cir. 1997).
[26]    *E.g.*, *Interfaith*, 426 F.3d at 699.
[27]    *Beattie v. Line Mountain Sch. Dist.*, No. 4:13-cv-02655, 2014 WL 3400975 (M.D. Pa. July 10, 2014).
[28]    *Potence v. Hazleton Area Sch. Dist.*, 357 F.3d 366, 374 (3d Cir. 2004).
[29]    *Souryavong v. Lackawanna Cnty.*, 159 F. Supp. 3d 514, 525 (M.D. Pa. 2016).
[30]    *Carey*, 496 F. App'x at 236.

papers, and my 'perception of counsel's skill and experience during the trial of the underlying matter.'"[31] Although certainly tempting, the Court cannot simply rely on rates awarded to Plaintiff's attorneys in prior cases unless the work was contemporaneously performed and of a similar nature.[32]

### 2. Reasonable Hours

The Court must also evaluate the evidence supporting the hours claimed. Typically, the prevailing party can meet its burden through the submission of detailed time records.

### D. Requested Hourly Rates

As described in the tables above, the attorneys in this case have requested to be compensated at the following hourly rates: $600 per hour for Anderson and Bordas; $500 per hour for Monahan; and $300 per hour for Prasick. Johnson and Karadeema both requested to be compensated at an hourly rate of $175. These rates are notably higher than the rates I previously set for the Williamsport vicinage in *Beattie v. Line Mountain School District.*[33]

---

[31] *Gillespie v. Dring*, No. 3:15-CV-00950, 2019 U.S. Dist. LEXIS 180019, at *29 (M.D. Pa. Oct. 17, 2019) (quoting *Mantz v. Steven Singer Jewelers*, 100 F. App'x 78, 81-82 (3d Cir. 2004)).

[32] *Carey*, 496 F. App'x at 237 ("Notably, hourly rates that were set for a specific attorney in previous court decisions do not generally constitute record evidence … unless those rates were set for the same attorney and for the same type of work over a contemporaneous time period.") (citing *Smith*, 107 F.3d at 226 and *Black Grievance Comm. V. Phila. Elec. Co.*, 802 F.2d 648, 652 (3d Cir. 1986), *vacated on other grounds*, 483 U.S. 1015, 107 S. Ct. 3255, 97 L. Ed. 2d 754 (1987)).

[33] *Beattie v. Line Mountain Sch. Dist.*, No. 4:13-cv-02655, 2014 WL 3400975 (M.D. Pa. July 10, 2014).

### 1.    Use of a Current Hourly Rate

Before I reach whether Plaintiff has met her burden regarding her requested hourly rates, I will address AHOM's objection to the use of a current hourly rate. To support its contention that this is an improper fee enhancement, Defendant relies solely on *Perdue v. Kenny A. ex rel. Winn*,[34] a 2010 decision from the Supreme Court of the United States. In that decision, Justice Alito clearly differentiated these two issues. Writing for the Supreme Court, he stated:

> Third, there may be extraordinary circumstances in which an attorney's performance involves exceptional delay in the payment of fees. An attorney who expects to be compensated under § 1988 presumably understands that payment of fees will generally not come until the end of the case, if at all. See *ibid.* Compensation for this delay is generally made "either by basing the award on current rates or by adjusting the fee based on historical rates to reflect its present value." *Missouri v. Jenkins*, 491 U.S. 274, 282, 109 S.Ct. 2463, 105 L. Ed. 2d 299 (1989) (internal quotation marks omitted). But we do not rule out the possibility that an enhancement may be appropriate where an attorney assumes these costs in the face of unanticipated delay, particularly where the delay is unjustifiably caused by the defense. In such a case, however, the enhancement should be calculated by applying a method similar to that described above in connection with exceptional delay in obtaining reimbursement for expenses.[35]

This definitively precludes AHOM's objection, and the Third Circuit's treatment of this issue reinforces this conclusion.[36] Given Defendant's extensive

---

[34]    559 U.S. 542, 130 S. Ct. 1662, 176 L. Ed. 2d 494 (2010).

[35]    *Perdue*, 559 U.S. at 554.

[36]    *E.g.*, *Lanni v. N.J.*, 259 F.3d 146, 150 (3d Cir. 2001) ("When attorney's fees are awarded, the current market rate must be used.") and *Simring v. Rutgers*, 634 F. App'x 853 (3d Cir. 2015) (citing *Lanni*). *See also L.J. v. Audubon Bd. of Educ.*, 373 F. App'x 294, 297 n.2 (3d Cir. 2010) ("To the extent the District relied on the market rate during the period in which the majority

discussion of *Perdue* elsewhere,[37] I find it perplexing that I must address this issue at all. Without any citation for this proposition beyond *Perdue* itself, I will calculate Plaintiff's attorneys' fees with a current hourly rate.[38]

### 2.   Reasonable Hourly Rates

As previously noted, Holmes bears the burden of submitting evidence to prove the reasonableness of her attorneys' hourly rates. In support of her requested rates, Holmes provided records from cases litigated in West Virginia and affidavits from her own attorneys, Attorney Clifford A. Rieders, and Attorney Colleen E. Ramage. Much of this evidence provides no insight into the market rate for comparable work in the Williamsport vicinage.

### a.   Qualifications of Holmes' Attorneys

### i.   Anderson

Thomas B. Anderson has been practicing law for approximately 28 years, with a focus on employment law for the past 18 years.[39] He counts amongst his professional achievements two, recent multi-million verdicts in employment cases

---

billing occurred rather than the 'current market rate' at the time of the fee petition, this was error.").

[37] Doc. 127 (Brief in Opposition to First Motion for Attorney's Fees) at 12.

[38] Challenging every aspect of Plaintiff's fees petition is an ineffective strategy when doing so requires arguments that are clearly precluded by binding precedent. Perhaps Defendant and its counsel would benefit from guidance found in Sun Tzu's *The Art of War*: "So in war, the way is to avoid what is strong, and strike at what is weak." SUN TZU, THE ART OF WAR, *VI Weak Points and Strong*, para. 30 (trans., Lionel Giles, Fingerprint! Publishing, 2018).

[39] Doc. 107 (Brief in Support of First Motion for Attorneys' Fees), Ex. C (Anderson Affidavit) ¶¶ 3; 8.

and membership of the Academy of Trial Lawyers of Allegheny County and the Western Pennsylvania Employment Lawyers Association.[40] In the Middle District of Pennsylvania, Anderson has litigated eight employment and civil rights cases.[41] According to Anderson, his and Bordas' hourly rate of $600 and the hourly paralegal rate of $175 are "fair and reasonable for the complexity of the issues involved in this case and [are] comparable to the rates typically charged in the Middle District and Western District" of Pennsylvania.[42]

### ii.    Bordas

James G. Bordas III has been practicing law for approximately 24 years, and he is the managing partner at his firm.[43] He is frequently the firm's "chief settlement negotiator," and he has obtained verdicts "of $16.9 million and $10 million on behalf of individual plaintiffs …."[44] Other examples of his professional achievements include: membership on the Board of Governors for the West Virginia Association for Justice; receiving the Super Lawyer designation for ten years; serving as lead counsel in complex litigation; and speaking at continuing legal education seminars.[45] As to the present case, Bordas participated in the mediation, assisted with the development of Plaintiff's trial strategy, and reviewed all of the depositions in this

---

[40]  *Id.* ¶¶ 5-7.
[41]  *Id.* ¶ 10.
[42]  *Id.* ¶ 12.
[43]  *Id.*, Ex. D (Bordas Affidavit) ¶¶ 2, 6.
[44]  *Id.* ¶ 11.
[45]  *Id.* ¶¶ 4-5, 7-9.

case.[46] Bordas "understand[s]" his hourly rate of $600 is "either commensurate with [his] specialty, experience, background, and qualifications, or perhaps even slightly low."[47]

### iii.    Monahan

Richard Monahan has approximately 31 years of experience, and he completed a three-year federal judicial clerkship.[48] He has obtained multi-million-dollar verdicts in West Virginia in non-employment cases and has been involved in complex litigation.[49] More notably, Monahan has "briefed and argued a case before the Supreme Court of the United States, resulting in a unanimous decision in favor of West Virginia class action plaintiffs in *Smith v. Bayer Corp.*"[50] Further, he is a member of the American Association for Justice and the West Virginia Association for Justice, for which he serves on the Board of Governors.[51] Finally, Monahan asserts that he follows Bordas and Bordas' "standard practice to contemporaneously record billable time in 1/10-hour increments …."[52]

---

[46]    *Id.* ¶ 18.

[47]    *Id.* ¶ 16.

[48]    Doc. 154 (Supplemental Motion for Attorneys' Fees), Ex. C (Monahan Affidavit) ¶ 6.

[49]    *Id.* ¶¶ 7-8.

[50]    *Id.* ¶ 9.

[51]    *Id.* ¶ 5. Monahan also notes that he has received an AV rating from Martindale-Hubbell since 2015; he has been a West Virginia Super Lawyer for the last four years; he has previously been named a Top 100 Trial Attorney for plaintiff civil litigation and a Top 25 Attorney in Class Actions and Product Liability by the National Trial Lawyers. *Id.* ¶ 10.

[52]    *Id.* ¶ 14.

### iv.    Prasick

Michael Prasick has been practicing law for 23 years, and he has litigated complex products liability cases for over 13 years.[53] Prasick has prior experience as the supervising attorney of a regional office of a large nonprofit public interest law firm, and he is a member of the American Association for Justice and the West Virginia Association for Justice.[54] He indicated that his hourly rate of $300 "is fair and reasonable for the complexity of the issues involved in this case."[55] He notes that this is half the rate sought by Anderson and Bordas and has recently been approved by a state court in West Virginia.[56] Finally, he notes that he too followed Bordas and Bordas standard practice "to contemporaneously record billable time in 1/10 hour increments …."[57]

### b.    The Other Evidence Provided

While these affidavits speak to Holmes' attorneys' qualifications and experience, our Court of Appeals has clearly instructed that these affidavits alone cannot satisfy a prevailing party's burden.[58] Accordingly, I turn to the remaining evidence in the record.

---

53   *Id.*, Ex. D (Prasick Affidavit) ¶¶ 3-4, 6.
54   *Id.* ¶¶ 5, 7.
55   *Id.* ¶ 8.
56   *Id.*
57   *Id.* ¶ 11.
58   *E.g.*, *Chaaban v. Criscito*, 2013 U.S. Dist. LEXIS 58051, 2013 WL 1737689, at *10 (D.N.J. Apr. 3, 2013), *report and recommendation adopted*, 2013 U.S. Dist. LEXIS 57300, 2013 WL 1730733 (D.N.J. Apr. 22, 2013) ("In satisfying a prima facie case of reasonable fees, attorneys may not rest on their own affidavits."). *See also Rode*, 892 F.2d at 1183.

### i.        The West Virginia Documents

In this Circuit, district courts cannot simply rely on what fees an attorney has been awarded in the past unless the work was similar and contemporaneously performed.[59] Here, the Court received two documents that were filed in federal and state court, respectively, in West Virginia. Judicial approval of hourly rates in West Virginia tells the Court nothing about the market rate in the Williamsport vicinage.[60] For that reason, I set aside these documents. To consider them would require baseless speculation. With no way to meaningfully compare the approval of those rates to the relevant market rate here, I proceed to the next piece of evidence in the record.

### ii.       Ramage's Affidavit

Much like the West Virginia court documents, Colleen Ramage's declaration provides no direction to the Court. First, I acknowledge that she has indicated she is "generally familiar with hourly rates normally charged by experienced attorneys in [the] Western and Middle Districts of Pennsylvania who handle employment matters,"[61] but aspects of her affidavit cause the Court to question her familiarity with the rates charged in the Middle District of Pennsylvania. In a rather telling

---

[59]   *Pocono Mt. Sch. Dist. v. T.D.*, No. 22-1787, 2023 WL 2983501, 2023 U.S. App. LEXIS 9162, at *11 (3d Cir. Apr. 18, 2023).

[60]   *E.g.*, *Shane T. v. Carbondale Area Sch. Dist.*, No. 3:16-00964, 2021 U.S. Dist. LEXIS 188850, 2021 WL 4478237, at *19 (M.D. Pa. Sept. 30, 2021) ("Third, the opinions and orders from other cases plaintiffs submit are unpersuasive because they are from the Eastern District of Pennsylvania.") (Mannion, J.).

[61]   Doc. 107 (Brief in Support of First Motion for Attorneys' Fees), Ex. F (Ramage Affidavit) ¶ 6.

oversight, Ramage omitted her 2021 admission to the Middle District of Pennsylvania from her affidavit.[62] Ramage's accolades and professional memberships in this affidavit also trend towards the Pittsburgh area, if they are not national in nature.[63]

Even more critically, she simply declares that "Anderson's requested hourly rate of $600 is eminently reasonable given his level [of] experience, knowledge, and ability compared to attorneys of his caliber in the Western and Middle Districts of Pennsylvania, in addition to the complexity of the case at issue."[64] Reasonableness is not considered in a vacuum; it must be in reference to the market rate of the relevant community. Nothing in this averment, or indeed the remainder of the affidavit, allows the Court to conclude that Anderson's proposed hourly rate is reflective of a reasonable market rate in this vicinage. Ramage never evaluates Anderson's rate solely in reference to the Middle District of Pennsylvania, let alone the Williamsport vicinage. Given these issues, I conclude that Holmes cannot rely on Ramage's Affidavit to meet her initial burden.

---

[62] *Id.* ¶ 1 ("I am an attorney admitted to the practice of law in Pennsylvania since 1992 and before the United States District Court for the Western District of Pennsylvania, the United States Court of Appeals for the Third Circuit and the United States Supreme Court.").

[63] *Id.* ¶¶ 1-4.

[64] *Id.* ¶ 7.

### iii.    Rieders' Affidavit

Consequently, I turn now to the remaining evidence before the Court: Clifford Rieders' Affidavit. In this affidavit, Rieders first describes his own professional career. He has been admitted to practice in New York, Pennsylvania, and the District of Columbia.[65] As to his caseload, Rieders notes that he typically "represents clients in personal injury and medical malpractice" but he "also handle[s] one or two civil rights cases per year, the most recent one with litigation completed in early 2024 …" in the United States District Court for the Eastern District of Virginia.[66]

Relevant to this analysis, Rieders contends that he has "knowledge about the hourly rates charged by lawyers in the Middle District" of Pennsylvania due to: fee petitions from his firm; his "examination of fee petitions filed by lawyers in other cases;" his "role as an expert witness in several fee cases;" his "participation at Third Circuit Judicial Conferences, in particular, the 1985 conference which focused on the issue of court-awarded attorney fees;" his involvement with professional organizations "such as the Pennsylvania Trial Lawyers Association ("PaTLA")" where the issue of fees has been the subject of discussion;" and "speaking with other attorneys who refer civil rights cases to me or who do such work."[67]

---

[65]    *Id.*, Ex. E (Rieders Affidavit) ¶¶ 1-3. Other aspects of Rieders' professional career are also described.

[66]    *Id.* ¶ 19.

[67]    *Id.* ¶ 28.

Much of this background does little to credibly bolster Rieders' ability to speak to attorney's fees in civil rights cases in this vicinage. The 1985 Third Circuit Judicial Conference is certainly on a relevant topic, but it is now stale given the four-decade passage of time. Further, there is no indication that Rieders' has a familiarity with civil rights cases beyond "speaking with other attorneys who refer civil rights cases to me or who do such work" and his handling of "one or two civil rights cases per year" in unknown forums.[68] These vague statements fail to demonstrate that he is familiar with the market rate for civil rights cases in the Williamsport vicinage. Serving as "an expert witness in several fee cases" and examining fee petitions from his own firm and other lawyers similarly fails for a lack of specificity.

Next, Rieders correctly notes that a district-wide rate will result in attorneys being over-or-undercompensated depending on their location.[69] That is undoubtedly true since the Scranton/Wilkes-Barre and Harrisburg vicinages of this Court contain larger legal markets. Yet he fails to appreciate that the Third Circuit has instructed this Court to look to the vicinage in which it sits, not the entire district, as the relevant community. Instead, he indicates his background, as described above, makes him "knowledgeable about the hourly rates charged by lawyers in the Middle District" and that "it is preferable, in a fee petition, to review the results of the case, the

---

[68] *Id.* ¶¶ 19, 28. The Rieders Affidavit indicates that the most recent civil rights case he participated in occurred in the Eastern District of Virginia. *Id.* This does not support a familiarity with the prevailing rates in the Williamsport vicinage.

[69] *Id.* ¶ 47.

background and capability of counsel, the experience of counsel, and the rates charged by other lawyers in the case, including the defense."[70] These averments simultaneously make the very mistake he urges the Court to avoid and disregards the Third Circuit's instructions on evaluating the requested rates in the relevant vicinage.

Turning then to the rate Anderson has requested, Rieders contends that Anderson's proposed hourly rate of $600 "is extremely reasonable."[71] As to his own rates, Rieders provides the Court with a somewhat confusing description of his billing practices. First, he notes that he bills at an hourly rate of $750.00 "when billing hourly."[72] Ordinarily, this may serve as sufficient evidence to support Anderson's hourly rate.[73] But he qualifies the relevance of this hourly rate in a way that undermines its evidentiary value; "much of [his] work is contingent fee, but not all. Sometimes [Rieders] will take cases on a fee basis, neither hourly nor contingent fee. Other times, [Rieders] will charge less than $750.00 per hour, under special circumstances."[74] While only "a minority of [Rieders'] work is billed on an hourly basis, [Rieders] has charged $750.00 per hour and will do so when appropriate."[75]

---

[70]  *Id.* ¶¶ 28, 46.

[71]  *Id.* ¶ 37. Reasonableness alone is not the standard. The question is whether the rate is reasonable compared the relevant community's market rate for similar services.

[72]  *Id.* ¶ 39.

[73]  *E.g.*, *J.S. ex rel. Snyder v. Blue Mountain Sch. Dist.*, No. 3:07-CV-585, 2014 U.S. Dist. LEXIS 44478, 2014 WL 1321116, at *7 (M.D. Pa. Mar. 31, 2014).

[74]  Doc. 107 (Brief in Support of First Motion for Attorneys' Fees), Ex. E (Rieders Affidavit) ¶ 40.

[75]  *Id.* ¶ 41.

These averments are insufficient to meet Holmes' burden. By his own admission, Rieders practices in several federal courts; yet there is no indication that he has billed at a rate of $750.00 in the Middle District of Pennsylvania, much less the Williamsport vicinage, for a civil rights case.[76] The fact most of his practice is comprised of medical malpractice and personal injury work reinforces this conclusion. Further, the fact that only a "minority" of his work is billed on an hourly basis, with some charged at less than $750.00 due to unknown "special circumstances," leads the Court to doubt the viability of this rate in the Williamsport vicinage.[77]

Finally, I take a moment to discuss Rieders' final averment: that "[t]here are no attorneys, that [he] is aware of, who have equaled Mr. Anderson's achievement in a civil rights case in the Middle District of Pennsylvania, particularly Williamsport, or who even have his degree of success in such cases and trial experience on a regular basis in civil rights cases."[78] While certainly relevant to an enhancement, this statement provides no evidentiary support to the validity of Anderson's rate in the Williamsport vicinage.

---

[76] Evidence that the rate claimed has been awarded in the vicinage is sufficient to support a fee petition. *Borrell v. Bloomsburg Univ.*, 207 F. Supp. 3d 454, 510 (M.D. Pa. 2016) (Caputo, J.).

[77] Doc. 107 (Brief in Support of First Motion for Attorneys' Fees), Ex. E (Rieders Affidavit) ¶¶ 40-41.

[78] *Id.* ¶ 49.

### iv.    The Evidentiary Hearing

Given these concerns, I naturally concluded that an evidentiary hearing should be held; this hearing was meant to provide Holmes with the opportunity to address and supplement these deficiencies. In fact, the Scheduling Order for that hearing clearly articulated this very concern:

> Here, Defendant has not challenged the hourly rates of Plaintiff's attorneys beyond contending that the use of a current hourly rate is improper. But the Court has an independent obligation to evaluate whether Holmes has met her initial burden regarding the reasonableness of her desired hourly rates in the Williamsport vicinage.
>
> My review has raised questions as to whether the evidence submitted is sufficient to establish her prima facie case. Consequently, I must hold an evidentiary hearing on the reasonableness of the requested hourly rates.[79]

Despite providing this guidance and opportunity, Plaintiff declined to submit any further evidence. Instead, her counsel continued to argue it was inappropriate for the Court to evaluate whether she had met her initial burden. For the reasons discussed above, I therefore conclude that Holmes failed to meet her initial burden as to the hourly rates requested by her attorneys.

### c.    The Court's Discretion

I now must set reasonable hourly rates for Holmes' attorneys using my discretion. To do so, two options emerge: rely on the fee schedule set out by the Community Legal Services in Philadelphia or perform an in-depth review of recent

---

[79]    Doc. 160 (Scheduling Order for December 16, 2024 Evidentiary Hearing).

fee petition caselaw in the Middle District of Pennsylvania. Rates set for attorneys in Philadelphia provide little, if any, guidance as to the market rates in North Central Pennsylvania. After all, I set aside Ramage's declaration and the West Virginia documents for a similar reason. Instead, I performed a review of fee petition cases in the Middle District of Pennsylvania from the last five years.[80]

Between 2019 and 2024, attorneys in this District were regularly awarded rates from $100 to $375 depending on the skill and experience of the attorney and the complexity of the case, barring circumstances such as specialized expertise.[81] The upper end of this range is $50 above the rates I established in 2014 for the Williamsport vicinage. I find it now appropriate to increase this range by $50. As such, the new range of hourly rates in the Williamsport vicinage is $230 to $375 for experienced attorneys, with associates at a slightly lesser rate. While this seemingly brings Williamsport in line with the Harrisburg and Scranton/Wilkes-Barre market rates, it is nonetheless an appropriate range for this vicinage. The upper end of this range has been in use since at least 2019 elsewhere in the Middle District; at this

---

[80]   As I previously set the appropriate range for attorney's fees in the Williamsport vicinage, I shall focus this review on the Scranton/Wilkes-Barre and Harrisburg divisions. In doing so, I remain cognizant of the differences between those locations and Williamsport, in particular the size of the cities and their respective legal markets.

[81]   *E.g.*, *A.B. v. Pleasant Valley Sch. Dist.*, No. 3:17-CV-02311, 2019 U.S. Dist. LEXIS 108469 (M.D. Pa. June 28, 2019); *Katona v. Asure*, No. 1:11-CV-1817, 2019 U.S. Dist. LEXIS 24062 (M.D. Pa. Feb. 14, 2019); *Finnegan v. Smith*, No. 3:16-CV-1416, 2019 U.S. Dist. LEXIS 35114 (M.D. Pa. Mar. 5, 2019) and *Beard v. Ocwen Loan Servs., LLC*, No. 1:14-CV-01162, 2024 U.S. Dist. LEXIS 4753 (M.D. Pa. Jan. 9, 2024).

juncture, it is an underrepresentation of the rates in the larger markets in Scranton/Wilkes-Barre and Harrisburg.

Looking at the skillsets and backgrounds of the various attorneys, Anderson has the most specialized knowledge relevant to this case through his employment law experience. As the lead attorney, he was also primarily responsible for advancing the case forward. Bordas' involvement in the mediation likely drew upon his unique role as chief settlement negotiator for their law firm. Both he and Bordas are also seasoned attorneys, with 28 years and 24 years of experience respectively. Although this was a straightforward employment discrimination case, I adjust their hourly rates downwards to the maximum in this vicinage: $375.

While Prasick is certainly an experienced attorney with 22 years of experience, he lacks any specialized knowledge relevant to this case. His practice has primarily focused on complex products liability work; before that he worked "as the supervising attorney for the regional office of a large nonprofit public interest law firm."[82] My review of the work he performed, as documented in the timetables submitted by Holmes, reveals many simple and straightforward tasks. Consequently, I adjust his requested hourly rate of $300 downwards to $250.

Monahan's 31 years of experience has seemingly allowed him to develop specialized expertise in appellate work. His time entries demonstrate he drew upon

---

[82]  Doc. 154 (Supplemental Motion for Attorney's Fees), Ex. D (Prasick Affidavit) ¶¶ 6-7.

this expertise in this case during its post-trial stage. But still many of his assigned tasks involved straightforward issues. Given this, I find it appropriate to adjust his requested rate downwards from $500 to $300 an hour.

No documentation has been provided regarding reasonable paralegal fees in the Williamsport vicinage. Other cases in this district have established a range of $75 to $170 per hour for paralegals depending on their experience and the complexity of the work performed.[83] Holmes' requested rate falls slightly outside this range. At the hearing, Anderson indicated that he could not state with specificity how much experience Jessica Karadeema has, but the information he provided suggests she has more than a decade of experience.[84] Consequently, I slightly reduce Karadeema's hourly rate from $175 to $150. Although the tasks she performed were relatively simple, I find it appropriate to award her this rate given her level of experience.  As to Donneshia Johnson's hourly rate, I reduce it from $175 to $115. This is approximately the midpoint of the range, which is appropriate given the rather straightforward tasks she performed.[85]

---

[83]  *E.g.*, *A.B. v. Pleasant Valley Sch. Dist.*, No. 3:17-CV-02311, 2019 U.S. Dist. LEXIS 108469 (M.D. Pa. June 28, 2019).

[84]  Doc. 163 (Evidentiary Hearing Transcript) ¶¶ 22:4-22.

[85]  At the hearing, the Court asked Plaintiff's counsel what level of experience Johnson has. The transcript reveals that confusion arose as to whom the Court was inquiring about, as Anderson responded with Ramage's professional background. *Id.* at 22:1-3. Given this confusion, I am guided solely by the nature of the work performed by Johnson. This work involved trial assistance and technology preparation. Doc. 107 (Brief in Support of Motion for Attorneys' Fees), Ex. A (Billing Records).

Under these rates, Plaintiff has requested $311,223.75 in attorney's fees. Applying her desired enhancement brings her requested attorney's fees up to $1,556,118.75.

### 3.    Reasonable Hours

Unlike the hourly rates, Plaintiff has met her burden of production regarding her requested hours by providing detailed timesheets. Defendant has challenged many aspects of the submitted time entries; I address each of these separately below.

### a.    Vague Time Entries

The Third Circuit has directed that "[a]ny hours to be used in calculating attorneys' fees … [must] be detailed with sufficient specificity."[86] "In other words, the fee application must 'be specific enough to allow the district court to determine if the hours claimed are unreasonable for the work.'"[87]

AHOM draws the Court's attention to the following entries: 1.7 hours and 5 hours for "Analyze evidentiary issues regarding trial" on July 25, and July 26, 2023; 9 hours for "Prepare for mediation" spread over September 26, September 29, and October 3, 2023; 4 hours for "Review article from Plaintiff regarding racial lynching of black women that she thought about due to McCoy and trial preparation" on

---

[86] *Gelis v. BMW of N. Am., LLC*, 49 F.4th 371, 379 (3d Cir. 2022) (internal citations and quotations omitted).

[87] *Id.* at 379-380 (quoting *Rode*, 892 F.2d at 1190).

October 5, 2023;[88] 74 hours[89] described as "Trial preparation" spread over March 14, March 15, March 21, March 22, March 28, 2024, April 1, April 2, April 4, April 5, April 6, and April 7, 2024; 11 hours billed for "Technology preparation, trial" on April 8, 2024 and 18 hours for "Attend trial" on April 9 and April 10, 2024.[90] Although the structure of Defendant's brief suggests that it views vagueness as an overarching issue, AHOM only specifically challenged 122.7 hours. As such, I limit my vagueness analysis to the entries identified in Defendant's papers.

Defendant is correct that the "fee application must 'be specific enough to allow the district court to determine if the hours claimed are unreasonable for the work performed.'"[91] But all of Plaintiff's records "included the date, a description

---

[88] I reject Defendant's argument that this is not billable time simply because Plaintiff thought about this article. Holmes testified at trial to how the slur Coon "still carries the same connotation. It still carries the same pain … And the word coon is dehumanizing. It's telling me or anybody of a person of color that you're not an equal human as I am. I have to put these labels on you to degrade you." Doc. 104 (Apr. 9, 2024 Trial Transcript) at 68:23-69:6. She further testified about how there is "[s]o much death and blood tied to that [Ku Klux Klan] hood, so much death and blood tied to that 'N' word. The – the hood, what I understood, KKK and how people were savagely treated at one point in time." *Id.* at 97:6-9. It was reasonable for Anderson to review an article regarding lynchings as it undoubtedly provided insight into the emotional turmoil his client was facing.

[89] In Defendant's brief, it challenges 69.5 hours labeled as "Trial preparation" on these dates. However, the Court's review of the annotated spreadsheet indicates that there are in fact 74 hours related to "Trial preparation" that are challenged as vague. Presumably the missing entry is from April 6, 2024 for 4.5 hours that is labeled as "Trial preparation with Plaintiff and Eichelberger." While this is slightly more detailed than the other entries, I include it here to ease my analysis. Doc. 127 (Brief in Opposition to First Motion for Attorneys' Fees), Ex. 2 (Annotated Spreadsheet).

[90] Defendant also takes issue with whether this category reflects clerical work. I address that separately below.

[91] *Gelis*, 49 F.4th at 379-380 (quoting *Rode*, 892 F.2d at 1190).

of the activity, and the time expended."[92] Despite having generic descriptions, I conclude that the challenged hours are reasonable. Spending 9 hours to prepare for a mediation and 6.7 hours to analyze evidentiary issues is certainly reasonable. The 4 hours spent on the lynching article is similarly reasonable as it goes to counsel's ability to understand and articulate the emotional distress experienced by Holmes. While 74 hours for trial preparation is borderline excessive in this case, it does not cross the line from diligence to inordinance. Many tasks go into trial preparation: voir dire preparation; witness preparation; preparation of the opening argument; and anticipation of the various arguments and defenses likely to be put forth by one's opponent. Similarly, the 29 hours spent by Johnson with "Technology preparation, trial" and "Attend Trial" are similarly reasonable for these broad tasks.

The Third Circuit has explained that a fee petition only needs to include "some fairly definite information as to the hours devoted to various general activities, e.g. pretrial discovery, settlement negotiations, and the hours spent by various classes of attorneys ...."[93] In fact, courts in this Circuit "have held that simple entries such as 'research,' 'review' and 'prepare' are sufficiently specific, so long as they explain

---

[92] *Brown v. Nutrition Mgmt. Servs. Co.*, Nos. 08-3840 and 09-1779, 2010 U.S. App. LEXIS 5535, at *13 (3d Cir. Mar. 17, 2020).

[93] *Gelis*, 49 F.4th at 380.

who performed those activities and for how long."[94] Consequently, I decline to strike the identified hours for vagueness.[95]

## b. Clerical Work

Next, AHOM identifies what it contends is clerical work performed by Karadeema and Johnson.[96] "[P]urely clerical or secretarial tasks should not be billed at a paralegal rate regardless of who performs them."[97] Clerical tasks include "filing documents, preparing service packets, and completing or reviewing *pro hac vice* paperwork."[98] These types of tasks are "usually absorbed in the attorney's fee as overhead … throughout Pennsylvania."[99]

Upon a review of the challenged time entries, I conclude that many are in fact clerical. As such, I reduce Plaintiff's requested fee by 48.75 hours for clerical work

---

[94]   *A.B. v. Pleasant Valley Sch. Dist.*, 2019 U.S. Dist. LEXIS 108469, at *8.

[95]   The separate challenge to the hours also described as clerical is dealt with below.

[96]   Defendant identified time entries that it contends are "clerical" and "likely clerical." Doc. 127 (Brief in Opposition to First Motion for Attorneys' Fees), Ex. 2 (Annotated Spreadsheet).

[97]   *Missouri v. Jenkins*, 491 U.S. 274, 288 n.10, 109 S. Ct. 2463, 105 L. Ed. 2d 229 (1989).

[98]   *Klein v. Colvin*, No. 1:14-CV-1496, 2016 U.S. Dist. LEXIS 88515, at *10 (M.D. Pa. July 8, 2016). Further examples of clerical tasks include "packaging attachments," "scanning and numbering exhibits," "File maintenance," "File management," "Document management," "coordinating a conference call," "Created binder of all documents in possession," "Prepared binder for expert," "Telephone call to [individual] to schedule early neutral evaluation," "Various email correspondence … regarding scheduling of [] mediation," "opening a file in a database," "entering case updates in a management system," "mailing letters," "calendaring deadlines," "confirming contact information," and "talking with a  process server or court clerk." *See Elashi v. Sabol*, No. 4:09-CV-2201, 2010 U.S. Dist. LEXIS 116443 (M.D. Pa. Nov. 2, 2010); *Clemens v. N.Y. Cent. Mut. Fire Ins. Co.*, 903 F.3d 396 (3d Cir. 2018); *Slantis v. Capozzie & Assocs., P.C.*, No. 1:09-CV-049, 2011 U.S. Dist. LEXIS 67977 (M.D. Pa. June 24, 2011); and *McGuire v. Neidig*, No. 14-1531, 2017 U.S. Dist. LEXIS 53488 (W.D. Pa. Apr. 7, 2017).

[99]   *Moffitt v. Tunkhannock Area Sch. Dist.*, No. 3:13-1519, 2017 U.S. Dist. LEXIS 7948, at *19 (M.D. Pa. Jan. 20, 2017).

performed by Karadeema, billed at a total of $7,312.50. Attached as Appendix A to this Memorandum Opinion are the time entries that my review has deemed clerical. They bear a remarkable similarity to entries identified by other courts in this Circuit as clerical.

As to remaining entries, my reasoning is as follows. AHOM contends that time spent by Karadeema on work related to the preparation of subpoenas is clerical.[100] Courts in this Circuit have regularly allowed the recovery of time spent on subpoenas;[101] therefore, I will not strike these hours. In a similar vein, I decline to excise hours related to the notices of depositions,[102] work on Plaintiff's discovery

---

[100] These challenged entries are found on the following dates: 0.5 hours on October 25, 2022; 0.8 hours on October 27, 2022; 1.0 hours on November 9, 2022; 0.4 hours on November 14, 2022; 1.2 hours on November 16, 2022; 0.2 hours on November 22, 2022; 0.4 hours on November 30, 2022; two entries for 0.25 and 0.5 hours, respectively, on February 16, 2024; 1.25 hours on March 13, 2024; 0.5 hours on March 20, 2024; and 0.25 hours on April 4, 2024. Doc. 107 (Brief in Support of First Motion for Attorneys' Fees), Ex. A (Billing Records). Although some of these hours may in fact be clerical, it was AHOM's burden to put forth that argument. With no references to caselaw, Defendant has made no effort to aid the Court in its evaluation of the hours it has deemed clerical. Consequently, I decline to excise these hours given AHOM's failure to provide any caselaw that would cast doubt on the non-clerical nature of the preparation and submission of the subpoenas and general correspondence concerning this task. I have only excised hours related to subpoenas where the nature of the task is clearly clerical, as identified in the chart in Appendix A.

[101] *E.g., Poff v. Prime Care Med., Inc.*, No. 1:13-CV-03066, 2016 U.S. Dist. LEXIS 77271 (M.D. Pa. June 14, 2016).

[102] This consists of the following entries: 0.6 hours on November 1, 2022; and two entries for 0.4 hours on November 17, 2022. Doc. 107 (Brief in Support of First Motion for Attorneys' Fees), Ex. A (Billing Records).

responses,[103] mediation preparation,[104] and trial preparation.[105] These tasks are comparable to Karadeema's work on the subpoenas. Finally, AHOM has challenged time spent updating Holmes on the status of her case.[106] I do not find the hours requested on this task to be excessive, and I decline to conclude that updating a client on the status of their case is a clerical task.

### c.    Travel Time and Expenses

Our Court of Appeals has previously clarified that the recovery of travel time under § 1988 is limited to local counsel.[107] For "counsel from outside of the forum of the litigation," the Third Circuit "prohibits" the recovery of "travel expenses"[108] unless it can be shown that local counsel would have been unwilling to represent Holmes. This has not been shown as Holmes has only pointed to a vague statement from Rieders regarding the attractiveness of civil rights cases in the Middle District of Pennsylvania.

---

[103]  This category is comprised of the following entries: 0.2 hours on July 21, 2022; 0.8 hours on July 22, 2022; 0.4 hours on July 26, 2022; 0.5 hours on July 27, 2022; 1.5 hours on July 28, 2022; 0.2 hours on August 1, 2022; 1 hour on August 3, 2022; and 0.5 hours on August 4, 2022. *Id.*

[104]  This consists of a single entry on October 3, 2023 for 0.5 hours. *Id.*

[105]  This consists of 0.5 hours on November 8, 2023; 1 hour on February 13, 2024; two 0.25 entries on March 20, 2024; 0.25 hours on March 26, 2024; 11 hours on April 8, 2024; 9 hours on April 9, 2024; and 9 hours on April 10, 2024. *Id.*

[106]  This category is comprised of the following entries: 0.25 hours on April 26, 2023; 0.25 hours on June 19, 2023; 0.25 hours on November 16, 2023; 0.2 hours on January 23, 2024; and 0.5 hours on February 23, 2024. *Id.*

[107]  *United States ex rel. Palmer v. C&D Techs., Inc.*, 897 F.3d 128, 136 n.8 (3d Cir. 2018).

[108]  *Id.*

Perhaps due to this restriction, Anderson contends that "he does not simply hail from a legal community other than the Williamsport vicinage"[109] because he "practices primarily in the Western and Middle Districts of Pennsylvania."[110] A cursory review of Anderson's professional history undercuts the veracity of this statement.[111] He was admitted to the United States District Court for the Western District of Pennsylvania in 1997; he was not admitted to the Middle District of Pennsylvania for another 21 years.[112] Further, his practice is centered in the state and federal courts located in the counties that comprise the Western District of Pennsylvania.[113] Consequently, it is more accurate to state that Anderson "practices *primarily* in the Western District of Pennsylvania, with *occasional* appearances in the Middle District of Pennsylvania." Under these circumstances, I conclude that Anderson is not local counsel, and Plaintiff's attempt to bill his travel time is inappropriate.[114]

---

[109] Doc. 107 (Brief in Support of First Motion for Attorney's Fees) at 9.

[110] *Id.*

[111] *See* Thomas B. Anderson, Litigation Analytics, Thomson Reuters – WestLaw Edge, https://1.next.westlaw.com/Analytics/Profiler?docGUID=I1846081E1DD211B2AD58AC00 D20223FE&contentType=attorney&view=profile&dataOrchGUID=8c86eccaf23f47bfbc806f f01576be8d&transitionType=LegalLitigation&contextData=(sc.Default)#/attorney/I1846081 E1DD211B2AD58AC00D20223FE/profile (last accessed January 15, 2025).

[112] *Id.*

[113] *Id.*

[114] The travel time for the other attorneys and paralegals will similarly be excised from Holmes' attorney's fees. These individuals did not include any averment that they should be considered local to the Middle District of Pennsylvania, let alone the Williamsport vicinage.

Even if Plaintiff was correct in her position, she has failed to meet her burden to prove that "travel time should be compensated at the full rate."[115] She "has not presented any evidence regarding the customary practice for the billing of travel time in the local community."[116] Since Defendant challenged both Holmes' billing of her attorneys' travel time and travel expenses, I also address the costs here as the same analysis applies. Accordingly, I excise 59.4 hours from Holmes' requested attorney's fees.[117] Her recoverable amount has been reduced by $20,195.00 in fees and $4,474.28 in costs, as identified in the tables in Appendix B.

### d.    Unsuccessful Claims

"It is true that when 'a plaintiff has achieved only partial or limited success,' a district court may reduce a fee award below the lodestar amount."[118] "However, '[t]here is no precise rule or formula for making these determinations.'"[119] "Indeed, where, as here, a plaintiff's successful and unsuccessful claims arise out of a common core of facts ... '[m]uch of counsel's time will be devoted generally to the

---

[115] *United States ex rel. Palmer*, 897 F.3d at 136 n.8.

[116] *Id.* Holmes raised an interesting argument concerning the recovery of travel expenses for the mediation as it occurred outside of the forum of the litigation. I disregard this argument given the lack of proof pertaining to the customary practice of billing for travel time in the Williamsport vicinage of the Middle District of Pennsylvania.

[117] This reduces the recoverable amounts as follows: Anderson's initial request has been reduced to 427.15 hours; Anderson's supplemental request has been reduced to 101.05 hours; Bordas' initial request has been reduced to 23.75 hours; and Johnson's sole request has been reduced to 29 hours.

[118] *Damian J. v. Sch. Dist. of Phila.*, 358 F. App'x 333, 337 (3d Cir. 2009) (quoting *Hensley*, 461 U.S. at 436).

[119] *Id.*

litigation as a whole, making it difficult to divide the hours expended on a claim-by-claim basis.'"[120] The Third Circuit has "recognize[d] that a district court may reduce the lodestar amount 'even where the plaintiff's claims were interrelated, nonfrivolous, and raised in good faith.'"[121] But at the same time I retain "discretion in determining the actual fee[] award" so long as I "appl[y] the correct legal standard …."[122]

Here, Defendant suggests reducing the lodestar amount by ten percent. AHOM arrives at this figure by estimating that one-fourth of the time spent by Plaintiff's counsel occurred before this Court issued its Memorandum Opinion and Order disposing of Defendant's Motion for Summary Judgment. However, I do not find it appropriate to do so. AHOM is correct that I dismissed Holmes' retaliation and constructive discharge claims, but Defendant fails to recognize that most of the facts supporting Plaintiff's retaliation and constructive discharge claims remained relevant to her hostile work environment claim. Therefore, I decline to impose a percentage reduction for time spent on these unsuccessful claims.

### e.    Post-Trial Motions Prevailing Party

Related to this argument is AHOM's contention that Holmes has largely not prevailed on the post-trial motions filed by the parties. While there is certainly

---

[120]  *Id.* (quoting *Hensley*, 461 U.S. at 435).
[121]  *Id.* (quoting *Hensley*, 461 U.S. at 436).
[122]  *Id.* (citing *Abrams v. Lightolier Inc.*, 50 F.3d 1204, 1222 (3d Cir. 1995)).

precedential support for removing time related to independent claims, it is unclear whether this logic extends to individual motions. But, from the Court's perspective, Holmes has largely prevailed on the critical motion filed by AHOM. I declined to overturn the jury's finding of liability, the amount of compensatory damages, and the imposition of punitive damages. As the research supporting the preservation of any award of punitive damages naturally overlapped with the size of that award, I do not find it appropriate to deem the time spent researching this issue irrelevant. Therefore, I remove the time I definitively related to the isolated issues Holmes has not prevailed on: the fee enhancement; the demonstrative slides; and the time spent on appellate work.[123] Unlike many of the other post-trial motions, these aspects contained no overlap with areas that Holmes prevailed on. These tasks accounted for 36.44 hours as identified in the table in Appendix C.[124]

### f.    Excessive Hours in the Supplemental Motion

The Court similarly finds that AHOM's contention that the hours spent on the post-trial filings are excessive has some merit. Defendant is correct that "[t]he suggestion that post-judgment filings would reasonably require nearly 75% of the time required from the filing of the case through trial is dubious."[125] Many of the

---

[123]  It is premature to award Holmes fees for any appellate work as she has not yet prevailed at the Third Circuit.

[124]  This reduces the recoverable amount of hours in the Supplemental Motion for Attorney's Fees as follows: Anderson's request has been reduced to 92.75 hours; Monahan's request has been reduced to 169.135 hours; Prasick's request has been reduced to 36.925 hours; and Bordas' request has been reduced to 5 hours.

[125]  Doc. 156 (Brief in Opposition to Supplemental Motion for Attorney's Fees) at 5-6.

post-trial motions were not complex. Even in the most complicated motion, the Court found it appropriate to only hold oral argument on two discrete issues. The remaining aspects of that motion did not pose novel questions. I therefore find it appropriate to impose a 10% reduction to each individual's requested hours in the Supplemental Motion for Attorney's Fees. This reduces the total amount of compensable hours in the Supplemental Motion for Attorneys' Fees to 273.609 hours.[126]

### g.    Quarter- and Half-Hour Billing

Defendant next argues that Plaintiff's fees should be reduced by five percent due to her counsel's apparent use of quarter hour and half hour increments for billing. Defendant acknowledges that there is "no prohibition on quarter hour billing in our Circuit."[127] Although the practice is not banned, it clearly inflates fees. AHOM has identified patterns that raise serious questions concerning the billing practices of the attorneys and paralegals in this case.[128] The Court sets aside the potential issues concerning Monahan's and Prasick's billing as they both averred to follow a tenth-hour billing system.[129] Despite being suspect, I do not find the issues sufficient to

---

[126] The recoverable amounts for each individual are as follows after applying this 10% reduction: 83.475 hours for Anderson; 4.5 hours for Bordas; 152.2215 hours for Monahan; 33.2325 hours for Prasick; and 0.18 hours for Karadeema.

[127] *Rougvie v. Ascena Retail Grp., Inc.*, No. 15-724, 2016 WL 4784121, at *10 (E.D. Pa. Sept. 12, 2016).

[128] Doc. 127 (Brief in Opposition to First Motion for Attorney's Fees) at 7-8; Doc. 156 (Brief in Opposition to Supplemental Motion for Attorney's Fees) at 6-8.

[129] Doc. 154 (Supplemental Motion for Attorney's Fees), Ex. C (Monahan Affidavit) ¶ 14 and Ex. D (Prasick Affidavit) ¶ 11.

overcome the sworn statements made by both attorneys concerning their billing practices. While they indicate that this is the standard billing practice at Bordas & Bordas, Anderson's and Bordas' affidavits are conspicuously silent on this issue.[130] Given the patterns identified by Defendant, I find it appropriate to reduce the hours requested by Anderson and Bordas by 5% in both the First Motion for Attorneys' Fees and Supplemental Motion for Attorneys' Fees. Anderson is now requesting a total of 485.09375 hours while Bordas is now requesting a total of 26.8375 hours.[131] In reaching this decision, I decline to extend a similar reduction to Karadeema given that the Court has already excised many of the suspect time entries identified by Defendant.

### 4.    Calculation of the Lodestar

As I have now resolved all of the challenges to Plaintiff's hours, I am able to calculate the lodestar. To do so, I multiple the appropriate hourly rates for each attorney and paralegal by the number of hours that remain, as displayed in the table below. This leads to a total award of $252,906.30 in attorney's fees.

---

[130] The absence of any sworn statements on this topic from Anderson and Bordas in the Supplemental Motion is also noteworthy.

[131] For Anderson, the breakdown is 405.7925 hours in the First Motion and 79.30125 hours in the Supplemental Motion. Bordas has a breakdown of 22.5625 hours in the First Motion and 4.275 hours in the Supplemental Motion.

**The Lodestar Calculation**

| Timekeeper | Hourly Rate | Hours | Amount of Fees[132] |
|---|---|---|---|
| Anderson | $375 | 485.09375 | $181,910.16 |
| Bordas | $375 | 26.8375 | $10,064.06 |
| Monahan | $300 | 152.2215 | $45,666.45 |
| Prasick | $250 | 33.2325 | $8,308.13 |
| Johnson | $115 | 29 | $3,335.00 |
| Karadeema | $150 | 24.15 | $3,622.50 |

### E.    Enhancement of the Lodestar

Finally, I turn to Holmes' requested enhancement. Even with the reduced award this Court is prepared to provide her, this requested enhancement would result in $1,264,531.50 fees. In spite of her best efforts to argue otherwise, this case does not present the "rare" or "exceptional" circumstances that justify any enhancement, let alone one of this magnitude.

There is "a 'strong presumption' that the lodestar represents the 'reasonable' fee" for Plaintiff's counsel.[133] The Third Circuit has summarized the main circumstances identified by the United States Supreme Court when an upward adjustment of the lodestar calculation may be appropriate:

> These circumstances include: (1) "where the method used in determining the hourly rate employed in the lodestar calculation does not adequately measure the attorney's true market value"; (2) "if the attorney's performance includes an extraordinary outlay of expenses and the litigation is exceptionally protracted"; or (3) where there was

---

[132] The Amount of Fees is rounded up to the nearest cent.
[133] *Dungee v. Davison Design & Dev., Inc.*, 674 F. App'x 153, 156 (3d Cir. 2017).

an "exceptional delay in the payment of fees … particularly where the delay is unjustifiably caused by the defense."[134]

When "presented with a 'rare' and 'exceptional' case, a district court must tailor the method of enhancing the lodestar to that specific case."[135] "For instance, if an attorney's hourly rate is 'determined by a formula that takes into account only a single factor (such as years since admission to the bar),' the district court may adjust the hourly rate 'in accordance with specific proof linking the attorney's ability to a prevailing market rate.'[136]

"The party requesting an enhancement to the lodestar carries the burden to show that a multiplier is necessary to reach a fair and reasonable fee award."[137] "That party must produce 'specific evidence on the record' supporting the enhancement."[138] "Further, to ensure that the calculation 'is objective and capable of being reviewed on appeal,' a district court must provide detailed findings justifying any enhancement to the lodestar."[139]

Here, Holmes has failed to carry her burden. She has argued that the lodestar fails to capture her attorneys' true market value. First, her argument focuses exclusively on Anderson's performance, yet she applies her enhancement to the

---

[134] *Id.* at 156-57 (quoting *Perdue*, 559 U.S. at 554-56).

[135] *Id.* at 157.

[136] *Id.* (quoting *Perdue*, 559 U.S. at 555).

[137] *Id.* (citing *Perdue*, 559 U.S. at 553).

[138] *Id.* (quoting *Pennsylvania v. Del. Valley Citizens' Council for Clean Air*, 478 U.S. 546, 565, 106 S. Ct. 3088, 92 L. Ed. 2d 439 (1986)).

[139] *Id.* (quoting *Perdue*, 559 U.S. at 553, 557-59).

entirety of the lodestar figure. More importantly, I conclude that Holmes has failed to put forth sufficient evidence that would allow the Court to grant this enhancement.

The only evidence in the record that Holmes identified is the Rieders affidavit. In relevant part, Rieders states:

> Lawyers who handle primarily contingent fee cases face the inevitable fact that they will win cases, settle cases, and lose cases. In North Central Pennsylvania, unless the attorney can balance out losses or negative results with very good results, it would be impossible to handle contingent fee cases at all in the Middle District [of Pennsylvania].

> Significant costs must be laid out in contingency fee cases.

> The overheard costs of operating a contingent fee practice in the Wilkes-Barre, Harrisburg, and Williamsport areas are quite significant.

> A verdict in federal court, Middle District of Pennsylvania, and the amount set forth, and based on the facts related by the Court in its Memorandum Opinion of July 3, 2023, is a notable accomplishment.

> While the undersigned does not know Attorney Anderson personally, the undersigned was impressed with Attorney Anderson's presentation, the results he obtained, and the information imparted by him concerning the nature of his practice and other results.

> The rate charged by Mr. Anderson, who presents himself as a fine, accomplished, and responsible attorney, is extremely reasonable.

> The lawyers in the Middle District of Pennsylvania are reluctant to take civil rights cases at all because of the population in the veneer and the exacting requirements of federal court.

> The billing of $600.00 per hour for someone of Mr. Anderson's obvious ability and the results in this case seems modest, given the costs associated with practicing law in the current environment, the challenges of public opinion, and the conservativeness of the jurisdiction.

> There are no attorneys, that the undersigned is aware of, who have equaled Mr. Anderson's achievement in a civil rights case in the Middle District of Pennsylvania, particularly Williamsport, or who even have his degree of success in such cases and trial experience on a regular basis in civil rights cases.[140]

Much of this affidavit fails to provide any evidence at all regarding the inadequacy of the lodestar. The first three paragraphs of the quoted sections concern the logistics of operating on a contingency fee basis in the Middle District of Pennsylvania. The Supreme Court has indicated that a contingency enhancement "would likely duplicate in substantial part factors already subsumed in the lodestar" method.[141] It is therefore inappropriate to accept this argument in support of an enhancement.

Next, the Court considers Rieders' statements concerning the rate sought by Anderson. Rieders first describes Anderson's desired rate as "extremely reasonable" and then notes that it is "modest" "given the costs associated with practicing law in the current environment, the challenges of public opinion, and the conservativeness of the jurisdiction."[142] Although the Court reduced Anderson's hourly rate to an amount in line with that charged by attorneys in the Williamsport vicinage, I have already concluded that this is an appropriate rate given his qualifications, specialized

---

[140] Doc. 107 (Brief in Support of First Motion for Attorney's Fees), Ex. E (Rieders Affidavit).

[141] *City of Burlington v. Dague*, 505 U.S. 557, 562, 112 S. Ct. 2638, 120 L. Ed. 2d 449 (1992).

[142] Doc. 107 (Brief in Support of First Motion for Attorney's Fees), Ex. E (Rieders Affidavit) ¶ 42.

expertise, and the uncomplicated nature of this case. Rieders' observations do not move the needle on this analysis.

Finally, I consider the results Anderson achieved at trial. Rieders describes the outcome of this case as "a notable accomplishment" and notes that he was "impressed" with Anderson's "presentation," the "results he obtained," and other information concerning his practice.[143] Further, Rieders asserts that "[t]here are no attorneys, that [he] is aware of, who have equaled Mr. Anderson's achievement in a civil rights case in the Middle District of Pennsylvania, particularly Williamsport, or who even have his degree of success … on a regular basis in civil rights cases."[144]

These observations appear to be premised, at least in part, on the assumption that "lawyers in the Middle District of Pennsylvania are reluctant to take civil rights cases at all because of the population in the veneer and the exacting requirements of federal court."[145] As civil rights cases regularly appear on my docket and the docket of my colleagues in this Court, I set aside this observation.

Rieders' discussion of the result Anderson achieved in this case is also unpersuasive. The finding of liability in this case was not an unexpected outcome, except perhaps to AHOM; as the Court has already explained at length elsewhere, a jury easily could conclude that AHOM committed clear wrongdoing and fumbled

---

[143] *Id.* ¶ 34.
[144] *Id.* ¶ 39.
[145] *Id.* ¶ 38.

its response to Holmes' complaints. Under these circumstances, achieving a verdict in Plaintiff's favor was the extremely likely outcome. While the size of the verdict was large, that alone is not a reason to enhance Plaintiff's fees, especially once the award the Court deemed constitutionally reasonable is considered.

Even if the Court were to expand its analysis to include the twelve factors identified by the United States Court of Appeals for the Fifth Circuit in *Johnson v. Georgia*,[146] the outcome would remain unchanged. Many of these factors have already been adequately accounted for in the lodestar;[147] as to the nearly all of remaining factors, Holmes has provided no evidence that would allow the Court to evaluate them.[148]

As I have presided over this case for its entire duration, I am intimately familiar with the performance of all counsel. This prompts me to simply observe that I find it much more probable that the result in this case came down to "inferior

---

[146] These factors were identified in *Hensley*. They are: "(1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases." *Hensley*, 461 U.S. at 430 n.3.

[147] My review concludes that the first, second, third, fifth, sixth, eighth, and ninth factors were already accounted for, either directly or indirectly, by the Court when calculating the lodestar. *Id.*

[148] Plaintiff provided no information concerning the fourth, seventh, tenth, eleventh, or twelfth factors in this fee petition. *Id.* I do not consider Rieders' assessment of the "reluctan[c]e" of attorneys "to take civil rights cases" in this District to be persuasive given the frequency with which these cases are brought before this Court. Doc. 107 (Brief in Support of First Motion for Attorney's Fees), Ex. E (Rieders Affidavit) ¶ 38.

performance by defense counsel, … an unexpectedly sympathetic jury, or simple luck" rather than such a superior performance by Plaintiff's counsel that the lodestar is an inaccurate measure of their true market value.[149]

### F.    Requested Costs

As I have calculated the lodestar, I now turn to Plaintiff's requested costs. AHOM has only attacked Holmes' request for travel costs, an issue resolved above, and her legal research costs. But our Court of Appeals has indicated that "the same standards apply to [my] review of costs as to [my] review of attorneys' fees."[150] Accordingly, I must review Plaintiff's submissions to ensure that she has met her initial burden of production. Unlike her submitted time entries, all the Court has been provided is a series of expense reports that merely list the date, description, and price of each cost. The Third Circuit has reversed a district court that approved a prevailing party's costs based solely on a "one-page statement [that] contain[ed] dates and descriptions, but [did] not include supporting data explaining the relevant purpose of the expenditures."[151] The Court is faced with essentially an identical situation here. Under these circumstances, I conclude that Holmes has failed to meet her initial burden of production as she has "failed to provide the District Court with any reasonable basis justifying the expenditures in this case."[152]

---

[149] *Perdue*, 559 U.S. at 554.
[150] *Loughner v. Univ. of Pittsburgh*, 260 F.3d 173, 181 (3d Cir. 2001).
[151] *Id.*
[152] *Id.*

But that is not the end of my analysis. District courts in this Circuit have compared the dates and descriptions from the expense reports to the submitted time entries to ascertain whether the submitted costs are reasonable.[153] Despite the incredibly tedious nature of this task, I will do so now.

### 1.    Legal Research Costs

As AHOM has challenged Holmes' ability to recover any legal research costs, I must first discern whether they are recoverable at all. In its Brief in Opposition to the Supplemental Motion for Attorneys' Fees, AHOM correctly notes that courts have declined to award legal research costs under 28 U.S.C. § 1920. In making this argument, Defendant fails to consider whether these expenses can be awarded under 42 U.S.C. § 1988. This silence seems peculiar given that one of the Defendant's cases specifically acknowledged "civil rights legislation … encompasses a broader concept of expenses than the enumerated costs allowed under § 1920."[154] As some courts in this Circuit have deemed legal research costs recoverable under § 1988, I conclude that it is proper to award Holmes these expenses should they prove to be properly documented after a comparison to the submitted time entries.[155] This review has indicated that some of these research costs cannot be aligned with the time spent

---

[153] *E.g.*, *United States ex rel. Ibew Local Union No. 98 v. The Fairfield Co.*, No. 09-4230, 2020 U.S. Dist. LEXIS 63169 (E.D. Pa. Apr. 10, 2020).

[154] *Nugget Distrib. Coop. v. Mr. Nugget*, 145 F.R.D. 54, 58 (E.D. Pa. 1992).

[155] Courts in this Circuit have awarded legal research expenses to attorneys under 42 U.S.C. § 1988. *E.g.*, *Stadler v. Abrams*, No. 13-2741, 2018 U.S. Dist. LEXIS 126499 (D.N.J. July 27, 2018).

by her attorneys to determine their reasonableness.[156] Consequently, I remove the costs contained in Appendix D from Holmes' petition.

The remaining research costs appear to have been a monthly legal research bill from Westlaw. This allowed me to connect the appropriate hours spent by Holmes' attorneys to the associated legal research costs, as identified in Appendix E.

### 2.    All Other Costs

Since I have an independent obligation to ensure that Plaintiff has met her burden of production, I do so regarding the remaining costs she has requested despite AHOM's failure to challenge these expenses. Again, all that Holmes provided to the Court in support of these costs were various expense reports. I completed the unenviable task of matching the costs to the appropriate time entries, as presented in Appendix F.

The only costs I was unable to match to any time entries were photocopying charges requested by Holmes and $33.95 in postal services incurred on April 30, 2024. While these photocopying costs would also be recoverable under § 1920, I would have to conclude that "the copies are necessarily obtained for use in the case."

---

[156] Holmes incurred online research expenses on a seemingly random basis that make it impossible for the Court to discern which, if any, of her time entries are connected to the expenses in her Supplemental Motion.

Plaintiff has provided no information that would allow me to do so.[157] Therefore, I decline to award her the requested reimbursement for her photocopies and scans. Instead, I will award Holmes $9,074.16 in total for her costs in this case, as reflected in Appendices E and F.

## II.    CONCLUSION

The Court has finally determined the reasonable attorneys' fees and costs Holmes is entitled to recover under 42 U.S.C. § 1988. This amount is adequately supported by the record provided to the Court and represents a reasonable fee given the complexity of the case, the experience of the attorneys, and the services provided.

An appropriate Order follows.

BY THE COURT:

_s/ Matthew W. Brann_
Matthew W. Brann
Chief United States District Judge

---

[157] I have no way to discern how many pages were copied and scanned. Thus, I have no ability to discern the per page cost to determine if it is reasonable. Nor can I evaluate whether the amount of copying performed was necessary.

## Appendix A: Excised Clerical Hours

| Date | Timekeeper | Hours | Description | Clerical Reason | Rate | Amount |
|------|-----------|-------|-------------|-----------------|------|--------|
| 07/29/2022 | Karadeema | 1.1 | Bates Stamping documents for First Set of Interrogatories and Request for Production | Analogous to document management and exhibit preparation | $150.00 | $165.00 |
| 10/12/2022 | Karadeema | 0.4 | Correspondence with counsel regarding scheduling of depositions | Scheduling | $150.00 | $60.00 |
| 10/13/2022 | Karadeema | 0.5 | Correspondence with counsel and defendant's counsel regarding filing extension to extend discovery | Analogous to filing documents and scheduling correspondence | $150.00 | $75.00 |
| 10/14/2022 | Karadeema | 0.7 | Correspondence with counsel regarding scheduling of depositions (.2), extending discovery deadlines (.3), correspondence with Holmes regarding scheduling deposition (.2) | Scheduling | $150.00 | $105.00 |
| 10/17/2022 | Karadeema | 0.2 | Correspondence with opposing counsel | Analogous to filing documents and | $150.00 | $30.00 |

| Date | Timekeeper | Hours | Description | Clerical Reason | Rate | Amount |
|---|---|---|---|---|---|---|
| | | | regarding filing of discovery extension | scheduling correspondence | | |
| 10/21/2022 | Karadeema | 0.4 | Analyze issues regarding change re scheduled depositions and related matters | Scheduling | $150.00 | $60.00 |
| 10/21/2022 | Karadeema | 0.5 | Analyze matters regarding scheduling depositions of additional witnesses and communication with defendant's counsel re same | Scheduling | $150.00 | $75.00 |
| 10/24/2022 | Karadeema | 0.4 | Correspondence with Holmes and counsel regarding scheduling depositions | Scheduling | $150.00 | $60.00 |
| 10/25/2022 | Karadeema | 0.4 | Correspondence with opposing counsel regarding scheduling of depositions, locations of depositions, contact information for deposition | Scheduling | $150.00 | $60.00 |

| Date | Timekeeper | Hours | Description | Clerical Reason | Rate | Amount |
|------|-----------|-------|-------------|-----------------|------|--------|
| 10/25/2022 | Karadeema | 0.4 | Analyze issues regarding scheduling depositions of Beverly Hibbert, Tammy Dunmire, Haley Furros, Ron Houtz, Tim McCoy, Ms. Dodson, and Mr. Cattone | Scheduling | $150.00 | $60.00 |
| 10/26/2022 | Karadeema | 0.4 | Correspondence with defendant's counsel re: scheduling depositions | Scheduling | $150.00 | $60.00 |
| 10/27/2022 | Karadeema | 0.2 | Correspondence with defendant's counsel regarding scheduling depositions (.2) | Scheduling | $150.00 | $30.00 |
| 10/28/2022 | Karadeema | 0.5 | Correspondence with former employees regarding depositions | Scheduling | $150.00 | $75.00 |
| 10/28/2022 | Karadeema | 0.4 | Correspondence with defendant's counsel regarding scheduling depositions and | Scheduling | $150.00 | $60.00 |

| Date | Timekeeper | Hours | Description | Clerical Reason | Rate | Amount |
|------|-----------|-------|-------------|-----------------|------|--------|
| | | | contact information for previous employees | | | |
| 10/31/2022 | Karadeema | 0.5 | Identify and secure lodging for plaintiff's counsel re depositions | Analogous to scheduling and related logistics | $150.00 | $75.00 |
| 10/31/2022 | Karadeema | 0.4 | Correspondence with Beverly Hibbert, Tammy Dunmire, Haley Furros regarding taking depositions | Scheduling | $150.00 | $60.00 |
| 10/31/2022 | Karadeema | 0.5 | Correspondence with Hyatt and Centre County Bar Association regarding reserving conference room | Scheduling and related logistics | $150.00 | $75.00 |
| 10/31/2022 | Karadeema | 0.7 | Correspondence with Attorney Anderson and defendant's counsel and Holmes regarding Notices of Deposition, reserving conference room | Scheduling and related logistics | $150.00 | $105.00 |

| Date | Timekeeper | Hours | Description | Clerical Reason | Rate | Amount |
|------|-----------|-------|-------------|-----------------|------|--------|
| 11/01/2022 | Karadeema | 0.4 | Correspondence with Hal[e]y Furrow and counsel regarding scheduling deposition for evening hours | Scheduling | $150.00 | $60.00 |
| 11/01/2022 | Karadeema | 0.5 | Correspondence with defendant's counsel regarding notices of deposition, room contract | Scheduling and related logistics | $150.00 | $75.00 |
| 11/01/2022 | Karadeema | 0.2 | Correspondence with Plaintiff regarding verifying receipt of notice of deposition | Analogous to scheduling, related logistics, and file and document management | $150.00 | $30.00 |
| 11/02/2022 | Karadeema | 0.4 | Compile and deliver to Holmes materials for review in preparation for deposition | Analogous to packaging attachments and preparing exhibits | $150.00 | $60.00 |
| 11/02/2022 | Karadeema | 0.4 | Correspondence with defendant's counsel re: plaintiff's half of fee for conference | Scheduling and related logistics | $150.00 | $60.00 |

| Date | Timekeeper | Hours | Description | Clerical Reason | Rate | Amount |
|---|---|---|---|---|---|---|
| | | | room and related matters | | | |
| 11/02/2022 | Karadeema | 0.5 | Correspondence with Holmes re: scheduled day for deposition, scheduling deposition preparation with attorney Anderson | Scheduling | $150.00 | $75.00 |
| 11/03/2022 | Karadeema | 0.5 | Correspondence with Golkow Litigation Services regarding scheduling reporter of depositions | Analogous to communication with a process server or court clerk | $150.00 | $75.00 |
| 11/03/2022 | Karadeema | 0.4 | Review and process correspondence with defendant's counsel regarding discovery documents | Analogous to document management | $150.00 | $60.00 |
| 11/04/2022 | Karadeema | 0.4 | Upload and save documents provided by defendant's counsel | Analogous to document management | $150.00 | $60.00 |
| 11/04/2022 | Karadeema | 0.4 | Correspondence with Golkow Litigation Services regarding | Analogous to communication with process server or court clerk | $150.00 | $60.00 |

| Date | Timekeeper | Hours | Description | Clerical Reason | Rate | Amount |
|---|---|---|---|---|---|---|
| | | | scheduling reporter for depositions | | | |
| 11/07/2022 | Karadeema | 0.2 | Correspondence with court reporter regarding verify use of their services for depositions | Analogous to communication with process server or court clerk | $150.00 | $30.00 |
| 11/07/2022 | Karadeema | 0.5 | Prepare travel arrangement for Attorney Anderson for depositions in State College | Scheduling and related logistics | $150.00 | $75.00 |
| 11/09/2022 | Karadeema | 0.4 | Correspondence with J&M Reporting re scheduling reporter for deposition for November 14 | Scheduling | $150.00 | $60.00 |
| 11/09/2022 | Karadeema | 0.5 | Research re additional contact information for Beverly Hibbert and Tammy Dunmire [0.50] | Confirming contact information | $150.00 | $75.00 |
| 11/09/2022 | Karadeema | 0.4 | Correspondence with Haley Furrow regarding date and time of deposition | Scheduling | $150.00 | $60.00 |
| 11/09/2022 | Karadeema | 0.4 | Communication with counsel | Scheduling | $150.00 | $60.00 |

| Date | Timekeeper | Hours | Description | Clerical Reason | Rate | Amount |
|------|-----------|-------|-------------|-----------------|------|--------|
| | | | regarding scheduling deposition of Haley Furrow and related matters | | | |
| 11/11/2022 | Karadeema | 0.4 | Correspondence with J&M Reporting regarding scheduled zoom deposition for November 14, 2022 | Scheduling | $150.00 | $60.00 |
| 11/14/2022 | Karadeema | 0.4 | Correspondence with defendants regarding scheduling depositions for Mark Cattron and Lois Dodson and related matters | Scheduling | $150.00 | $60.00 |
| 11/14/2022 | Karadeema | 0.4 | Correspondence with defendant's counsel and Haley Eichelberger regarding Zoom link for deposition and exhibits | Scheduling and related logistics | $150.00 | $60.00 |
| 11/21/2022 | Karadeema | 0.4 | Process and save deposition transcripts and documents for Timothy | Analogous to document management | $150.00 | $60.00 |

| Date | Timekeeper | Hours | Description | Clerical Reason | Rate | Amount |
|------|-----------|-------|-------------|-----------------|------|--------|
| | | | McCoy and Ronald Houtz | | | |
| 11/23/2022 | Karadeema | 0.4 | Making arrangements with Hyatt State College regarding room for depositions | Scheduling and related logistics | $150.00 | $60.00 |
| 11/28/2022 | Karadeema | 0.4 | Correspondence with defendant's counsel regarding scheduling depositions | Scheduling | $150.00 | $60.00 |
| 11/28/2022 | Karadeema | 0.4 | Review and save deposition transcripts for Haley Eichelberger | Analogous to document management | $150.00 | $60.00 |
| 11/29/2022 | Karadeema | 0.2 | Correspondence with J&M Court Reporting re scheduling reporter for depositions | Scheduling | $150.00 | $30.00 |
| 11/29/2022 | Karadeema | 0.2 | Process invoice Johnson and Mimless for deposition of Haley Eichelberger | Analogous to document management | $150.00 | $30.00 |
| 11/29/2022 | Karadeema | 0.4 | Reserving hotel room for depositions on December 5 & 6 | Scheduling and related logistics | $150.00 | $60.00 |

| Date | Timekeeper | Hours | Description | Clerical Reason | Rate | Amount |
|---|---|---|---|---|---|---|
| 11/30/2022 | Karadeema | 0.4 | Analyze issues re confirming receipt of subpoena by Beverly Hibbert | Analogous to scheduling, related logistics, and file and document management | $150.00 | $60.00 |
| 11/30/2022 | Karadeema | 0.4 | Prepare check request for travel to State College for depositions | Scheduling and related logistics | $150.00 | $60.00 |
| 12/02/2022 | Karadeema | 0.2 | Correspondence with J&M re Zoom link for depositions | Scheduling and related logistics | $150.00 | $30.00 |
| 12/06/2022 | Karadeema | 0.5 | Correspondence with Beverly Hibbert regarding receipt of subpoena, scheduling deposition, and no longer needing deposition | Scheduling and related logistics | $150.00 | $75.00 |
| 12/12/2022 | Karadeema | 0.2 | Review and save AHOM's Amended Rule 26 Disclosures | Analogous to document management | $150.00 | $30.00 |
| 12/14/2022 | Karadeema | 0.4 | Correspondence with court reporter and related matters regarding exhibit from | Analogous to correspondence with process server or court clerk | $150.00 | $60.00 |

| Date | Timekeeper | Hours | Description | Clerical Reason | Rate | Amount |
|------|-----------|-------|-------------|-----------------|------|--------|
| | | | Mark Cattron deposition | | | |
| 12/19/2022 | Karadeema | 0.4 | Review and process deposition transcripts for Lois Dodson and Mark Cattron and invoice from J&M | Analogous to document management | $150.00 | $60.00 |
| 01/03/2023 | Karadeema | 0.2 | Reviewed and process Errata pages for deponents Mark Cattron and Lois Dodson | Analogous to document management | $150.00 | $30.00 |
| 02/03/2023 | Karadeema | 0.4 | Review and save invoices from Golkow Litigation Services, check request for Golkow invoices | Analogous to document and file management | $150.00 | $60.00 |
| 02/08/2023 | Karadeema | 0.4 | Review and process J&M invoices | Analogous to document and file management | $150.00 | $60.00 |
| 03/14/2023 | Karadeema | 0.25 | File Notice of Change of Law Firm | Filing documents | $150.00 | $37.50 |
| 03/22/2023 | Karadeema | 0.5 | Review and file Plaintiff's Brief in Opposition to MSJ | Filing documents | $150.00 | $75.00 |

| Date | Timekeeper | Hours | Description | Clerical Reason | Rate | Amount |
|------|-----------|-------|-------------|-----------------|------|--------|
| 06/12/2023 | Karadeema | 0.25 | Correspondence with Plaintiff regarding requested documents for review | Analogous to document management | $150.00 | $37.50 |
| 07/03/2023 | Karadeema | 0.25 | Review and save Opinion from Judge to file | Analogous to document and file management | $150.00 | $37.50 |
| 07/05/2023 | Karadeema | 0.25 | Review and save Order dated 7/5/2023 to file | Analogous to document and file management | $150.00 | $37.50 |
| 09/07/2023 | Karadeema | 0.25 | Process deposition invoice | Analogous to document and file management | $150.00 | $37.50 |
| 09/26/2023 | Karadeema | 0.25 | Correspondence with Plaintiff regarding her new address and phone number, updating file | Updating contact information | $150.00 | $37.50 |
| 09/28/2023 | Karadeema | 0.25 | Correspondence with Plaintiff regarding mediation preparation with TBA | Scheduling | $150.00 | $37.50 |
| 10/02/2023 | Karadeema | 0.5 | Booking hotel room for Plaintiff for mediation | Scheduling and related logistics | $150.00 | $75.00 |
| 10/02/2023 | Karadeema | 0.25 | Correspondence with Plaintiff regarding hotel | Scheduling and related logistics | $150.00 | $37.50 |

| Date | Timekeeper | Hours | Description | Clerical Reason | Rate | Amount |
|---|---|---|---|---|---|---|
| | | | reservations, parking, directions for mediation | | | |
| 10/04/2023 | Karadeema | 0.7 | Prepare and file Letter from Plaintiff to Court | Filing documents | $150.00 | $105.00 |
| 10/04/2023 | Karadeema | 0.2 | Diary conference call with Judge to TBA, JGBIII calendars | Analogous to file management and calendaring | $150.00 | $30.00 |
| 10/20/2023 | Karadeema | 0.2 | Review and diary Scheduling Order | Analogous to file management and calendaring | $150.00 | $30.00 |
| 11/06/2023 | Karadeema | 0.2 | Correspondence with JAMS regarding invoice | Analogous to document and file management | $150.00 | $30.00 |
| 11/09/2023 | Karadeema | 0.5 | Review and file Motion to Reschedule Pretrial Conference | Filing documents | $150.00 | $75.00 |
| 11/17/2023 | Karadeema | 0.5 | Correspondence with Judge's chambers requesting Word version of Exhibit List | Analogous to communication with process server or court clerk | $150.00 | $75.00 |
| 01/02/2024 | Karadeema | 0.5 | Reviewing and filing Motions in Limine | Filing documents | $150.00 | $75.00 |

| Date | Timekeeper | Hours | Description | Clerical Reason | Rate | Amount |
|------|-----------|-------|-------------|-----------------|------|--------|
| 01/02/2024 | Karadeema | 1 | Preparing exhibits for brief | Preparing exhibits | $150.00 | $150.00 |
| 01/16/2024 | Karadeema | 0.5 | Acquire and process brief exhibits | Preparing exhibits | $150.00 | $75.00 |
| 01/29/2024 | Karadeema | 0.5 | Discussion with TBA regarding Filing of Reply Brief and exhibits | Filing documents | $150.00 | $75.00 |
| 01/30/2024 | Karadeema | 0.5 | Refiling Brief in Support | Filing documents | $150.00 | $75.00 |
| 02/09/2024 | Karadeema | 0.5 | Correspondence with JAMS regarding mediation payment and refund | Analogous to document and file management | $150.00 | $75.00 |
| 03/12/2024 | Karadeema | 2 | Prepare exhibits for uploading into Trial Director program with Bates numbers, putting in binder for TBA for use at trial | Preparing exhibits | $150.00 | $300.00 |
| 03/13/2024 | Karadeema | 4 | Gathering and preparing trial documents for trial binders | Preparing binders and documents | $150.00 | $600.00 |
| 03/21/2024 | Karadeema | 0.5 | Matters regarding attorney Jamie Bordas admission to district cour | Attorney admissions | $150.00 | $75.00 |

| Date | Timekeeper | Hours | Description | Clerical Reason | Rate | Amount |
|---|---|---|---|---|---|---|
| 03/21/2024 | Karadeema | 2.5 | Prepare 24 exhibits and file same | Preparing exhibits | $150.00 | $375.00 |
| 03/28/2024 | Karadeema | 0.25 | Correspondence with Billing associate at Thomson Rhodes and Cowie regarding expense report | Analogous to document and file management | $150.00 | $37.50 |
| 03/28/2024 | Karadeema | 0.5 | Editing trial exhibits by adding additional exhibit and separating one into two documents | Preparing exhibits | $150.00 | $75.00 |
| 03/28/2024 | Karadeema | 1.5 | Printing exhibits and putting together three binders for attorney and court | Preparing exhibits and binders | $150.00 | $225.00 |
| 03/28/2024 | Karadeema | 0.5 | Preparing exhibit binders for mailing to court, putting in mail | Preparing exhibits and binders | $150.00 | $75.00 |
| 03/28/2024 | Karadeema | 0.75 | Update trial exhibits list | Preparing exhibits | $150.00 | $112.50 |
| 04/01/2024 | Karadeema | 0.25 | Correspondence with Billing associate at Thomson Rhodes and Cowie | Analogous to document and file management | $150.00 | $37.50 |

| Date | Timekeeper | Hours | Description | Clerical Reason | Rate | Amount |
|------|-----------|-------|-------------|-----------------|------|--------|
| | | | regarding expense report | | | |
| 04/01/2024 | Karadeema | 0.25 | Review and diary Scheduling Order | Analogous to file management and calendaring | $150.00 | $37.50 |
| 04/04/2024 | Karadeema | 0.75 | Correspondence with IT to get Zoom meeting set up, correspondence with Plaintiff to schedule time for Zoom, added Zoom meeting to TBA calendar | Scheduling and related logistics | $150.00 | $112.50 |
| 04/19/2024 | Karadeema | 4 | Prepare billing entry exhibit for Fee Petition | Preparing exhibits | $150.00 | $600.00 |

## Appendix B: Excised Travel Time and Costs

### Removed Travel Time

| Date | Timekeeper | Hours | Description | Rate | Amount |
|------|------------|-------|-------------|------|--------|
| 11/07/2022 | Anderson | 3 | Travel to deposition of Patricia Holmes in State College | $375.00 | $1,125.00 |
| 11/08/2022 | Anderson | 3 | Travel from depositions of plaintiff and defense witnesses in State College | $375.00 | $1,125.00 |
| 12/06/2022 | Anderson | 2.6 | Travel to depositions of defense witnesses in State College | $375.00 | $975.00 |
| 12/06/2022 | Anderson | 2.6 | Travel from depositions of defense witnesses in State College | $375.00 | $975.00 |
| 10/02/2023 | Anderson | 5.5 | Travel to mediation in Philadelphia | $375.00 | $2,062.50 |
| 10/02/2023 | Bordas | 1 | Travel to Pittsburgh airport for mediation | $375.00 | $375.00 |
| 10/03/2023 | Anderson | 4 | Travel from mediation in Philadelphia | $375.00 | $1,500.00 |
| 10/03/2023 | Bordas | 6 | Travel to Philadelphia (3) and travel back (3)[158] | $375.00 | $2,250.00 |

---

[158] This entry also contains six hours attributable to the mediation itself. This time is recoverable. Doc. 107 (Brief in Support of First Motion for Attorney's Fees), Ex. A (Billing Records).

| Date | Timekeeper | Hours | Description | Rate | Amount |
|---|---|---|---|---|---|
| 03/18/2023 | Anderson | 7.75 | Attend pretrial conference (includes travel time)[159] | $375.00 | $2,906.25 |
| 04/07/2024 | Anderson | 3.5 | Travel to Williamsport for trial | $375.00 | $1,312.50 |
| 04/07/2024 | Johnson | 4 | Travel to Williamsport for trial | $115.00 | $460.00 |
| 04/10/2024 | Anderson | 3.5 | Travel from Williamsport | $375.00 | $1,312.50 |
| 04/10/2024 | Johnson | 4 | Travel home from Williamsport | $115.00 | $460.00 |
| 07/25/2024 | Anderson | 8.95 | Attend argument on post-trial motions, includes travel time[160] | $375.00 | $3,356.25 |

## Removed Travel Costs

| Date | Description | Amount |
|---|---|---|
| 10/31/2022 | Travel Expense TBA 11/7/22 Hotel Reservation … Re: Deposition | $148.86 |
| 11/07/2022 | Travel Expense Parking Fee at Hyatt Place | $12.00 |

[159] The Court removed the time it took to conduct the pretrial conference from the 10 hours listed in this entry to arrive at the 7.75 hours in travel time. The length of the pretrial conference was discerned from the Court's internal Minute Sheet memorializing the pretrial conference.

[160] The travel time is ascertained by subtracting the length of the oral argument, as noted in the transcript of the oral argument, from the total hours listed for this entry. Doc. 150 (Oral Argument Transcript).

| Date | Description | Amount |
|---|---|---|
| 12/06/2022 | Travel Expense 12-26-22 Mileage (240 Miles x 0.625) | $150.00 |
| 10/02/2023 | Travel Chase Card Services 0124 | $219.94 |
| 10/03/2023 | Travel First National Bank of Omaha FNBO (JGBIII) 5535 | $6.75 |
| 10/03/2023 | Travel First National Bank of Omaha FNBO (JGBIII) 5535 | $231.45 |
| 10/03/2023 | Travel Chase Card Services 0124 | $272.67 |
| 10/03/2023 | Travel First National Bank of Omaha FNBO (JGBIII) 5535 | $32.00 |
| 10/17/2023 | Travel Thomas B. Anderson Bordas & Bordas Attorneys, PLLC Travel Reimbursement | $362.66 |
| 04/11/2024 | Travel Thomas B. Anderson Bordas & Bordas Attorneys, PLLC Travel & Trial Expenses | $419.67 |
| 04/11/2024 | Travel Donneshia Johnson Bordas & | $338.85 |

| Date | Description | Amount |
|---|---|---|
|  | Bordas Attorneys, PLLC Travel & Trial Expenses |  |
| 04/24/2024 | Travel<br>Chase Card Services<br>0124 | $2,090.73[161] |
| 07/25/2024 | Travel<br>Thomas B. Anderson, Esq. Bordas & Bordas Attorneys, PLLC Travel Reimbursement | $188.70 |

---

[161] Again, I note that this request has been duplicated in the expense reports submitted to the Court.

## Appendix C: Excised Hours Related to Isolated Issues

| Date | Timekeeper | Hours | Reason |
|---|---|---|---|
| 04/18/2024 | Monahan | 2.5 (original entry reduced by one-third to account for block billing) | Fee Enhancement |
| 04/19/2024 | Monahan | 3.33 (original entry reduced by one-third to account for block billing) | Fee Enhancement |
| 05/01/2024 | Anderson | 0.5 | Demonstrative Slides |
| 05/06/2024 | Prasick | 1 | Demonstrative Slides |
| 05/06/2024 | Anderson | 4.1 | Demonstrative Slides |
| 05/06/2024 | Monahan | 6 (original entry reduced by two-thirds to account for block billing) | Demonstrative Slides |
| 05/07/2024 | Prasick | 5.5 | Demonstrative Slides |
| 05/09/2024 | Prasick | 0.575 (original entry reduced by one-fourth to account for block billing) | Demonstrative Slides |
| 05/09/2024 | Monahan | 2.125 (original entry reduced by one-fourth to account for block billing) | Demonstrative Slides |
| 05/16/2024 | Prasick | 3.3 | Fee Enhancement |
| 05/30/2024 | Anderson | 0.4 | Demonstrative Slides |

| Date | Timekeeper | Hours | Reason |
|---|---|---|---|
| 05/30/2024 | Monahan | 0.66 (original entry reduced by one-third to account for block billing) | Demonstrative Slides |
| 06/14/2024 | Prasick | 0.3 | Demonstrative Slides |
| 06/14/2024 | Anderson | 0.7 | Demonstrative Slides |
| 06/14/2024 | Bordas | 0.3 | Demonstrative Slides |
| 06/14/2024 | Monahan | 1 | Demonstrative Slides |
| 06/19/2024 | Anderson | 0.5 | Demonstrative Slides |
| 09/11/2024 | Anderson | 1.5 | Appellate Issues |
| 09/17/2024 | Anderson | 0.6 | Appellate Issues |
| 09/17/2024 | Monahan | 1.55 (original entry reduced by one-fourth to account for block billing) | Appellate Issues |

## **Appendix D: Excised Legal Research Costs**

| Date | Description | Amount |
|---|---|---|
| 04/04/2023 | Online Research<br>Pacer Service Center Inv # 5633158-Q12023 | $3.60 |
| 08/07/2023 | Online Research<br>Thomson Reuters – West Publishing Corp. Acct #1000141823 | $65.85 |
| 08/11/2023 | Online Research<br>Pacer Service Center Inv # 566-158-Q32023 | $11.90 |
| 04/15/2024 | Online Research<br>Pacer Service Center Acct #5633158 | $2.80 |
| 05/22/2024 | Online Research<br>Thomas Reuters-West Publishing Corp. Acct #100141823 | $1,488.66 |
| 05/22/2024 | Online Research<br>Thomas Reuters-West Publishing Corp. Acct #100141823 | $1,606.49 |
| 06/18/2024 | Online Research<br>Thomas Reuters-West Publishing Corp. Acct #100141823 | $1,016.70 |
| 06/18/2024 | Online Research<br>Thomas Reuters-West Publishing Corp. Acct #100141823 | $1,169.67 |
| 06/18/2024 | Online Research<br>Thomas Reuters-West Publishing Corp. Acct #100141823 | $1,873.43 |
| 07/17/2024 | Online Research<br>Pacer Service Center Inv #5633158-Q22024 | $61.30 |

| Date | Description | Amount |
|------|-------------|--------|
| 07/22/2024 | Online Research<br><br>Thomas Reuters-West Publishing Corp. Acct #100141823 | $866.80 |
| 07/24/2024 | Online Research<br><br>Thomas Reuters-West Publishing Corp. Acct #100141823 | $77.93 |

**Appendix E: Recoverable Legal Research Costs**

| Date | Description | Amount | Relevant Time Entries |
|------|-------------|--------|----------------------|
| 04/01/2023 | Online Research Thomson Reuters – West Publishing Corp. Acct # 1000141823 | $302.21 | Entries on March 7, March 9, March 10, March 15, and March 20, 2023 |
| 05/01/2023 | Online Research Thomson Reuters – West Publishing Corp. Acct #1000141823 | $75.57 | Entries on April 5, 2023 |
| 09/01/2023 | Online Research Thomson Reuters – West Publishing Corp. Acct #1000141823 | $82.25 | Entries on August 10 and August 11, 2023 |
| 10/01/2023 | Online Research Thomson Reuters – West Publishing Corp. Acct #100141823 | $47.42 | Entries on September 25, September 26, and September 27, 2023 |
| 11/01/2023 | Online Research Thomson Reuters – West Publishing Corp. Acct #1000141823 | $329.63 | Entries on October 3 and October 11, 2023 |
| 11/07/2023 | Online Research Pacer Service Center Inv# 5633-158-Q42023 | $0.60 | Entry on November 7, 2023 |

| Date | Description | Amount | Relevant Time Entries |
|---|---|---|---|
| 12/01/2023 | Online Research Thomson Reuters – West Publishing Corp. Acct #1000141823 | $89.33 | Entry on November 10, 2023 |
| 01/01/2024 | Online Research Thomson Reuters – West Publishing Corp. Acct# 1000141823 | $95.15 | Entries on December 18, December 19, December 20, and December 21, 2023 |
| 02/01/2024 | Online Research Thomson Reuters – West Publishing Corp. Acct # 1000141823 | $283.51 | Entries on January 2, January 3, January 4, January 8, January 9, January 25, January 27, and January 29, 2024 |
| 04/01/2024 | Online Research Thomson Reuters – West Publishing Corp. Acct # 1000141823 | $1,127.79 | Entries on March 14, March 15, March 21, and March 25, 2024 |

## **Appendix F: Remaining Recoverable Costs**

| Date | Description | Amount | Relevant Time Entries |
|---|---|---|---|
| 09/30/2021 | Filing Fees – Pennsylvania Middle District Court – Complaint | $402.00 | Entries on September 9, and September 30, 2021 |
| 11/02/2022 | Schnader Harrison Segal & Lewis, LLP; Invoice # 20185 11-2-22; Conference Room | $150.00 | Entries on November 2 and November 7, 2022 |
| 11/28/2022 | Court Reporter Johnson & Mimless Transcript Services | $224.75 | Entries on November 28 and November 29, 2022 |
| 12/19/2022 | Court Reporter Johnson & Mimless Transcript Service | $331.00 | Entries on December 14 and December 19, 2022 |
| 09/05/2023 | Mediation Costs JAMS, Inc. Mediation | $4,800.00 | Entries on August 18, 24, 28, and 30, 2023 and September 7, 2023 |
| 04/01/2024 | Federal Express Federal Express Acct No. 6420-6533-5 | $43.62 | There is no time entry for this cost, but the Court is aware this was incurred due to the Court's procedures regarding trial exhibits. |
| 04/01/2024 | Federal Express Federal Express Acct No. 6420-6533-5 | $65.33 | There is no time entry for this cost, but the Court is aware this was incurred due to the Court's procedures regarding trial exhibits |
| 04/22/2024 | Court Reporter Colleen V. Wentz Trial Transcripts | $414.00 | There is no time entry for this cost, but the Court is aware that this was incurred to purchase the transcript from the trial. |
| 08/06/2024 | Court Reporter Colleen V. Wentz Transcript Services | $210.00 | There is no time entry for this cost, but the Court is aware that this was incurred to purchase the transcript from the oral argument the Court held. |